**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **KEENAN'S KIDS FOUNDATION, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action File No.:** |
| | ) | |
| **-vs.-** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **SEAN CLAGGETT,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

Plaintiff Keenan's Kids Foundation, Inc. ("Keenan's Kids" or the "Foundation"), for its complaint ("Complaint") against Sean Claggett ("Claggett" or "Defendant"), states as follows:

## SUBSTANCE OF THE ACTION

1. This is a civil action for misappropriation of trade secrets in violation of the federal Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836, *et seq.*) ("DTSA") and the Georgia Trade Secrets Act of 1990 (O.C.G.A. § 10-1-760, *et seq.*) ("GTSA") and for breach of a confidentiality agreement and an implied-in-fact contract.

**PARTIES, JURISDICTION AND VENUE**

2. Plaintiff Keenan's Kids was established in 1993 by Don C. Keenan, a renowned, award-winning Atlanta-based trial lawyer, for the purposes of helping at-risk children via charity events, raising community awareness, and providing child advocacy services.

3. Keenan's Kids is a Georgia non-profit corporation with a principal place of business at 148 Nassau Street, NW, Atlanta, Georgia 30303.

4. Keenan's Kids works hard to educate the general public, law students, and practicing lawyers so they are more aware of the needs of children at-risk in the legal system. The Foundation's mission is three-fold, focusing on: Charity, Community Awareness, and Child Advocacy.

5. Keenan's Kids' philanthropic activities include working to improve the daily and future lives of children, including through clothing drives, feeding the homeless, children's events, and fundraisers like the Murphy House Project which has been widely covered including in national media. The Murphy House Project is named after a very special and unique family who opened up their hearts and homes to a couple of dozen adoptee children with special needs, in addition to raising their own biological children. The Foundation engaged the help of the community,

volunteers, donors, builder, and suppliers to build a state-of-the-art, custom dream home for the growing family to thrive in. Keenan's Kids later organized a campaign to further support the Murphy family and raise money to retire the debt on the home.

6. Keenan's Kids' efforts to increase community awareness and child safety is further fostered through a series of Safety Campaigns that have received national media attention. Each campaign targets a different aspect of child safety, depending on the particular needs of the community in a given year. Past Safety Campaigns have included the Playground Safety Campaign, the 4th of July Safety Campaign, the Toy Safety Campaign, the Youth Sports Safety Campaign, and the Car Seat Safety Campaign, among others.

7. Keenan's Kids also hosts the Annual Law Student Closing Argument Competition established in 1997 to show students the importance of children's rights and to encourage them into this most needed area of law. The event also stands as an opportunity for students to experience a courtroom and being in front of a jury, with Foundation Board members often judging the competition. The competition continues to draw passionate participation from students of all five Georgia law schools.

8. Keenan's Kids is the owner of intellectual property exclusively used by the Keenan Trial Institute, which offers Mr. Keenan's world-class educational curriculum instructing lawyers on how to win their trials, protect our community safety and deter wrongdoers by holding them accountable, through teaching confidential and proprietary techniques.

9. Mr. Keenan is uniquely qualified to provide instruction on trial techniques, as the head partner in the Keenan Law Firm, which specializes in cases involving children, including injury, medical malpractice, and wrongful death. He is most noted for his lawsuits regarding the conditions of foster care in the state of Georgia, which have led to changes in state law regarding abuse in foster families. Mr. Keenan served as the national president of the American Board of Trial Advocates, and from 1997-1998 as president of the Inner Circle of Advocates.

10. Mr. Keenan's vast experience and success provides the content for the confidential and proprietary trial techniques curriculum owned by Keenan's Kids and exclusively offered through the Keenan Trial Institute.

11. Based on public records, Defendant Sean Claggett is an individual residing at 7967 Sherman Oaks Ave., Las Vegas, Nevada 89129 or at 3924 Hampton

Grove Ct., Apt. C., Las Vegas, Nevada 89129, and conducting his legal business at 4101 Meadows Lane, Suite 100, Las Vegas, Nevada 89107.

12. Service may be made upon Claggett at 4101 Meadows Lane, Suite 100, Las Vegas, Nevada 89107.

13. Claggett is an attorney who taught various components of the Keenan Trial Institute curriculum owned by Keenan's Kids from 2015 through his resignation in September 2018.

14. Prior to his teaching for Keenan's Kids, Claggett participated as a student in multiple Keenan Trial Institute seminars, including without limitation on September 23-24, 2014, in Atlanta, Georgia offered by the Keenan Trial Institute regarding Keenan's Kids-owned voir dire techniques ("Keenan's Kids Voir Dire Course"), the contents of which form the basis of the trade secret claims herein.

