## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **KEENAN'S KIDS FOUNDATION, INC.** | |
| **Plaintiff,** | **CIVIL ACTION NO: 1:20-cv-01702-WMR** |
| **v.** | |
| **SEAN CLAGGETT,** | |
| **Defendant.** | |

### DEFENDANT SEAN CLAGGETT'S BRIEF IN SUPPORT OF HIS MOTION TO DISMISS

Defendant Sean Claggett hereby submits his Brief in Support of his Motion to Dismiss ("Motion").

## I.  INTRODUCTION

Mr. Claggett's Motion should be granted under Fed. R. Civ. P. 12(b)(6) because Plaintiff's Complaint fails to plead facts establishing any valid or plausible non-disclosure duty or breach concerning the alleged, but not actual, trade secrets.

More particularly, Plaintiff's claims are based on a supposed confidentiality agreement, pled under express and implied theories, that Mr. Claggett allegedly violated by disclosing trade secrets. But if the alleged agreements do not impose the obligations alleged—and they do not—Plaintiff's claims unravel.

1

To begin, Plaintiff's breach of contract claim asserts that Mr. Claggett signed a confidentiality agreement that prohibits him from disclosing *voir dire* techniques he learned at a September 2014 seminar. But the only written agreement attached to the Complaint, or alleged at all, imposes no such duty. On its face, that agreement set only four requirements for Mr. Claggett, and not one of those is alleged to have been breached.

Plaintiff's implied-in-fact contract claim fares no better. It is based on that same written agreement and makes the same inaccurate characterizations of the duties imposed. But more fundamentally, an implied contract claim cannot be based on an express contract as a matter of law. Separately, because the claim asks the Court to find that the parties agreed to unwritten, yet perpetual-in-duration, confidentiality obligations, the claim is barred by the statute of frauds.

And in the absence of any such written or implied agreement, Plaintiff's misappropriation claims fail, too, because Plaintiff hasn't alleged any other source of a duty to maintain confidentiality. Those claims also fail because the disputed *voir dire* techniques are not trade secrets as a matter of law. They are publicly available, were directly disseminated to attorney customers for use in public jury trials, and are readily ascertainable to any observant trial lawyer. Further, Plaintiff has not alleged it took reasonable steps to protect them.

2

For these reasons, as explained below, the Court should grant Mr. Claggett's Motion and dismiss the Complaint with prejudice.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Complaint and the Parties

On April 21, 2020, Plaintiff Keenan's Kids Foundation, Inc. ("Plaintiff") filed its Complaint. On May 7, 2020, Defendant Sean Claggett was served with Summons and a copy of the Complaint, its Exhibit 1, and the Civil Cover Sheet.

Plaintiff alleges it is a Georgia non-profit corporation with its principal place of business located in Atlanta, Georgia. (Dkt. No. 1 ("Compl.") ¶ 3.) Mr. Claggett lives and conducts legal business in Las Vegas, Nevada. (*See* Compl. ¶ 11.)

Plaintiff's Complaint purports to assert claims for (1) violation of the Defend Trade Secrets Act ("DTSA"), (2) violation of the Georgia Trade Secrets Act ("GTSA"), (3) breach of contract, and (4) breach of implied in fact contract. (Compl., pp. 21-33.)

### B.    The "Confidentiality Agreement" and Plaintiff's Allegations

Plaintiff alleges it was established by "Don C. Keenan, a renowned, award-winning Atlanta-based trial lawyer," and that it owns "intellectual property exclusively used" by the Keenan Trial Institute ("Institute"), which offers "educational curriculum instructing lawyers on how to win their trials . . . ."

3

(Compl. ¶¶ 2, 8.) Mr. Claggett is alleged to have been a student of "multiple" Institute seminars, including one in September 2014 "regarding Keenan's Kids-owned voir dire techniques." (Compl. ¶ 14). Plaintiff further alleges that, while attending and as a prerequisite to that seminar, Mr. Claggett "executed a confidentiality agreement (the 'Agreement') with Keenan's Kids to protect" the seminar's "trade-secret and confidential contents." (Compl. ¶¶ 15, 57.)

A copy of the Agreement is attached to the Complaint as Exhibit 1. (Dkt. No. 1-1 ("Ex. 1").) Although Plaintiff alleges that the Agreement "warrants" that the signing "attendee will not disclose" the seminar's "confidential and proprietary information" (Compl. ¶ 48), it simply states, in relevant part, as follows:

> THIS AGREEMENT governs the disclosure of information *between the undersigned guest* at this event . . . *and the Keenan's Kids Foundation* as the host for this event, "Keenan Ball College Court 4."