15. While attending the above-referenced Keenan's Kids Voir Dire Course in Atlanta, Georgia, Claggett executed a confidentiality agreement (the "Agreement") with Keenan's Kids to protect the trade-secret and confidential contents of the seminar, the violation of which forms the basis of the breach of contract claims herein.

16. That confidentiality obligation of Claggett for the Keenan's Kids Voir Dire Course materials, content, and information extended further and applied to and was reinforced in Claggett's role as an instructor of the Keenan's Kids Voir Dire Course Voir Dire course. This further included a separate LISTSERVE that was limited to only those individuals who first took the Keenan's Kids Voir Dire Course, all of whom owed the same confidentiality obligations.

17. At the time of Claggett's resignation in 2018, he was put on notice by David Hoey, Dean of the Keenan Trial Institute and Keenan Ball Trial College, not to breach Claggett's confidentiality obligations, and further that Claggett was not authorized to teach anything learned as a student or instructor of the college courses at Keenan Trial Institute, or the seminars, or as a consult referring attorney, or as a co-dean of the damages course.

18. Having resigned from the Keenan Trial Institute as an instructor in 2018, Claggett now teaches voir dire-related courses, including *Sean Claggett's Case Analysis and Voir Dire School*, ("Claggett's Voir Dire School") which—without permission from Keenan's Kids—misappropriates, utilizes, and discloses substantial portions of Keenan's Kids' confidential and trade secret materials subject to the confidentiality Agreement that Claggett executed in 2014.

19. Claggett is offering the Claggett's Voir Dire School through non-party Trojan Horse Method, LLC ("Trojan Horse"), who is a competitor of the Keenan Trial Institute that provides trial skills educational programs, offering courses including Claggett's Voir Dire School that forms the basis of Keenan's Kids' claims in this case.

20. Claggett has regularly been present in and conducted business in Georgia, including teaching and attending various trial techniques courses in Atlanta on (i) May 20-21, 2014 (attending Keenan's Kids "Rules" seminar), (ii) June 26-27, 2014 (attending Keenan's Kids "Openings" seminar), (iii) August 20-21, 2014 (attending Keenan's Kids "Focus Groups" seminar), (iv) September 23-24, 2014 (attending Keenan's Kids Voir Dire Course), (v) March 12-13, 2015 (teaching Keenan's Kids "Trial" seminar), (vi) September 26-27, 2016 (teaching Keenan's Kids "Focus Group" seminar), and (vii) January 10-11, 2017 (teaching Keenan's Kids "Focus Group" seminar).

21. Claggett is subject to this Court's general and specific jurisdiction under the Due Process Clause of the United States Constitution and the laws of the State of Georgia via the Georgia Long Arm Statute, O.C.G.A. § 9-10-91(1), (2), and (3). Claggett has purposely availed himself of the privilege of acting in the Northern

District of Georgia and Keenan's Kids' claims arise directly from Claggett's activities in the Northern District of Georgia, as explained above. Claggett's contact with Georgia surpasses the minimum contacts necessary to establish jurisdiction, and further constitutes continuous and systematic conduct such that this Court may also exercise general jurisdiction. Claggett regularly conducts and solicits business within the Northern District of Georgia and has committed acts that violate Keenan's Kids' trade secret rights and confidentiality Agreement with Claggett in this District.

22. In addition, Claggett or Trojan Horse to his and its benefit has promoted and advertised the Claggett's Voir Dire School online across the United States which is accessible to residents of Georgia and the Northern District who can attend Claggett's Voir Dire School.

23. This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 as it involves claims presenting federal questions of law under the DTSA, 18 U.S.C. § 1836, *et seq*. This Court has supplemental jurisdiction over the breach of contract and GTSA claims under 28 U.S.C. § 1367(a) because these claims are so related to the claims under which the Court has original jurisdiction that they form part of the same case and controversy under Article III of the United States Constitution.

24. This Court further has diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332. Complete diversity of citizenship exists between the parties as Keenan's Kids is a citizen of Georgia and Claggett is citizen of Nevada. The amount in controversy exceeds the minimum $75,000 exclusive of interest and costs.

25. Venue is proper in this District under 28 U.S.C. § 1391 (b)(1), (b)(2) and (c)(2) because this Court has personal jurisdiction over Defendant in this District, and a substantial part of the events or acts giving rise to the claims occurred in this District in that Claggett acquired Keenan's Kids' trade secrets and signed a confidentiality Agreement with Keenan's Kids in this District, and Defendant has transacted and is transacting business in this District and has committed trade secret and confidentiality violations in this District.