> "Confidential Information" shall mean any and all technical and non-technical information related to this seminar provided by either party to the other, including but not limited to trade secrets, copyrighted information, proprietary information – including ideas, techniques, . . . inventions, know-how, processes . . . and information the disclosing party provides regarding third parties . . . .

> This confidentiality regards all formats and mediums, written or oral, and direct or indirect pieces of information. In consideration of this confidentiality, the undersigned agrees to the following undertaking:

> 1.   No videotaping of any portion of the seminar.
> 2.   No audio recording of any portion of the seminar.
> 3.   No photographs taken during the seminar.

4. Lastly, by signing this agreement, I state that I do not represent any insurance companies, or self-insured defendants.[1]

Each party represents and warrants to the other party that it has the requisite corporate authority to enter into and perform this Agreement, and its execution and performance under this Agreement, including its disclosure of Confidential Information to the Recipient, will not result in a breach of any obligation to any third party or infringe or otherwise violate any third party's rights.

(Ex. 1) (emphasis added).

After describing its view of the Agreement, Plaintiff alleges that all Institute "instructors are likewise bound by *this* confidentiality obligation and in turn further reinforce the confidentiality obligation to their students." (Compl. ¶¶ 48-51) (emphasis added). And Mr. Claggett is alleged to have become an Institute instructor in 2015, teaching courses concerning "the asserted trade secrets and confidential information" before resigning in 2018. (Compl. ¶¶ 13, 16-17, 59-62).

Plaintiff alleges that Mr. Claggett now teaches his own *voir dire* class that "incorporates, embodies, and discloses the Keenan's Kids' proprietary and confidential Trade Secret Voir Dire Techniques," detailed "in paragraph 37." (Compl. ¶¶ 63-65). Paragraph 37 in turn alleges that those techniques are "identified by unique title phrases," which Plaintiff views as "trade secret and

---

[1] Plaintiff does not allege that Mr. Claggett breached any of these four duties. (*See generally* Compl.)

confidential," comprise "at least four specific strategies": to (1) "elicit information" about "prospective juror" motivation, (2) "identify unfavorable jurors on matters related to compensation; (3) assess juror empathy, and (4) select jurors through use of 'spotters.'"

Plaintiff says it "derives substantial value" from the techniques because "customers are willing to pay substantial enrollment fees" to attend the courses, and that a "significant part" of the techniques' value is based "on the information not being known" to competitors, because it cannot "be acquired elsewhere." (Compl. ¶¶ 41-43.) Plaintiff alleges that to preserve this value, it "has taken a number of steps to keep the information secret." (Compl. ¶ 46.)

In particular, Plaintiff claims that attorneys cannot access the techniques until the Institute confirms they are plaintiff's attorneys, that every seminar attendee is required to sign and abide by the so-called confidentiality agreement, that any materials the Institute provides students "must remain with the institute when coursework is completed" (but students can take their own notes), that access to the *voir dire* course's "separate LISTSERVE" was limited to individuals who had taken that course, and that Plaintiff "tightly controls the distribution of any recordings" of Institute seminars and does not share them without an agreement to maintain confidentiality." (Compl. ¶¶ 46-52, 54.)

Plaintiff alleges that Mr. Claggett lacks permission to "use and disclose" its techniques in his own *voir dire* class, and that Mr. Claggett's execution of the Agreement demonstrates that he "has known since the September 2014" *voir dire* course at the Institute that "he has a duty to maintain the secrecy of the information he acquired" there. (Compl. ¶¶ 66-67.) Plaintiff says that when Mr. Claggett resigned, he was "put on notice" not to breach confidentiality obligations, and not "to teach anything learned as a student or instructor" at the Institute, or "as a consult referring attorney," or "co-dean of the damages course." (Compl. ¶ 17.)

Plaintiff alleges that Mr. Claggett has done so anyway, breaching his confidentiality obligations and misappropriating its trade secrets, causing Plaintiff damage. (*See generally* Compl. ¶¶ 74-126.) Although Plaintiff alleges it has no adequate remedy at law and will suffer imminent and irreparable harm without injunctive relief (*see* Compl., ¶¶ 91, 107, 116, 125), it has not moved for any such relief. (*See generally* Dkt.)