**KEENAN'S KIDS' TRADE SECRETS**

26. Using Keenan's Kids' unique, proprietary and confidential information, the Keenan Trial Institute is a leader in the area of trial skills education, conducting a number of programs for attorneys related to the mission of winning trials, protecting our community safety and deterring wrongdoers by holding them accountable.

27. Keenan's Kids is the owner of the unique and proprietary curriculum Mr. Don C. Keenan has created through over forty years of experience as lead counsel in thousands of trials.

28. Because attorneys use these proprietary techniques to win trials, including significant financial awards, and to deter wrongdoers for the good of the community, Keenan's Kids' customers recognize the intrinsic value of Keenan's Kids' techniques.

29. Because Keenan's Kids is the owner of decades spent in creating and refining the unique, proprietary and confidential techniques that Keenan Trial Institute customers value, those techniques are also valuable to Keenan's Kids.

30. Conversely, if the confidential information or details related to Keenan's Kids' proprietary techniques became known to Keenan Trial Institute competitors, those competitors would use that information to develop and market competing educational courses to offer to the Keenan Trial Institute customers, damaging, if not destroying the value of Keenan's Kids and the Keenan Trial Institute.

31. A significant portion of the value Keenan's Kids derives from its proprietary techniques is based on its curriculum of trial techniques not being known to Keenan Trial Institute competitors.

32. A significant portion of the value Keenan's Kids derives from its proprietary techniques is based on its curriculum of trial techniques also not being known to defense counsel who have not taken the courses of the Keenan Trial Institute; and, if such proprietary techniques were known to defense counsel, the unauthorized access would give them a roadmap of what students and instructors of the Keenan Trial Institute are trying to accomplish in their jury selection at trial.

33. Keenan's Kids' proprietary trial techniques are used and intended for use in interstate commerce to the extent that the Keenan Trial Institute offers its courses in a variety of states and to attendees from a variety of states for implementation at trials around the country.

34. Specifically, and critical to the Keenan Trial Institute's success, are the confidential and proprietary trade secret voir dire techniques owned by Keenan's Kids' ("Trade Secret Voir Dire Techniques").

35. Driven by Keenan's Kids' confidential and proprietary Trade Secret Voir Dire Techniques, Keenan's Kids owns a unique and proven approach to selecting a jury for trial that directly leads to more favorable trial outcomes for Keenan Trial Institute customers.

36. Keenan's Kids is the owner of decades' worth of significant investment of time and resources in the development of its confidential and proprietary Trade Secret Voir Dire Techniques, relying on the extensive, unique personal experience and research of Mr. Keenan.

37. Keenan's Kids' confidential and proprietary Trade Secret Voir Dire Techniques are identified by unique title phrases. Keenan's Kids views those proprietary title phrases themselves, which are not generally known by the public, as trade secret and confidential. Without revealing the trade secrets themselves publicly here, and identifying the trade secrets with specificity herein, the Keenan Trial Institute teaches a unique system of tried and tested techniques and strategies, which were developed only after substantial time, investment, and effort, to use during voir dire examination in order to obtain a fair and impartial verdict and ultimately to secure a winning verdict and thus give students and instructors of the Keenan Trial Institute a strategic edge in their own jury selection at trial. The Trade Secret Voir Dire Techniques comprise at least four specific strategies, which Defendant is known to have wrongfully misappropriated, used and disclosed at Claggett's Voir Dire School. Four strategies that comprise the Trade Secret Voir Dire Techniques, which Defendant is known to have wrongful misappropriated, used and disclosed without authorization: (1) elicit information about what

motivates a prospective juror, (2) identify unfavorable jurors on matters related to compensation; (3) assess juror empathy, and (4) select jurors through use of "spotters." To identify the Trade Secret Voir Dire Techniques any further here would reveal the secrets themselves causing them to lose their value.

38. The Trade Secret Voir Dire Techniques lead to a demonstrably more open and engaging discussion between plaintiff's counsel and a venire panel. The practitioner who uses the proprietary Trade Secret Voir Dire Techniques will learn a great deal more valuable information about a venire that is critical to providing his or her client with a higher likelihood of identifying the most favorable juror's for a client's case and receiving the most favorable verdict.

39. In addition to jury selection, Claggett was privy to other trade secrets and confidential information of the Keenan Trial Institute, including unique theories related to the use and analysis of focus groups that were taught to him and at which he taught to others at the Keenan Trial Institute and at consult referrals.

40. As alleged further below, the Trade Secret Voir Dire Techniques and other information that Claggett has stolen from Keenan's Kids is highly unique, valuable, and confidential.