## III.   ARGUMENT AND CITATION TO AUTHORITY

Plaintiff's Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6)[2]

---

[2] "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Further, a "federal court is obliged to apply the choice of law rule

because it fails to state a claim on which relief could be granted.

### A.    Standard on Motion to Dismiss for Failure to State a Claim.

Dismissal under Rule 12(b)(6) is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).[3] Courts are to accept the plaintiff's well-pleaded factual allegations as true and construe them "in the light most favorable to" the plaintiff. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005).

Even so, "plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004) ("conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."). Similarly, "when the exhibits contradict the general and conclusory allegations of the pleading, the

---

of the state in which it sits," *Best Canvas Prod. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) (citing *Klaxon Co. v. Stentor Elec.l Mfg. Co.*, 313 U.S. 487 (1941)), including as to pendent state law issues in federal question cases. *CPI Plastics, Inc. v. USX Corp.*, 3:95-CV-124-J, 1999 WL 33633079, at *6 (N.D. Ga. Jan. 20, 1999), *aff'd sub nom. CPI Plastics v. USX Corp.*, 212 F.3d 599 (11th Cir. 2000).

[3] Internal citations are omitted here, and hereafter, except where otherwise noted.

exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir.

2007). And a court "may take judicial notice of matters of public record without

converting a Rule 12(b)(6) motion into a Rule 56 motion." *Halmos v. Bomardier*

*Aerospace Corp.*, 404 Fed. App'x 376, 377 (11th Cir. 2010).

Ultimately, the complaint must allege "enough facts to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A complaint alleging facts that are "merely consistent with" liability "stops short

of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S at 557).

### B. Plaintiff has failed to state a breach of contract or breach of implied-in-fact contract claim.

#### 1. Choice of Law[4]

Georgia applies the rule of *lex loci contractus*, under which contracts "are to

be governed as to their nature, validity, and interpretation by the law of the place

where they were made, except where it appears from the contract itself that it is to

be performed in a State other than that in which it was made, in which case . . . the

laws of that sister State will be applied." *Convergys Corp. v. Keener*, 276 Ga. 808,

811 & n.1, 582 S.E.2d 84, 86 & n.1 (2003).

---

[4] *See* n.2, *supra*.

Plaintiff alleges the Agreement was made in Georgia. (*See* Compl. ¶ 15; Ex. 1.) And the Agreement shows it was to be performed there, too, where Plaintiff and the Institute were to provide instruction, and where Mr. Claggett was not to take photos or video or audiotapes. (*See* Ex. 1.) *See also Lima Delta Co. v. Global Aerospace, Inc.*, 325 Ga. App. 76, 83, 752 S.E.2d 135, 141 (2013) (a contract is "made" where the "last act essential to" complete "the contract" is performed).

Plaintiff's apparent theory that the Agreement imposes a boundary-less non-disclosure obligation, even were it accepted (it should not be), doesn't change these "made" and "performed" conclusions. Where a contract contemplates no particular place for performance, including by having a broad geographic scope, "Georgia generally applies the law of the place where the contract was made." *See id.* (citing *Fed. Ins. Co. v. Nat'l Dist. Co., Inc.*, 203 Ga. App. 763, 767(1), 417 S.E.2d 671 (1992)). And unless a contract case requires application of another jurisdiction's "statutes and decisions construing those statutes," Georgia's common law applies. *Nationwide Prop. & Cas. Ins. Co. v. Renaissance Bliss, LLC*, 396 F. Supp. 3d 1287, 1294 (N.D. Ga. 2019).

## 2.     Plaintiff has not alleged a breach of contract.

The elements of a breach of contract claim under Georgia law are "(1) the breach and the (2) resultant damages (3) to the party who has the right to complain

about the contract being broken." *Dewrell Sacks, LLP v. Chicago Title Ins. Co.*, 324 Ga. App. 219, 223, 749 S.E.2d 802, 806 (2013).

### a.   The Agreement is the only contract alleged.

The sole contract on which Plaintiff's breach claim is based is the so-called "Confidentiality Agreement." (Compl. ¶¶ 109-17.) This is true even considering the "incorporated by reference" allegations, none of which allege that Mr. Claggett executed any other written agreement at any time. (*See* Compl. ¶¶ 1-73.) Rather, immediately after identifying the Agreement and characterizing its terms, Plaintiff alleged that all Institute instructors were "likewise bound by *this* confidentiality obligation." (Compl. ¶¶ 48-51) (emphasis added).