41. Keenan's Kids derives substantial value from its unique, proprietary and confidential Trade Secret Voir Dire Techniques because Keenan Trial Institute customers are willing to pay substantial enrollment fees to attend courses where these techniques are taught.

42. Keenan's Kids derives substantial value from these Trade Secret Voir Dire Techniques because selecting the appropriate jury by Keenan Trial Institute customers is critical to securing a favorable outcome at trial, including valuable financial awards and equitable relief.

43. A significant part of the value that Keenan's Kids derives from its Trade Secret Voir Dire Techniques is based on the information not being known to Keenan Trial Institute competitors, insofar as the Keenan Trial Institute offers a unique set of techniques that cannot be acquired elsewhere and which give Keenan Trial Institute customers using the Keenan's Kids curriculum a competitive advantage.

44. Defendant as well as Trojan Horse understand the value of the Trade Secret Voir Dire Techniques as evidenced at least in part by the fact that Claggett, Trojan Horse and its owner Dan Ambrose have advertised and touted in their own presentation materials Claggett's reputation as being trained by the Keenan Trial

Institute in order to get attorneys to sign up for their competing *Sean Claggett's Case Analysis and Voir Dire School* program and to bolster Claggett's credibility.

45. Keenan's Kids' proprietary Trade Secret Voir Dire Techniques, specifically, are used and intended for use in interstate commerce to the extent that Keenan's Kids owns, and the Keenan Trial Institute offers its voir dire instruction in a variety of states and to attendees from a variety of states for implementation at trials around the country.

46. To preserve the value of its confidential, proprietary, and trade secret information, including its Trade Secret Voir Dire Techniques, Keenan's Kids has taken a number of steps to keep the information secret.

47. To begin, a legal practitioner cannot get access to Trade Secret Voir Dire Techniques without first being vetted by the Keenan Trial Institute to confirm that the practitioner is in fact a plaintiff's attorney.

48. In addition, every attendee of a Keenan Trial Institute course where Keenan's Kids' confidential and proprietary information will be shared and was shared, including the Keenan's Kids Voir Dire Course, is required to sign a confidentiality Agreement that warrants the attendee will not disclose the confidential and proprietary information.

49. The confidentiality Agreement explicitly applies to Keenan's Kids trade secrets, copyrighted information, and other proprietary information "including ideas, techniques…inventions, know-how, processes…and information" related to the services and information provided at the specific Keenan Trial Institute event.

50. Attendees are further prohibited from videotaping, audio recordings, and photographs of any seminar. Further, any materials provided to students by the Keenan Trial Institute must remain with the institute when coursework is completed and students can leave only with their own notes.

51. All Keenan Trial Institute instructors are likewise bound by this confidentiality obligation and in turn further reinforce the confidentiality obligation to their students.

52. In addition, as alleged above, the Keenan's Kids Voir Dire Course that Claggett studied and later taught had its own separate LISTSERVE, to which access was limited only to individuals who first took the Keenan's Kids Voir Dire Course, all of whom owed the same confidentiality obligations.

53. Claggett withdrew from the LISTSERVE and the Keenan Ball Trial College because of criticism he received that he went outside the boundaries of permissible conduct.

54. Keenan's Kids tightly controls the distribution of any recordings of Keenan Trial Institute seminars and does not share the recordings without an agreement to maintain confidentiality.

**DEFENDANT'S VIOLATIONS OF KEENAN'S KIDS' TRADE SECRETS AND CONFIDENTIALITY AGREEMENT**

55. As early as May 2014, Claggett was aware of Keenan's Kids' unique, proprietary and confidential curriculum exclusively taught through the Keenan Trial Institute and had begun attending them.

56. On September 23-24, 2014, Claggett attended a Keenan's Kids Voir Dire Course where Claggett was taught the proprietary and confidential Trade Secret Voir Dire Techniques, including those specified and detailed above in paragraph 37 and incorporated herein.

57. As a prerequisite to his attendance at the Keenan's Kids Voir Dire Course, Claggett executed a confidentiality Agreement with Keenan's Kids.

58. The confidentiality Agreement that Claggett executed applies to Keenan's Kids' trade secrets, copyrighted information, and other proprietary information "including ideas, techniques…inventions, know-how, processes…and information" related to the services and information provided at the Keenan's Kids

Voir Dire Course, and further prohibited him from videotaping, taking audio recordings, and taking photographs of the seminar.

59. In 2015, Claggett became an instructor for the Keenan Trial Institute, teaching courses including Keenan's Kids' "Trial" and "Focus Group" seminars containing the asserted trade secrets and confidential information.

60. Claggett also made multiple trips to the "Beach" (in Santa Rosa Beach, Florida) for educational purposes and workshops for two-and-a-half days work on "Edge" materials and whereat the asserted trade secrets and confidential information were shared with and entrusted to Claggett.