### b.   Plaintiff failed to allege a breach of the Agreement.

Leading with the phrase "the undersigned agrees to the following undertaking," the Agreement imposed only four duties on Mr. Claggett. (*See* Ex. 1.) Those were to refrain from (1) videotaping, (2), audio recording, and (3) photographing any portion of the seminar, and (4) "[l]astly," to declare that he did not represent any insurance companies, or self-insured defendants. (*See id.*) The Complaint nowhere alleges, however, that Mr. Claggett breached duties (1) through (3), or that he failed to make or inaccurately made the required declaration. (*See generally* Compl.) As a matter of law, the Complaint fails to allege a breach.

Plaintiff's apparent belief that the Agreement extends further, requiring Mr. Claggett "to maintain the secrecy of the information he acquired" as a student and instructor of the *voir dire* course (Compl. ¶¶ 16, 48, 113-14), is unsupportable. The Agreement's opening lines clarify that it "governs the disclosure of information *between the undersigned guest* at *this event*" and "*the Keenan's Kids Foundation* as the host for *this event*." (Ex. 1.) (emphasis added) By these express terms, the Agreement does not apply to other events. (*See id.*) And the Agreement's limited references to third parties say nothing whatever about non-disclosure. (*See id.*)

Thus, despite Plaintiff's attempts to allege in general and conclusory terms that the Agreement imposed duties far exceeding the four requirements enumerated above, the Agreement says otherwise, and it governs. *See Griffin Indus., Inc.*, 496 F.3d at 1205-06. Count Three should be dismissed.

### 3.    Plaintiff fails to allege an implied-in-fact contract claim.

Contracts implied-in-fact "only differ from express contracts because the method of acceptance is by conduct rather than words." *Lockett v. Allstate Ins. Co.*, 364 F. Supp. 2d 1368, 1380 (M.D. Ga. 2005). The elements necessary to evidence an implied-in-fact contract are thus the same as those required of an express contract: "mutual assent or offer and acceptance, consideration, legal capacity, and a lawful subject matter." *Bishop v. Shorter Univ., Inc.*, 4:15-cv-0033-HLM, 2015

12

WL 13753710, *6 (N.D. Ga. 2015).

### a. Plaintiff's express contract allegations are fatal to an implied contract theory.

An "express contract and an implied contract for the same subject matter cannot exist at the same time between the same parties." *In re Arby's Rest. Group, Inc. Litig.*, 1:17-cv-0514-AT, 2018 WL 2128441, *16 (N.D. Ga. Mar. 5, 2018) (quoting John K. Larkins, Jr., *Ga. Contracts: Law & Litig.*, § 5-8, p. 139 and citing, *inter alia*, *Davidson v. Maraj*, 609 Fed. App'x 994, 997-98 (11th Cir. 2015) (noting that an implied contract theory is not available when an express contract exists governing the claimed rights and responsibilities of the parties)).

Plaintiff, however, not only attempted to plead both an express contract claim and an implied one, but based its implied theory on the same Agreement underlying Plaintiff's (erroneous) express contract claim. (*Compare* Compl. ¶¶ 109-17 *with* ¶¶ 118-26.) Plaintiff alleged, for example, that Mr. Claggett manifested his intent to contract to maintain confidentiality by executing the confidentiality Agreement, and has known "since signing the Agreement" that "he has a duty to maintain the secrecy of the information." (Compl. ¶¶ 119-23).

Yet Plaintiff alleges that its supposed implied-in-fact contract imposed broad non-disclosure and confidentiality obligations (*id.* at ¶¶ 122-23), far exceeding the Agreement's actual terms. *See* Part III.B.2.b., *supra*. But as to those supposed

additional terms, the Complaint does not allege any additional communications or conduct between Plaintiff and Mr. Claggett that could support the inference that those two parties agreed to anything beyond the Agreement's limited provisions.

Because an express contract claim bars "a simultaneous claim on theory of implied contract," *Lockett*, 364 F. Supp. 2d at 1381 (citing *Fed. Ins. Co. v. Westside Supply Co.*, 264 Ga. App. 240, 590 S.E.2d 224, 232 (2003)), and because Plaintiff has pled nothing other than its express contract as a basis for its implied-in-fact contract claim (not to mention that the express contract was not breached), the implied-in-fact contract claim must be dismissed.

### b.   Plaintiff's implied-in-fact claim is also barred by the statute of frauds.

Under Georgia's statute of frauds, agreements that are "not to be performed within one year from the making thereof" must be "in writing and signed by the party charged therewith," or are unenforceable. O.C.G.A. § 13-5-30(a)(5).