61. Further showing how involved Claggett was in the Keenan Trial Institute and its asserted trade secrets and confidential information, Claggett was one of only four faculty members chosen to go on the educational cruise in May 2016 and spend a week immersed in the "Edge" materials.

62. In September 2018, Claggett resigned as an instructor of the Keenan Trial Institute.

63. Recently, Keenan's Kids learned that Claggett was offering Claggett's Voir Dire School through Trojan Horse wherein Claggett was teaching Keenan's

Kids' confidential and proprietary Trade Secret Voir Dire Techniques communicated to Claggett under the auspices of confidentiality, including during the Keenan's Kids Voir Dire Course that Claggett attended in September 2014, and subsequently taught from 2015 to 2018.

64. Claggett's Voir Dire School taught by Claggett and offered through Trojan Horse, specifically incorporates, embodies, and discloses the Keenan's Kids' proprietary and confidential Trade Secret Voir Dire Techniques detailed above in paragraph 37 and incorporated herein.

65. Claggett's Voir Dire School taught by Claggett and offered through Trojan Horse therefore uses substantial elements of the unique, proprietary confidential curriculum derived from Keenan's Kids' Trade Secret Voir Dire Techniques.

66. Defendant does not have Keenan's Kids' permission to wrongfully misappropriate, use and disclose at Claggett's Voir Dire School the Trade Secret Voir Dire Techniques that Claggett acquired at the Keenan's Kids Voir Dire Course in September 2014 and subsequently as an instructor at the Keenan Trial Institute.

67. Claggett knows and has known since the September 2014 Keenan's Kids Voir Dire Course, that he has a duty to maintain the secrecy of the information he

acquired therein, as demonstrated by Claggett's contemporaneous execution of a confidentiality Agreement with Keenan's Kids specifically pertaining to the Keenan's Kids Voir Dire Course and Trade Secret Voir Dire Techniques.

68. Defendant and Trojan Horse have knowledge and understand the value of the Trade Secret Voir Dire Techniques as evidenced at least in part by the fact that Claggett, Trojan Horse and its owner Dan Ambrose have advertised and touted in their own presentation materials Claggett's reputation as being trained by the Keenan Trial Institute in order to get attorneys to sign up for their competing *Sean Claggett's Case Analysis and Voir Dire School* program and to bolster Claggett's credibility.

69. Defendant including through Trojan Horse has offered, and intends to offer, Claggett's Voir Dire School containing Keenan's Kids' Trade Secret Voir Dire Techniques in interstate commerce, including in Nevada, California and Georgia.

70. For example, Defendant including through Trojan Horse makes registration for Claggett's Voir Dire School available online without geographic restriction for who can attend.

71. On information and belief, residents of more than one state have physically attended Claggett's Voir Dire School.

72. Defendant including through Trojan Horse also makes recordings of Claggett's Voir Dire School available to residents of any state and have sold said recordings to residents of Georgia.

73. Defendant including through Trojan Horse is offering Claggett's Voir Dire School, using Keenan's Kids' Trade Secret Voir Dire Techniques to improperly and directly compete with the Keenan Trial Institute, damaging the value of the unique, proprietary confidential curriculum owned by Keenan's Kids.

**COUNT ONE – VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2018 (18 U.S.C. § 1836 *ET SEQ.*)**

74. Keenan's Kids hereby realleges and incorporates paragraphs 1 through 73 as though set forth fully herein.

75. Keenan's Kids is the owner of trade secrets in its proprietary and confidential Trade Secret Voir Dire Techniques identified by unique title phrases, which are specified and detailed above in paragraph 37 and incorporated herein and comprise *inter alia*, proprietary technical or nontechnical data, methods, techniques, and processes of Keenan's Kids.

76. Keenan's Kids' Trade Secret Voir Dire Techniques are used in or intended for use in interstate commerce, insofar as Trade Secret Voir Dire Techniques

are taught in different states to attendees of Keenan's Kids Voir Dire Course from different states for use in trials across the country.

77. Keenan's Kids' Trade Secret Voir Dire Techniques are confidential and proprietary information, and Keenan's Kids has taken reasonable steps to maintain the confidential nature of that information including through required confidentiality agreements with Keenan's Kids Voir Dire Course attendees.

78. Keenan's Kids has expended considerable time, effort, and expense to compile and protect Keenan's Kids' Trade Secret Voir Dire Techniques.

79. Keenan's Kids' Trade Secret Voir Dire Techniques are not generally known to the public and are not readily ascertained by proper means to persons who could derive value from their disclosure or use.