As discussed, Plaintiff has alleged nothing beyond the express Agreement as a basis for its implied-in-fact contract claim. (*See* Compl. ¶¶ 118-26). But to the extent Plaintiff attempts to argue that the parties' conduct or communications somehow evidenced an implied confidentiality agreement that exceeds the Agreement's four obligations, the statute of frauds bars any such contract.

That is, Plaintiff apparently believes that the supposed implied contract

requires Mr. Claggett to maintain the confidentiality of information learned in the Institute's September 2014 *voir dire* course, from the date of that course into perpetuity. Plaintiff certainly did not plead that the alleged implied contract was for a year or less. (*See generally* Compl.) And the Complaint—based on Mr. Claggett's alleged 2018-and-after conduct (*see* Compl. ¶¶ 18-19, 62-73)—reflects Plaintiff's view that the alleged non-disclosure obligations are ongoing.

The alleged implied contract is thus, if anything, "incapable of being performed within a year," triggering the statute of frauds. *Bithoney v. Fulton-DeKalb Hosp. Auth.*, 313 Ga. App. 335, 341, 721 S.E.2d 577, 582 (2011). And because it is not in writing (again, the Agreement contains no such confidentiality terms, as Plaintiff's implied-contract claim appears to concede), any such implied contract is unenforceable as a matter of law. Count Four should be dismissed.

**C.    Plaintiff has failed to state a misappropriation of trade secrets claim under either the GTSA or the DTSA.**

At least two independent reasons compel dismissal of Plaintiff's misappropriation of trade secrets claims. First, Plaintiff has failed to adequately allege "misappropriation," which requires that trade secrets were either obtained by improper means or disclosed or used despite a duty to maintain confidentiality. *See* O.C.G.A. § 10-1-761(2); 18 U.S.C.A. § 1839(5). Plaintiff has not alleged that Mr. Claggett obtained trade secrets improperly. And although Plaintiff alleges that the

Agreement imposes a confidentiality duty, the Agreement proves otherwise, and Plaintiff has not alleged any additional source of a duty.

Second, Plaintiff has failed to adequately allege that any *voir dire* information was a "trade secret,"—*i.e.*, that it was not "readily ascertainable by proper means" and was "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *See* O.C.G.A. § 10-1-761(4); 18 U.S.C.A. § 1839(3). Rather, Plaintiff seeks trade-secret protection for information disclosed to seminar participants without a non-disclosure agreement, for the participants' *public use* in jury trials "across the country" (Compl. ¶ 76), from which any trial attorney could ascertain the information. Even more fundamental, the disputed *voir dire* techniques are widely available and discussed online.

For these reasons, Plaintiff's trade secrets claims must also be dismissed.

### 1.    **GTSA and DTSA Standards**[5]

A plaintiff claiming relief under the GTSA must prove that "'(1) it had a trade secret and (2) the opposing party misappropriated'" it. *Argos USA LLC v.*

---

[5] Courts consider and apply federal decisions applying and construing the GTSA and other state trade secret acts in their combined analyses of both the GTSA and the DTSA. *See, e.g.*, *Northstar Healthcare Consulting, LLC v. Magellan Health, Inc.*, 1:17-CV-1071-ODE, 2019 WL 4805558, *41-43 (N.D. Ga. July 10, 2019) (applying one case applying Florida's trade secret act and two cases applying the GTSA in combined analysis of GTSA and DTSA claims).

*Young*, 1:18-CV-02797, 2019 WL 4125968, *5 (N.D. Ga. June 28, 2019) (quoting *Cap. Asset Research Corp. v. Finnegan*, 160 F.3d 683, 685 (11th Cir. 1998)). "The DTSA requires the same showing," and also requires that the trade secret be "related to a product or service used in, or intended for use in, interstate or foreign commerce." *Id.* (internal quotations omitted).

The GTSA defines "misappropriation" as:

(A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) Used improper means to acquire knowledge of a trade secret;

(ii) At the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:

(I) Derived from or through a person who had utilized improper means to acquire it;

(II) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii) Before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

O.C.G.A. § 10-1-761(2). The DTSA defines "misappropriation" in materially the same terms.   *See* 18 U.S.C.A. § 1839(5); *see also Argos USA, LLC*, 2019 WL

4125968, *7 (in combined GTSA and DTSA "misappropriation" analysis, quoting

DTSA definition in full, and citing the parallel GTSA definition as a "*see also*").