80. The Keenan's Kids' Trade Secret Voir Dire Techniques derive independent economic value, actual and/or potential, from not being generally known to and not being readily ascertainable through proper means by, other persons who could obtain economic value from their disclosure or those persons' use.

81. Keenan's Kids' Trade Secret Voir Dire Techniques are of substantial value and have conferred a competitive advantage on Keenan's Kids insofar as

Keenan's Kids' Trade Secret Voir Dire Techniques command significant enrollment fees, are highly successful in practice, and are not available through any other source with the exception of Defendant's improper misappropriation, use and disclosures.

82. As an attendee of Keenan's Kids Voir Dire Course in September 2014, Claggett had access to and received Keenan's Kids' Trade Secret Voir Dire Techniques.

83. Claggett was aware that the information offered at Keenan's Kids Voir Dire Course was trade secret and executed a confidentiality Agreement with Keenan's Kids.

84. Claggett has never been permitted to misappropriate or disclose Keenan's Kids' Trade Secret Voir Dire Techniques.

85. Claggett as well as Trojan Horse understand the value of the Trade Secret Voir Dire Techniques as evidenced at least in part by the fact that Claggett, Trojan Horse and its owner Dan Ambrose are advertising and touting in their own presentation materials Claggett's reputation as being trained by the Keenan Trial Institute in order to get attorneys to sign up for their competing *Sean Claggett's Case Analysis and Voir Dire School* program and to bolster Claggett's credibility.

86. As set forth above, Claggett has wrongfully misappropriated, used and disclosed Keenan's Kids' Trade Secret Voir Dire Techniques in Claggett's Voir Dire School offered through Trojan Horse in violation of the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836 *et seq*.).

87. Claggett's Voir Dire School, taught by Claggett and offered through Trojan Horse, embodies, incorporates, and is substantially derived from, Keenan's Kids' Trade Secret Voir Dire Techniques, including those specified and detailed above in paragraph 37 and incorporated herein.

88. Claggett's Voir Dire School, taught by Claggett and offered through Trojan Horse, is conducted in and intended for interstate commerce insofar as it is offered and has been sold in multiple states, including Georgia, Nevada, and California.

89. As a direct and proximate result of Defendant's violation of the Defend Trade Secrets Act of 2016, Keenan's Kids has suffered damages that will be established at trial of this matter.

90. Defendant's actions in misappropriating, using and disclosing Keenan's Kids' Trade Secret Voir Dire Techniques described herein for his own personal

commercial gain through the Claggett's Voir Dire School was willful, wanton, and malicious, and was done with reckless disregard for the rights of Keenan's Kids.

91. Keenan's Kids has no adequate remedy at law to redress the conduct complained of herein and will suffer continued imminent and irreparable harm as a result unless Defendant is preliminarily and permanently restrained from his ongoing wrongful misappropriation, use and disclosure of Keenan's Kids' Trade Secret Voir Dire Techniques through Claggett's Voir Dire School, Trojan Horse, and elsewhere.

92. Keenan's Kids has sustained and will continue to sustain actual losses resulting from Defendant's wrongful misappropriation, use and disclosure, and is also entitled to recover Defendant's ill-gotten profits or sales, Defendant's savings in development costs, punitive damages from Defendant's intentional misappropriation, use, and disclosure and knowing disregard of Keenan's Kids' rights in an amount to be proved at trial, and any other relief the Court deems just and proper.

**COUNT TWO – VIOLATION OF THE GEORGIA TRADE SECRETS ACT OF 1990 (O.C.G.A. § 10-1-760 *ET SEQ.*)**

93. Keenan's Kids hereby realleges and incorporates paragraphs 1 through 73 as though set forth fully herein.

94. Keenan's Kids is the owner of trade secrets in its proprietary and confidential Trade Secret Voir Dire Techniques identified by unique title phrases, and specified and detailed above in paragraph 37 and incorporated herein, which comprise, *inter alia*, proprietary technical or nontechnical data, methods, techniques, and processes of Keenan's Kids.

95. Keenan's Kids' Trade Secret Voir Dire Techniques are confidential and proprietary information, and Keenan's Kids has taken reasonable steps to maintain the confidential nature of that information, including through required confidentiality agreements with Keenan's Kids Voir Dire Course attendees.

96. Keenan's Kids has expended considerable time, effort, and expense to compile and protect Keenan's Kids' Trade Secret Voir Dire Techniques.

97. Keenan's Kids' Trade Secret Voir Dire Techniques are not generally known to the public and are not readily ascertained by proper means to persons who could derive value from their improper disclosure or use.