The GTSA defines "trade secret," in relevant part, as:

> . . . information, without regard to form, including, but not limited to . . . a formula, a pattern, a compilation, a program, . . . a method, a technique, . . . [or] a process . . . which is not commonly known by or available to the public *and which information*:
>
>> (A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>>
>> (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

O.C.G.A. § 10-1-761(4) (emphasis added). Again, the DTSA defines "trade secret"

in substantially similar terms. *See* 18 U.S.C.A. § 1839(3).

## 2. Plaintiff has failed to allege misappropriation.

Plaintiff has not adequately alleged that Mr. Claggett either acquired a trade

secret by improper means or disclosed a trade secret knowing (or with reason to

know) that he had acquired it under circumstances giving rise to a duty to maintain

secrecy. In fact, Plaintiff has not alleged "improper means" at all. Rather, Plaintiff

acknowledges that Mr. Claggett learned the disputed information as a student at a

September 2014 *voir dire* seminar, for which Mr. Claggett paid "significant

enrollment fees," and that information was reinforced in later educational settings.

18

(Compl. ¶¶ 14, 41, 56, 59-60, 66, 82, 100).

Separately, Plaintiff has not adequately alleged that Mr. Claggett knows or has reason to know that he acquired the disputed information "under circumstances giving rise to a duty to maintain its secrecy or limit its use." O.C.G.A. § 10-1-761(2)(B)(ii); *see* 18 U.S.C.A. § 1839(5)(B)(ii)(II). Instead, Plaintiff alleged:

> Claggett was aware that the information offered at Keenan's Kids Voir Dire Course was trade secret and executed a confidentiality Agreement with Keenan's Kids. Claggett has a duty not to disclose and has never been permitted to disclose . . . [the] Techniques.

(Compl. ¶ 101; *see also id.* at ¶¶ 83-84). Even supplemented by incorporated-by-reference allegations (*see, e.g.*, *id.* at ¶ 67), these allegations are insufficient.

To begin, the Agreement contradicts Plaintiff's conclusions. (*See* Ex. 1.) Plaintiff cannot point to any valid confidentiality agreement that actually imposed a duty of non-disclosure or even limited disclosure on Mr. Claggett when he attended the September 2014 seminar, as previously explained. *See* Parts III.B.2. and 3., incorporated herein by reference.

What's more, Plaintiff hasn't alleged any other *potential* source of a confidentiality duty, whether by written contract or otherwise, from when he first learned the information, or when it was supposedly reinforced as he taught classes, attended the educational cruise, or worked on co-counsel cases. (*See generally* Compl.) *See also Northstar Healthcare Consulting, LLC*, 2019 WL 4805558, *41-

43 (noting that, even as between an employer and employee, "courts have rejected the notion" that "an 'implicit understanding' is sufficient to protect confidential material"). As mentioned, the Agreement concerned only the September 2014 course, and Mr. Claggett's duty to perform concluded at the end of the course, according to the Agreement's limited terms, just as Plaintiff's did. (*See* Ex. 1.)

Separately, Plaintiff hasn't alleged facts suggesting how Mr. Claggett could possibly have discerned at the time of the Institute's *voir dire* class that the information he was buying for use in public jury trials were "trade secrets."[6] Nor has Plaintiff indicated how either that class or the Agreement might have informed him that he had a duty to protect the information. Aside from the facial implausibility of Plaintiff's bare "knowledge" allegations (*see* Compl. ¶¶ 67, 83, 101)—which alone warrants dismissal[7]—the Agreement doesn't support them.

Although it mentions "trade secrets" as one of several categories of "Confidential Information" that might be disclosed during the course "by either party," the Agreement does not define "trade secrets" or otherwise indicate how a

---

[6] For reasons set forth in Part III.C.3., *infra*, among others, they are not.

[7] *See, e.g.*, *Argos USA LLC*, 2019 WL 4125968, *8 (citing *Iqbal* for rule that a "formulaic recitation of the elements . . . is insufficient" and dismissing "conclusory" misappropriation allegations, including allegation that defendant "knew that the documents contained trade secrets").

seminar attendee might tell which (if any) content was a trade secret. (*See* Ex. 1.) Nor has Plaintiff alleged any other means by which the Institute's attorney clients could guess that the information they were buying for public use was a trade secret, especially in the absence of Agreement terms precluding disclosure. (*See id.*; *see also* Part III.B.2, *supra*.)