98. The Keenan's Kids' Trade Secret Voir Dire Techniques derive independent economic value, actual and/or potential, from not being generally known to and not being readily ascertainable through proper means by, other persons who could obtain economic value from their improper disclosure or those persons' use.

99. Keenan's Kids' Trade Secret Voir Dire Techniques are of substantial value and have conferred a competitive advantage on Keenan's Kids insofar as Keenan's Kids' Trade Secret Voir Dire Techniques command significant enrollment fees, are highly successful in practice, and are not available through any other source with the exception of Defendant's improper misappropriation, use and disclosures.

100. As an attendee of Keenan's Kids Voir Dire Course in September 2014, and as a subsequent instructor at Keenan Trial Institute, Claggett had access to and received Keenan's Kids' Trade Secret Voir Dire Techniques.

101. Claggett was aware that the information offered at Keenan's Kids Voir Dire Course was trade secret and executed a confidentiality Agreement with Keenan's Kids. Claggett has a duty not to disclose and has never been permitted to disclose Keenan's Kids' Trade Secret Voir Dire Techniques.

102. Claggett as well as Trojan Horse understand the value of the Trade Secret Voir Dire Techniques as evidenced at least in part by the fact that Claggett, Trojan Horse and its owner Dan Ambrose are advertising and touting in their own presentation materials Claggett's reputation as being trained by the Keenan Trial Institute in order to get attorneys to sign up for their competing *Sean Claggett's Case Analysis and Voir Dire School* program and to bolster Claggett's credibility.

103. As set forth above, Claggett has wrongfully misappropriated, used and disclosed Keenan's Kids' Trade Secret Voir Dire Techniques in Claggett's Voir Dire School offered through Trojan Horse in violation of the Georgia Trade Secrets Act of 1990, O.C.G.A. § 10-1-760 *et seq*.

104. Claggett's Voir Dire School, taught by Claggett and offered through Trojan Horse, embodies, incorporates, and is substantially derived from, Keenan's Kids' Trade Secret Voir Dire Techniques, including but not limited to, those specified and detailed above in paragraph 37 and incorporated herein.

105. As a direct and proximate result of Defendant's violation of the Defend Trade Secrets Act of 2016, Keenan's Kids has suffered damages that will be established at trial of this matter.

106. Defendant's actions in misappropriating and disclosing Keenan's Kids' Trade Secret Voir Dire Techniques described herein for his own personal and commercial gain through Claggett's Voir Dire School was willful, wanton, and malicious, and was done with reckless disregard for the rights of Keenan's Kids.

107. Keenan's Kids has no adequate remedy at law to redress the conduct complaint of herein and will suffer continued imminent and irreparable harm as a result unless Defendant is preliminarily and permanently restrained from his ongoing

misappropriation, use and disclosure of Keenan's Kids' Trade Secret Voir Dire Techniques.

108. In addition, as a direct and proximate result of Defendant's acts, Keenan's Kids has sustained and/or will inevitably sustain substantial damage and will continue to sustain damages in the future in an amount to be proved at trial.

**COUNT THREE – BREACH OF CONTRACT**

109. Keenan's Kids hereby realleges and incorporates paragraphs 1 through 73 as though set forth fully herein.

110. In September 2014, as an attendance prerequisite to a Keenan's Kids Voir Dire Course, Claggett executed the confidentiality Agreement with Keenan's Kids regarding Keenan's Kids' Trade Secret Voir Dire Techniques.

111. The Agreement, attached hereto as **Exhibit 1**, is a valid and binding agreement for which consideration was exchanged.

112. Keenan's Kids has performed all of its obligations under the Agreement by providing Claggett access to the Keenan's Kids Voir Dire Course on September 24-26, 2014.

113. The confidentiality Agreement that Claggett executed applies to protect Keenan's Kids' trade secrets, copyrighted information, and other proprietary information "including ideas, techniques…inventions, know-how, processes…and information" related to the services and information provided at the Keenan's Kids Voir Dire Course, and further prohibited him from videotaping, taking audio recordings, and taking photographs of the seminar.

114. Claggett knows and has known since executing the Agreement with Keenan's Kids regarding the Keenan's Kids Voir Dire Course as a student and instructor of the Course, that he has a duty to maintain the secrecy of the information he acquired therein, including Keenan's Kids' Trade Secret Voir Dire Techniques.

115. Claggett breached the Agreement by misappropriating, using and disclosing Keenan's Kids' Trade Secret Voir Dire Techniques to attendees of Claggett's Voir Dire School offered through Trojan Horse.

116. As a result of this breach and imminent future breach by Claggett, Keenan's Kids is entitled to preliminary and permanent injunctive relief as set forth below.