Plaintiff has thus failed to plausibly allege that Mr. Claggett knows or has reason to know that he acquired the information under circumstances giving rise to a duty to maintain its secrecy or limit its use.[8] Because Plaintiff has therefore not adequately alleged misappropriation under the GTSA or the DTSA, Counts One and Two should be dismissed.

### 3. Plaintiff has failed to allege any trade secret.

Plaintiff's trade-secret allegations fail, too, for at least three reasons. First, the disputed jury-selection strategies are publicly available.[9] Second, that

---

[8] That "David Hoey" allegedly put Mr. Claggett "on notice" in 2018 not to breach confidentiality obligations (Compl. ¶ 17), changes nothing about the circumstances four years prior under which Mr. Claggett acquired the information.

[9] Mr. Claggett respectfully requests that the Court take judicial notice, including under Fed. R. Evid. 201(b), that the disputed *voir dire* content is publicly accessible on portions of Mr. Keenan's blog, and discussed in detail in CLE presentations and articles that are also broadly available online, at, among other locations, the following web addresses (all of which were last visited by counsel May 23, 2020), reflecting public availability of Keenan's *voir dire* techniques:

information is directly disseminated to the Institute's attorney customers for use in public jury trials, from which the information is also readily ascertainable to others. Third, the measures Plaintiff allegedly took to keep the information secret were not reasonable.

Concerning both "ascertainability" and "reasonable measures," information "that has been publicly disclosed" through "sale or disclosure to customers" is "not protected" by trade secret law, except where persons with whom information is shared are "legally obligated, by express or implicit agreement or by another duty

---

http://keenan183.rssing.com/chan-25568066/all_p4.html;
http://keenan183.rssing.com/chan-25568066/all_p5.html;
http://keenan183.rssing.com/chan-25568066/all_p6.html;
http://keenan183.rssing.com/chan-25568066/all_p7.html;
https://webcache.googleusercontent.com/search?q=cache:eKx4_YmMjeQJ:https://www.shb.com/-/media/files/professionals/s/sastrehildy/acc-personalizing-the-corporate-client.pdf+&cd=1&hl=en&ct=clnk&gl=us;
https://www.cooperscully.com/news-and-resources/articles/reptile-theory;
https://webcache.googleusercontent.com/search?q=cache:xkzahXocW1wJ:https://www.namicinsurance.com/file/33+&cd=1&hl=en&ct=clnk&gl=us;
https://cdn.ymaws.com/www.thefederation.org/resource/resmgr/Events/Webinars/May_2016_Reptile_Paper_(2).pdf;
https://fjcadr.com/uploads/3/5/2/0/35203263/scott_v_uofu_1-_defendants_memo_on_mil_reptile.pdf;   https://www.iadclaw.org/assets/1/7/11.4-_Pomatto-_Reptile_Theory.pdf. *See, e.g.*, *Wells Fargo Bank, Nat'l Ass'n v. Crowley*, 1:13-CV-01427-CAP-LTW, 2014 WL 11370437, *13 & n.22 (N.D. Ga. Feb. 20, 2014) (taking judicial notice of website contents); *Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F. Supp. 3d 755, 762-63 (C.D. Cal. 2015) (taking judicial notice of internet materials, limited to notice of "the fact that an internet article is available to public"). On this basis alone, Plaintiff's GTSA and DTSA claims fail.

imposed by law" to maintain its confidentiality. *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1332-33 (N.D. Ga. 2007) (citing and applying, *inter alia*, *Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1454 (11th Cir. 1991) (applying common law)). Again, Plaintiff has not adequately alleged any legal obligation on Mr. Claggett's part to maintain confidentiality.

One reason for this "no disclosure to customers" rule is that trade-secret law does not prohibit a person from reverse-engineering a product or service to derive information that may otherwise qualify for trade-secret protection. *See* O.C.G.A. § 10-1-761(1); 18 U.S.C. § 1839(6)(B). Here, though, no reverse-engineering was even necessary. Instead, just like the defendant customer in *Warehouse Solutions, Inc. v. Integrated Logistics, LLC*, 610 Fed. App'x 881, 885 (11th Cir. 2015), where the plaintiff's dissemination of its product to users "necessarily revealed" the allegedly secret "features and functions," Plaintiff's dissemination of the *voir dire* information directly to Mr. Claggett here made that content "readily ascertainable."