117. In addition, as a direct and proximate result of Claggett's acts, Keenan's Kids has sustained and will continue to sustain damages in the future in an amount to be proved at trial.

**COUNT FOUR – BREACH OF IMPLIED IN FACT CONTRACT**

118. Keenan's Kids hereby realleges and incorporates paragraphs 1 through 73 as though set forth fully herein.

119. Claggett and Keenan's Kids manifested an intent to contract regarding Claggett's obligation to maintain the confidentiality of Keenan's Kids' Trade Secret Voir Dire Techniques through Claggett's execution of the confidentiality Agreement attached hereto as **Exhibit 1** as an attendance prerequisite to a Keenan's Kids Voir Dire Course in September 2014.

120. The confidentiality Agreement is, at the very least, evidence of an implied-in-fact contract between the parties regarding Claggett's obligation to maintain the confidentiality of Keenan's Kids' Trade Secret Voir Dire Techniques in exchange for Claggett's participation in the Keenan's Kids Voir Dire Course in September 2014.

121. Keenan's Kids has performed all of its implied-in-fact contract obligations owed to Claggett by providing Claggett access to the Keenan's Kids Voir Dire Course on September 24-26, 2014.

122. The implied-in-fact contract as evidenced by the Agreement that Claggett signed applies to protect Keenan's Kids' trade secrets, copyrighted information, and other proprietary information "including ideas, techniques…inventions, know-how, processes…and information" related to the services and information provided at the Keenan's Kids Voir Dire Course, and further prohibited him from videotaping, taking audio recordings, and taking photographs of the seminar.

123. Claggett knows and has known since signing the Agreement with Keenan's Kids regarding the Keenan's Kids Voir Dire Course, that he has a duty to maintain the secrecy of the information he acquired therein, including Keenan's Kids' Trade Secret Voir Dire Techniques.

124. Claggett breached the implied-in-fact contract for confidentiality by misappropriating, using and disclosing Keenan's Kids' Trade Secret Voir Dire Techniques to attendees of Claggett's Voir Dire School offered through Trojan Horse.

125. As a result of this breach and imminent future breach by Claggett, Keenan's Kids is entitled to preliminary and permanent injunctive relief as set forth below.

126. In addition, as a direct and proximate result of Claggett's acts, Keenan's Kids has sustained and will continue to sustain damages in the future in an amount to be proved at trial.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procedure 38, Keenan's Kids demands a trial by jury on all claims and issues triable.

**PRAYER FOR RELIEF**

WHEREFORE, Keenan's Kids prays:

1. That the Court award judgment to Keenan's Kids on all counts of the Complaint;

2. For preliminary and permanent injunctions, pursuant, but not limited, to 18 U.S.C. § 1836(b)(3)(A) and O.C.G.A. § 10-1-762 enjoining Defendant, his agents, servants, employees, attorneys, and all persons in active concert with him who shall receive notice of said injunctions, from directly or indirectly,

misappropriating, disclosing, using, or otherwise causing or allowing any use or disclosure of Keenan's Kids trade secrets and confidential information;

3. For general actual damages in an amount that is yet to be ascertained;

4. For disgorgement of the profits of Defendant in the amount necessary to prevent Defendant's unjust enrichment from his conduct alleged herein that is not addressed in computing damages for actual loss;

5. For, in the alternative in lieu of damages measured by other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the Defendant's unauthorized misappropriation, disclosure or use of Keenan's Kids trade secrets and confidential information;

6. For special damages, including attorney's fees due to Defendant's willful or malicious conduct in an amount according to proof, including pursuant to 18 U.S.C. § 1836(b)(3)(D) and O.C.G.A. § 10-1-761;

7. For exemplary damages, under any appropriate alternative, as set forth in 18 U.S.C. § 1836(b)(3)(C) and O.C.G.A. § 10-1-763(b);

8. For legal costs, interest and fees incurred by Keenan's Kids to attain the relief requested herein; and

9. Such other and further relief as the Court may deem just and equitable.

Respectfully submitted this 21st day of April, 2020.

/s/ *John M. Bowler*
John M. Bowler, Esq.
Georgia Bar No. 071770
Michael D. Hobbs, Jr., Esq.
Georgia Bar No. 358160
Lindsay Mitchell Henner, Esq.
Georgia Bar No. 272310
Troutman Sanders LLP
Bank of America Plaza, Suite 3000
600 Peachtree Street, NE
Atlanta, Georgia 30308
Tel: (404) 885-3000
Fax: (404) 962-6513
john.bowler@troutman.com
michael.hobbs@troutman.com
lindsay.henner@troutman.com

*Attorneys for Plaintiff Keenan's Kids Foundation, Inc.*