And to the extent the "readily ascertainable" inquiry in this case extends to third parties who might "obtain economic value" from Plaintiff's supposed trade secrets, recall that those so-called secrets are *voir dire* "strategies" intended for use in jury trials. (*See* Compl. ¶¶ 37, 75, 94). Any trial attorney could obtain transcripts of Institute graduates' cases to review the *voir dire* questions and ascertain

Plaintiff's supposed strategies.

Although Plaintiff says it took "a number of steps to keep the information secret," (Compl.¶¶ 46-54), those allegations, too, are insufficient. Even if Plaintiff indeed "tightly controls" its recordings, and regardless of what its related "agreement to maintain confidentiality" looks like (*id.* at ¶ 54), Plaintiff's reliance on the Agreement to supposedly prohibit disclosure by seminar attendees and LISTSERVE users (*id.* at ¶¶ 48-52) vitiates any protective power other steps might theoretically have had.

That is, because the Agreement does not prohibit disclosure (*see* Parts III.B.2. and 3., *supra*), *voir dire* seminar attendees are free to use and disseminate that acquired information, irrespective of any controls Plaintiff might place over its recordings. Plaintiff's alleged "reasonable steps" thus fail as a matter of law. *See, e.g.*, *AmeriGas Propane, L.P. v. T-Bo Propane, Inc.*, 972 F. Supp. 685, 701 (S.D. Ga. 1997) (plaintiff's sole reliance on unenforceable confidentiality agreement "cannot, as a matter of law, amount to reasonable efforts to protect the secrecy of the subject information"); *Warehouse Solutions, Inc.*, 610 Fed. App'x at 882-83, 885 (software developer's steps to maintain secrecy were not reasonable as a matter of law where program access was password controlled, and plaintiff instructed reseller not to share the program except with customers who signed an

express non-disclosure agreement, yet developer did not require reseller to sign any non-disclosure agreement).

For each of these reasons, any of which is dispositive, Plaintiff has failed to adequately allege a "trade secret," and Counts One and Two must be dismissed.

## IV.   CONCLUSION

By pursuing this case, Plaintiff seeks to derive the benefits of a restrictive covenant that it never bargained for or obtained from Mr. Claggett, and which would be nonsensical in context in any event. Plaintiff's Complaint, including all claims and prayers for relief therein, fails to state a claim on which relief could be granted, and should be dismissed with prejudice.

Respectfully submitted on May 27, 2020.

_s/ Joseph C. Sharp_
Joseph C. Sharp
Georgia Bar No. 637965
Polsinelli PC
1201 West Peachtree Street, NW
Suite 1100
Atlanta, GA  30309
Telephone:  (404) 253-6000
Fax:  (404) 253-6060  Fax
Email:  jsharp@polsinelli.com
*Counsel for Defendant Sean Claggett*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **KEENAN'S KIDS FOUNDATION,**<br>     **INC.** | |
| | |
| **Plaintiff,** | **CIVIL ACTION NO:**<br>**1:20-cv-01702-WMR** |
| | |
| **v.** | |
| | |
| **SEAN CLAGGETT,** | |
| | |
| **Defendant.** | |

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing **DEFENDANT SEAN CLAGGETT'S BRIEF IN SUPPORT OF MOTION TO DISMISS** has been prepared in Times New Roman, 14-point font, in conformance with Local Rule 5.1C.

<u>*s/ Joseph C. Sharp, Esq.*</u>
Joseph C. Sharp, Esq.
*Counsel for Defendant*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **KEENAN'S KIDS FOUNDATION, INC.** | |
| **Plaintiff,** | **CIVIL ACTION NO: 1:20-cv-01702-WMR** |
| **v.** | |
| **SEAN CLAGGETT,** | |
| **Defendant.** | |

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2020, I have electronically filed the foregoing **DEFENDANT SEAN CLAGGETT'S BRIEF IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will automatically send notice of its filing to the following counsel of record:

John M. Bowler, Esq. (john.bowler@troutman.com)
Michael D. Hobbs, Jr., Esq. (michael.hobbs@troutman.com)
Lindsay Mitchell Henner, Esq. (lindsay.henner@troutman.com)
TROUTMAN SANDERS LLP
600 Peachtree Street, NE
Bank of America Plaza, Suite 3000
Atlanta, GA 30308
Telephone: (404) 885-3000
Facsimile: (404) 962-6513

Respectfully submitted this 27th day of May, 2020.

*s/ Joseph C. Sharp*
Joseph C. Sharp, Esq.
*Counsel for Defendant*