# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF GEORGIA
### ATLANTA DIVISION

KEENAN'S KIDS FOUNDATION, )
INC., )
)
        **Plaintiff,** )   **Civil Action File No.:**
)   **1:20-cv-01702-WMR**
-vs.- )
)   **JURY TRIAL DEMANDED**
SEAN CLAGGETT, )
)
        **Defendant.** )
)

## FIRST AMENDED COMPLAINT

Plaintiff Keenan's Kids Foundation, Inc. ("Keenan's Kids" or the "Foundation"), for its first amended complaint ("Amended Complaint") against Sean Claggett ("Claggett" or "Defendant"), states as follows:

## SUBSTANCE OF THE ACTION

1. This is a civil action for misappropriation of trade secrets in violation of the federal Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836, *et seq.*) ("DTSA") and the Georgia Trade Secrets Act of 1990 (O.C.G.A. § 10-1-760, *et seq.*) ("GTSA").

## PARTIES, JURISDICTION AND VENUE

2.     Plaintiff Keenan's Kids was established in 1993 by Don C. Keenan, a renowned, award-winning Atlanta-based trial lawyer, for the purposes of helping at-risk children via charity events, raising community awareness, and providing child advocacy services.

3.     Keenan's Kids is a Georgia non-profit corporation with a principal place of business at 148 Nassau Street, NW, Atlanta, Georgia 30303.

4.     Keenan's Kids works hard to educate the general public, law students, and practicing lawyers so they are more aware of the needs of children at-risk in the legal system.   The Foundation's mission is three-fold, focusing on:   Charity, Community Awareness, and Child Advocacy.

5.     Keenan's Kids' philanthropic activities include working to improve the daily and future lives of children, including through clothing drives, feeding the homeless, children's events, and fundraisers like the Murphy House Project which has been widely covered including in national media.  The Murphy House Project is named after a very special and unique family who opened up their hearts and homes to a couple of dozen adoptee children with special needs, in addition to raising their own biological children.   The Foundation engaged the help of the community,

volunteers, donors, builder, and suppliers to build a state-of-the-art, custom dream home for the growing family to thrive in. Keenan's Kids later organized a campaign to further support the Murphy family and raise money to retire the debt on the home.

6.     Keenan's Kids' efforts to increase community awareness and child safety is further fostered through a series of Safety Campaigns that have received national media attention. Each campaign targets a different aspect of child safety, depending on the particular needs of the community in a given year. Past Safety Campaigns have included the Playground Safety Campaign, the 4th of July Safety Campaign, the Toy Safety Campaign, the Youth Sports Safety Campaign, and the Car Seat Safety Campaign, among others.

7.     Keenan's Kids also hosts the Annual Law Student Closing Argument Competition established in 1997 to show students the importance of children's rights and to encourage them into this most needed area of law. The event also stands as an opportunity for students to experience a courtroom and being in front of a jury, with Foundation Board members often judging the competition. The competition continues to draw passionate participation from students of all five Georgia law schools.

8.     Keenan's Kids is the owner of intellectual property exclusively used by the Keenan Trial Institute, which offers Mr. Keenan's world-class educational curriculum instructing lawyers on how to win their trials, protect our community safety and deter wrongdoers by holding them accountable, through teaching confidential and proprietary techniques.

9.     Mr. Keenan is uniquely qualified to provide instruction on trial techniques, as the head partner in the Keenan Law Firm, which specializes in cases involving children, including injury, medical malpractice, and wrongful death. He is most noted for his lawsuits regarding the conditions of foster care in the state of Georgia, which have led to changes in state law regarding abuse in foster families. Mr. Keenan served as the national president of the American Board of Trial Advocates, and from 1997-1998 as president of the Inner Circle of Advocates.

10.    Mr. Keenan's vast experience and success provides the content for the confidential and proprietary trial techniques curriculum owned by Keenan's Kids and exclusively offered through the Keenan Trial Institute.

11.    Based on public records, Defendant Sean Claggett is an individual residing at 7967 Sherman Oaks Ave., Las Vegas, Nevada 89129 or at 3924 Hampton

Grove Ct., Apt. C., Las Vegas, Nevada 89129, and conducting his legal business at 4101 Meadows Lane, Suite 100, Las Vegas, Nevada 89107.

12.     Service may be made upon Claggett at 4101 Meadows Lane, Suite 100, Las Vegas, Nevada 89107.

13.     Claggett is an attorney who taught various components of the Keenan Trial Institute curriculum owned by Keenan's Kids from 2015 through his resignation in September 2018.

14.     Prior to his teaching for Keenan's Kids, Claggett participated as a student in multiple Keenan Trial Institute seminars, including without limitation on September 23-24, 2014, in Atlanta, Georgia offered by the Keenan Trial Institute regarding Keenan's Kids-owned voir dire techniques ("Keenan's Kids Voir Dire Course"), the contents of which form the basis of the trade secret claims herein.

15.     Having resigned from the Keenan Trial Institute as an instructor in 2018, Claggett now teaches voir dire-related courses, including *Sean Claggett's Case Analysis and Voir Dire School*, ("Claggett's Voir Dire School") which—without permission from Keenan's Kids—misappropriates, utilizes, and discloses substantial portions of Keenan's Kids' confidential and trade secret materials subject to confidentiality obligations imposed on Claggett as a participant and instructor.

16.     Claggett is offering the Claggett's Voir Dire School through non-party Trojan Horse Method, LLC ("Trojan Horse"), who is a competitor of the Keenan Trial Institute that provides trial skills educational programs, offering courses including Claggett's Voir Dire School that forms the basis of Keenan's Kids' claims in this case.

17.     Claggett has regularly been present in and conducted business in Georgia, including teaching and attending various trial techniques courses in Atlanta on (i) May 20-21, 2014 (attending Keenan's Kids "Rules" seminar), (ii) June 26-27, 2014 (attending Keenan's Kids "Openings" seminar), (iii) August 20-21, 2014 (attending Keenan's Kids "Focus Groups" seminar), (iv) September 23-24, 2014 (attending Keenan's Kids Voir Dire Course), (v) March 12-13, 2015 (teaching Keenan's Kids "Trial" seminar), (vi) September 26-27, 2016 (teaching Keenan's Kids "Focus Group" seminar), and (vii) January 10-11, 2017 (teaching Keenan's Kids "Focus Group" seminar).

18.     Claggett is subject to this Court's general and specific jurisdiction under the Due Process Clause of the United States Constitution and the laws of the State of Georgia via the Georgia Long Arm Statute, O.C.G.A. § 9-10-91(1), (2), and (3). Claggett has purposely availed himself of the privilege of acting in the Northern

District of Georgia and Keenan's Kids' claims arise directly from Claggett's activities in the Northern District of Georgia, as explained above. Claggett's contact with Georgia surpasses the minimum contacts necessary to establish jurisdiction, and further constitutes continuous and systematic conduct such that this Court may also exercise general jurisdiction. Claggett regularly conducts and solicits business within the Northern District of Georgia and has committed acts that violate Keenan's Kids' trade secret rights in this District.

19. In addition, Claggett or Trojan Horse, to his and its benefit, have promoted and advertised the Claggett's Voir Dire School online across the United States which is accessible to residents of Georgia and the Northern District who can attend Claggett's Voir Dire School.

20. This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 as it involves claims presenting federal questions of law under the DTSA, 18 U.S.C. § 1836, *et seq*. This Court has supplemental jurisdiction over the breach of contract and GTSA claims under 28 U.S.C. § 1367(a) because these claims are so related to the claims under which the Court has original jurisdiction that they form part of the same case and controversy under Article III of the United States Constitution.

21.     This Court further has diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332.  Complete diversity of citizenship exists between the parties as Keenan's Kids is a citizen of Georgia and Claggett is citizen of Nevada.  The amount in controversy exceeds the minimum $75,000 exclusive of interest and costs.

22.     Venue is proper in this District under 28 U.S.C. § 1391 (b)(1), (b)(2) and (c)(2) because this Court has personal jurisdiction over Defendant in this District, and a substantial part of the events or acts giving rise to the claims occurred in this District in that Claggett acquired Keenan's Kids' trade secrets and signed a confidentiality agreement with Keenan's Kids in this District, and Defendant has transacted and is transacting business in this District and has committed trade secret and confidentiality violations in this District.

## **KEENAN'S KIDS' TRADE SECRETS**

23.     Using Keenan's Kids' unique, proprietary and confidential information, the Keenan Trial Institute is a leader in the area of trial skills education, conducting a number of programs for attorneys related to the mission of winning trials, protecting our community safety and deterring wrongdoers by holding them accountable.

24. Keenan's Kids is the owner of the unique and proprietary curriculum Mr. Don C. Keenan has created through over forty years of experience as lead counsel in thousands of trials.

25. Because attorneys use these proprietary techniques to win trials, including significant financial awards, and to deter wrongdoers for the good of the community, Keenan's Kids' customers recognize the intrinsic value of Keenan's Kids' techniques.

26. Because Keenan's Kids is the owner of decades spent in creating and refining the unique, proprietary and confidential techniques that Keenan Trial Institute customers value, those techniques are also valuable to Keenan's Kids.

27. Conversely, if the confidential information or details related to Keenan's Kids' proprietary techniques became known to Keenan Trial Institute competitors, those competitors would use that information to develop and market competing educational courses to offer to the Keenan Trial Institute customers, damaging, if not destroying the value of Keenan's Kids and the Keenan Trial Institute.

28. A significant portion of the value Keenan's Kids derives from its proprietary techniques is based on its curriculum of trial techniques not being known to Keenan Trial Institute competitors.

29.    A significant portion of the value Keenan's Kids derives from its proprietary techniques is based on its curriculum of trial techniques also not being known to defense counsel who have not taken the courses of the Keenan Trial Institute; and, if such proprietary techniques were known to defense counsel, the unauthorized access would give them a roadmap of what students and instructors of the Keenan Trial Institute are trying to accomplish in their jury selection at trial.

30.    Keenan's Kids' proprietary trial techniques are used and intended for use in interstate commerce to the extent that the Keenan Trial Institute offers its courses in a variety of states and to attendees from a variety of states for implementation at trials around the country.

31.    Specifically, and critical to the Keenan Trial Institute's success, are the confidential and proprietary trade secret voir dire techniques owned by Keenan's Kids' ("Trade Secret Voir Dire Techniques").

32.    Driven by Keenan's Kids' confidential and proprietary Trade Secret Voir Dire Techniques, Keenan's Kids owns a unique and proven approach to selecting a jury for trial that directly leads to more favorable trial outcomes for Keenan Trial Institute customers.

33.     Keenan's Kids is the owner of decades' worth of significant investment of time and resources in the development of its confidential and proprietary Trade Secret Voir Dire Techniques, relying on the extensive, unique personal experience and research of Mr. Keenan.

34.     Keenan's Kids' confidential and proprietary Trade Secret Voir Dire Techniques are identified by unique title phrases. Keenan's Kids views those proprietary title phrases themselves, which are not generally known by the public, as trade secret and confidential. Without revealing the trade secrets themselves publicly here, and identifying the trade secrets with specificity herein, the Keenan Trial Institute teaches a unique system of tried and tested techniques and strategies, which were developed only after substantial time, investment, and effort, to use during voir dire examination in order to obtain a fair and impartial verdict and ultimately to secure a winning verdict and thus give students and instructors of the Keenan Trial Institute a strategic edge in their own jury selection at trial. The Trade Secret Voir Dire Techniques comprise at least four specific strategies, which Defendant is known to have wrongfully misappropriated, used and disclosed at Claggett's Voir Dire School. Four strategies that comprise the Trade Secret Voir Dire Techniques, which Defendant is known to have wrongful misappropriated, used and disclosed without authorization: (1) elicit information about what motivates a prospective juror, (2)

identify unfavorable jurors on matters related to compensation; (3) assess juror empathy, and (4) select jurors through use of "spotters." To identify the Trade Secret Voir Dire Techniques any further here would reveal the secrets themselves causing them to lose their value.

35.    The Trade Secret Voir Dire Techniques lead to a demonstrably more open and engaging discussion between plaintiff's counsel and a venire panel. The practitioner who uses the proprietary Trade Secret Voir Dire Techniques will learn a great deal more valuable information about a venire that is critical to providing his or her client with a higher likelihood of identifying the most favorable jurors for a client's case and receiving the most favorable verdict.

36.    Persons observing a lawyer who was practicing the Trade Secret Voir Dire Techniques would not become aware of the trade secret details of those techniques, as the Trade Secret Voir Dire Techniques are not a verbatim list of questions to publicly recite to potential jurors, but are questioning strategies, strategies for analyzing responses, and strategies for implementing what is learned from questioning in order to select a favorable jury. The manner in which lawyers practicing the Trade Secret Voir Dire Techniques actually employ those techniques

during voir dire will necessarily vary based on the independent and varying responses of potential jurors.

37.     The Trade Secret Voir Dire Techniques also are not publicly available on the Internet, in court filings, or other such sources.

38.     Keenan's Kids derives substantial value from its unique, proprietary and confidential Trade Secret Voir Dire Techniques because Keenan Trial Institute customers are willing to pay substantial enrollment fees to attend courses where these techniques are taught.

39.     Keenan's Kids derives substantial value from these Trade Secret Voir Dire Techniques because selecting the appropriate jury by Keenan Trial Institute customers is critical to securing a favorable outcome at trial, including valuable financial awards and equitable relief.

40.     A significant part of the value that Keenan's Kids derives from its Trade Secret Voir Dire Techniques is based on the information not being known to Keenan Trial Institute competitors, insofar as the Keenan Trial Institute offers a unique set of techniques that cannot be acquired elsewhere and which give Keenan Trial Institute customers using the Keenan's Kids curriculum a competitive advantage.

41.     Keenan's Kids' proprietary Trade Secret Voir Dire Techniques, specifically, are used and intended for use in interstate commerce to the extent that Keenan's Kids owns, and the Keenan Trial Institute offers its voir dire instruction in a variety of states and to attendees from a variety of states for implementation at trials around the country.

42.     To preserve the value of its confidential, proprietary, and trade secret information, including its Trade Secret Voir Dire Techniques, Keenan's Kids has taken a number of steps to keep the information secret.

43.     To begin, a legal practitioner cannot get access to Trade Secret Voir Dire Techniques without first being vetted by the Keenan Trial Institute to confirm that the practitioner is in fact a plaintiff's attorney.

44.     In addition, every attendee of a Keenan Trial Institute course where Keenan's Kids' confidential and proprietary information will be shared and was shared, including the Keenan's Kids Voir Dire Course, is required to sign a "Confidentiality Agreement" that warrants the attendee will not disclose the confidential and proprietary information.

45.     The Confidentiality Agreement explicitly identifies as confidential and applies to Keenan's Kids trade secrets, copyrighted information, and other

proprietary information "including ideas, techniques…inventions, know-how, processes…and information" related to the services and information provided at the specific Keenan Trial Institute event.

46.     Attendees are further prohibited from videotaping, audio recordings, and photographs of any seminar.  Further, any materials provided to students by the Keenan Trial Institute must remain with the institute when coursework is completed, and students can leave only with their own notes for personal use only.

47.     Keenan's Kids course instructors also often orally identify and emphasize the Confidentiality Agreement to participants, as well as the requirement to leave course materials behind, further informing participants of, and reinforcing, the confidential nature of course material.

48.     In addition, the Keenan's Kids Voir Dire Course had its own separate LISTSERV, and blogs to which access was limited only to individuals who first took the Keenan's Kids Voir Dire Course and for whom login credentials were created and issued, in order to further protect the confidentiality of any discussions regarding the Trade Secret Voir Dire Techniques.

## DEFENDANT'S VIOLATIONS OF KEENAN'S KIDS' TRADE SECRETS

49.     As alleged further below, Claggett has stolen from Keenan's Kids the Trade Secret Voir Dire Techniques, which are highly unique, valuable, and confidential.

50.     As early as May 2014, Claggett was aware of Keenan's Kids' unique, proprietary and confidential curriculum exclusively taught through the Keenan Trial Institute and had begun attending them.

51.     On September 23-24, 2014, Claggett attended a Keenan's Kids Voir Dire Course where Claggett was taught the proprietary and confidential Trade Secret Voir Dire Techniques, including those specified and detailed above.

52.     While attending a Keenan's Kids Voir Dire Course in Atlanta, Georgia, on September 23-24, 2014, as a prerequisite for attendance, Claggett executed a Confidentiality Agreement (the "Agreement") with Keenan's Kids to protect the trade-secret and confidential contents of the seminar.

53.     As is true for all participants, the Confidentiality Agreement that Claggett executed explicitly identifies as confidential and applies to Keenan's Kids' trade secrets, copyrighted information, and other proprietary information "including

ideas, techniques…inventions, know-how, processes…and information" related to the services and information provided at the Keenan's Kids Voir Dire Course, and further prohibited him from videotaping, taking audio recordings, and taking photographs of the seminar.

54.    By signing the Agreement titled "Confidentiality Agreement", which further defined "Confidential Information" as trade secret and proprietary information including things like "techniques…know-how, [and] processes", Claggett was informed of, became aware of, understood, and accepted the confidential nature of the information to be conveyed in the Keenan's Kids Voir Dire Course.

55.    By signing the Agreement prohibiting recordation of the seminar and agreeing to leave behind distributed coursework, Claggett (like all participants) was informed of, became aware of, understood, and accepted that the Keenan's Kids Voir Dire Course and Trade Secret Voir Dire Techniques were confidential and not for redistribution to others.

56.    In 2015, Claggett became an instructor for the Keenan Trial Institute, teaching courses including Keenan's Kids' "Trial" and "Focus Group" seminars containing the asserted trade secrets and confidential information.

57.     The confidentiality obligation of Claggett for the Keenan's Kids Voir Dire Course materials, content, and information extended further and applied to and was reinforced in Claggett's role as an instructor of the Keenan's Kids Voir Dire Course.

58.     In addition to, but separate from, the obligations created by the Agreement, all Keenan Trial Institute instructors, including Claggett, are bound by a confidentiality obligation not to disclose information such as the Trade Secret Voir Dire Techniques, and they in turn further reinforce the confidentiality obligation to their students.

59.     Keenan's Kids communicated to Claggett as an instructor that the Trade Secret Voir Dire Techniques, among other things, were confidential trade secrets of Keenan's Kids, and Claggett acted in accordance with that fact.

60.     As an instructor, for example, Claggett was responsible for overseeing and ensuring students' signing of confidentiality agreements prior to teaching the Trade Secret Voir Dire Techniques and for instructing students not to take course materials with them.

61.     Claggett also made multiple trips to the "Beach" (in Santa Rosa Beach, Florida) for educational purposes and workshops for two-and-a-half days work on

"Edge" materials and whereat the asserted trade secrets and confidential information were shared with and entrusted to Claggett.

62.　Claggett specifically participated in discussions at the beach regarding contents of Keenan's Kids blogs, wherein it was explained that the blogs purposely do not include the information comprising the Trade Secret Voir Dire Techniques.

63.　Claggett himself participated in a vote to restrict blog access so that attendees of programs such as the Keenan's Kids Voir Dire Course would not be able to reveal, inadvertently or otherwise, material comprising the Trade Secret Voir Dire Techniques, further evidencing his understanding of the confidentiality of the same.

64.　In addition, Claggett himself oversaw as manager the Nevada LISTSERV, access to which was limited only to individuals who first took the Keenan's Kids Voir Dire Course, all of whom were informed of, aware of, understood, and accepted the confidential nature of the information to be conveyed in the Keenan's Kids Voir Dire Course and on the LISTSERV at least by virtue of having signed a Confidentiality Agreement and having received password-protected, restricted access to the LISTSERV where those materials could be discussed.

65.　Further showing how involved Claggett was in the Keenan Trial Institute and its asserted trade secrets and confidential information, and thus his

awareness of their confidential status, Claggett was one of only four faculty members chosen to go on the educational cruise in May 2016 and spend a week immersed in the "Edge" materials.

66.    Also in 2016, by way of example, Claggett participated in discussions as an employee of Keenan's Kids wherein the line between trade secret confidential information and information that may be shared publicly was explicitly identified. At the time, Keenan's Kids intended to offer free seminars around the country in part as a marketing tool for its paid seminars and reiterated in discussions about the contents of those free seminars, that Keenan's Kids trade secret strategies should not be included outside of the confines of the protected courses like the Keenan's Kids Voir Dire Course.

67.    In September 2018, Claggett resigned as an instructor of the Keenan Trial Institute.

68.    At the time of Claggett's resignation in 2018, he was again put on notice by David Hoey, Dean of the Keenan Trial Institute and Keenan Ball Trial College, not to breach Claggett's confidentiality obligations, and further that Claggett was not authorized to teach anything learned as a student or instructor of the college courses

at Keenan Trial Institute, or the seminars, or as a consult referring attorney, or as a co-dean of the damages course.

69.     Claggett withdrew from the LISTSERV and the Keenan Ball Trial College because of criticism he received that he went outside the boundaries of permissible conduct.

70.     Keenan's Kids also tightly controls the distribution of any recordings of Keenan Trial Institute seminars and does not share the recordings without an agreement to maintain confidentiality.

71.     The entire business model under which the Keenan's Kids Voir Dire Course operates depends upon the confidentiality of the Trade Secret Voir Dire Techniques, insofar as, absent such restrictions and understanding of confidentiality, competitor course offerings from Keenan's Kids students would spring up every day offering to teach the same content as Keenan's Kids Voir Dire Course.  To date, Claggett is the only such competitor to purport to do so, indicating thousands upon thousands of other participants' consensus that the Trade Secret Voir Dire Techniques are not theirs to share.

72.     Aside from Claggett, Keenan's Kids has been approached by instructors who – again, fully understanding the confidentiality of Keenan's Kids' trade secret

strategies – seek Keenan's Kids' express permission to teach certain content. In response to such requests, in a further effort to protect the confidentiality of its trade secrets, Keenan's Kids requests an outline of the material to be taught and either approves or denies the outline. Keenan's Kids denies or revises outlines that indicate protected material would be disclosed.

73.     As an instructor for Keenan's Kids, intimately involved in the business of offering courses like the Keenan's Kids Voir Dire Course containing Trade Secret Voir Dire Techniques, Claggett was regularly exposed to Keenan's Kids' business model, confidentiality policy, and confidentiality expectations, and well understood his obligation to maintain that confidentiality.

74.     In addition to jury selection, Claggett was privy to other trade secrets and confidential information of the Keenan Trial Institute, which further contributed to his understanding of the confidentiality of Keenan's Kids' proprietary strategies, including unique theories related to the use and analysis of focus groups that were taught to him and which he taught to others at the Keenan Trial Institute and at consult referrals.

75.     Recently, Keenan's Kids learned that Claggett was offering Claggett's Voir Dire School through Trojan Horse wherein Claggett was teaching Keenan's

Kids' confidential and proprietary Trade Secret Voir Dire Techniques communicated to Claggett under the auspices of confidentiality, including during the Keenan's Kids Voir Dire Course that Claggett attended in September 2014, and subsequently taught from 2015 to 2018.

76.    Claggett's Voir Dire School taught by Claggett and offered through Trojan Horse, specifically incorporates, embodies, and discloses the Keenan's Kids' proprietary and confidential Trade Secret Voir Dire Techniques detailed above.

77.    Claggett's Voir Dire School taught by Claggett and offered through Trojan Horse therefore uses substantial elements of the unique, proprietary confidential curriculum derived from Keenan's Kids' Trade Secret Voir Dire Techniques.

78.    Defendant does not have Keenan's Kids' permission to wrongfully misappropriate, use and disclose at Claggett's Voir Dire School the Trade Secret Voir Dire Techniques that Claggett acquired at the Keenan's Kids Voir Dire Course in September 2014 and subsequently as an instructor at the Keenan Trial Institute.

79.    For all of the reasons set out in paragraphs 50-66, 68, and 70-74, Claggett knows and has known since prior to his resignation from Keenan's Kids, that he has a duty to maintain the secrecy of the information he acquired from

Keenan's Kids, including specifically the Keenan's Kids Voir Dire Course and Trade Secret Voir Dire Techniques.

80.     Defendant and Trojan Horse have knowledge and understand the value of the Trade Secret Voir Dire Techniques as evidenced at least in part by the fact that Claggett, Trojan Horse and its owner Dan Ambrose have advertised and touted in their own presentation materials Claggett's reputation as being trained by the Keenan Trial Institute in order to get attorneys to sign up for their competing *Sean Claggett's Case Analysis and Voir Dire School* program and to bolster Claggett's credibility.

81.     Defendant including through Trojan Horse has offered, and intends to offer, Claggett's Voir Dire School containing Keenan's Kids' Trade Secret Voir Dire Techniques in interstate commerce, including in Nevada, California and Georgia.

82.     For example, Defendant including through Trojan Horse makes registration for Claggett's Voir Dire School available online without geographic restriction for who can attend.

83.     On information and belief, residents of more than one state have physically attended Claggett's Voir Dire School.

84. Defendant including through Trojan Horse also makes recordings of Claggett's Voir Dire School available to residents of any state and have sold said recordings to residents of Georgia.

85. Defendant including through Trojan Horse is offering Claggett's Voir Dire School, using Keenan's Kids' Trade Secret Voir Dire Techniques to improperly and directly compete with the Keenan Trial Institute, damaging the value of the unique, proprietary confidential curriculum owned by Keenan's Kids.

## COUNT ONE – VIOLATION OF THE DEFEND
## TRADE SECRETS ACT OF 2018 (18 U.S.C. § 1836 *ET SEQ.*)

86. Keenan's Kids hereby realleges and incorporates paragraphs 1 through 85 as though set forth fully herein.

87. Keenan's Kids is the owner of trade secrets in its proprietary and confidential Trade Secret Voir Dire Techniques identified by unique title phrases, which are specified and detailed in paragraphs 34-36 above and incorporated herein and comprise *inter alia*, proprietary technical or nontechnical data, methods, techniques, and processes of Keenan's Kids.

88. Keenan's Kids' Trade Secret Voir Dire Techniques are used in or intended for use in interstate commerce, insofar as Trade Secret Voir Dire Techniques

are taught in different states to attendees of Keenan's Kids Voir Dire Course from different states for use in trials across the country.

89.    Keenan's Kids' Trade Secret Voir Dire Techniques are confidential and proprietary information, and Keenan's Kids has taken reasonable steps specified and detailed in paragraphs 42-48 and 70 above and incorporated herein to maintain the confidential nature of that information including through required Confidentiality Agreements with Keenan's Kids Voir Dire Course attendees, requirement to leave behind protected course materials, credentialed-access only LISTSERV and blog content, reinforcement of confidentiality from course instructors, and tightly controlled distribution of other audio/video recordings of trade secret material.

90.    Keenan's Kids has expended considerable time, effort, and expense to compile and protect Keenan's Kids' Trade Secret Voir Dire Techniques.

91.    Keenan's Kids' Trade Secret Voir Dire Techniques are not generally known to the public and are not readily ascertained by proper means to persons who could derive value from their disclosure or use, including because Keenan's Kids takes the steps identified in paragraphs 42-48 and 70 above, and incorporated herein, to protect the information, and because the Trade Secret Voir Dire Techniques are not available to the public on the Internet, and are not ascertainable by observing

Keenan's Kids Voir Dire Course attendees practicing voir dire (*see* paragraphs 36-37 above, incorporated herein).

92.    The Keenan's Kids' Trade Secret Voir Dire Techniques derive independent economic value, actual and/or potential, from not being generally known to and not being readily ascertainable through proper means by, other persons who could obtain economic value from their disclosure or those persons' use.  The fact that the Keenan's Kids' Trade Secret Voir Dire Techniques are only available through the protected Keenan's Kids Voir Dire Course is in part what makes the course desirable to attendees.

93.    Keenan's Kids' Trade Secret Voir Dire Techniques are of substantial value and have conferred a competitive advantage on Keenan's Kids insofar as Keenan's Kids' Trade Secret Voir Dire Techniques command significant enrollment fees, are highly successful in practice, and are not available through any other source with the exception of Defendant's unauthorized misappropriation, use and disclosures.

94.    Pursuant to the Defend Trade Secrets Act, misappropriation does not require acquiring the secret by improper means, but includes "disclosure or use of a trade secret of another without express or implied consent by a person who…at the

time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was…acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret….” 18 U.S. Code § 1839(5)(B).

95.     As an attendee of Keenan's Kids Voir Dire Course in September 2014, and as an instructor for Keenan's Kids, Claggett had particularly intimate access to and received Keenan's Kids' Trade Secret Voir Dire Techniques.

96.     At the time of Claggett's disclosure of the Trade Secret Voir Dire Techniques, in seminars following the end of Claggett's employment with Keenan's Kids, Claggett was aware that the information offered at Keenan's Kids Voir Dire Course was trade secret and confidential, including through his execution of a Confidentiality Agreement with Keenan's Kids as a participant, and through his employment with Keenan's Kids as an instructor who was intimately familiar with the secrecy of and protective measures for the Trade Secret Voir Dire Techniques, for at least the representative reasons identified in paragraphs 50-66, 68, and 70-74 above and incorporated herein.   All of these circumstances, individually and in combination, gave rise to Claggett's duty to maintain the secrecy of and/or limit the use of Keenan's Kids' Trade Secret Voir Dire Techniques.

97.     The confidentiality measures identified in 42-48 and 70 and circumstances of Claggett's employment identified in 50-66, 68, and 70-74 resulted in an understanding between Keenan's Kids and Claggett that use of the Trade Secret Voir Dire Techniques would be limited and that he Trade Secret Voir Dire Techniques would be kept confidential.

98.     Claggett as well as Trojan Horse understand the value of the Trade Secret Voir Dire Techniques as evidenced at least in part by the fact that Claggett, Trojan Horse and its owner Dan Ambrose are advertising and touting in their own presentation materials Claggett's reputation as being trained by the Keenan Trial Institute in order to get attorneys to sign up for their competing *Sean Claggett's Case Analysis and Voir Dire School* program and to bolster Claggett's credibility.

99.     As set forth above, Claggett has wrongfully misappropriated Keenan's Kids' Trade Secret Voir Dire Techniques, via use and disclosure of Keenan's Kids' Trade Secret Voir Dire Techniques in Claggett's Voir Dire School offered through Trojan Horse in violation of the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836 *et seq.*).

100.    Claggett's Voir Dire School, taught by Claggett and offered through Trojan Horse, embodies, incorporates, and is substantially derived from, Keenan's

Kids' Trade Secret Voir Dire Techniques, including those specified and detailed above in paragraphs 34-36 and incorporated herein.

101. Keenan's Kids has never expressly or impliedly consented to Claggett's disclosure of Keenan's Kids' Trade Secret Voir Dire Techniques.

102. Claggett's Voir Dire School, taught by Claggett and offered through Trojan Horse, is conducted in and intended for interstate commerce insofar as it is offered and has been sold in multiple states, including Georgia, Nevada, and California.

103. As a direct and proximate result of Defendant's violation of the Defend Trade Secrets Act of 2016, Keenan's Kids has suffered damages that will be established at trial of this matter.

104. Defendant's actions in misappropriating, using and disclosing Keenan's Kids' Trade Secret Voir Dire Techniques described herein for his own personal commercial gain through the Claggett's Voir Dire School was willful, wanton, and malicious, and was done with reckless disregard for the rights of Keenan's Kids.

105. Keenan's Kids has no adequate remedy at law to redress the conduct complained of herein and will suffer continued imminent and irreparable harm as a

result unless Defendant is preliminarily and permanently restrained from his ongoing wrongful misappropriation, use and disclosure of Keenan's Kids' Trade Secret Voir Dire Techniques through Claggett's Voir Dire School, Trojan Horse, and elsewhere.

106. Keenan's Kids has sustained and will continue to sustain actual losses resulting from Defendant's wrongful misappropriation, use and disclosure, and is entitled to recover such actual losses, Defendant's ill-gotten profits or sales, Defendant's savings in development costs, a reasonable royalty, exemplary damages from Defendant's willful misappropriation, use, and disclosure and knowing disregard of Keenan's Kids' rights in an amount to be proved at trial, and/or any other relief the Court deems just and proper.

## COUNT TWO – VIOLATION OF THE GEORGIA TRADE SECRETS ACT OF 1990 (O.C.G.A. § 10-1-760 *ET SEQ.*)

107. Keenan's Kids hereby realleges and incorporates paragraphs 1 through 85 as though set forth fully herein.

108. Keenan's Kids is the owner of trade secrets in its proprietary and confidential Trade Secret Voir Dire Techniques identified by unique title phrases, and specified and detailed above in paragraphs 34-36 and incorporated herein, which

comprise, *inter alia*, proprietary technical or nontechnical data, methods, techniques, and processes of Keenan's Kids.

109.   Keenan's Kids' Trade Secret Voir Dire Techniques are confidential and proprietary information, and Keenan's Kids has taken reasonable steps specified and detailed above in paragraphs 42-48 and 70 and incorporated herein to maintain the confidential nature of that information, including through required Confidentiality Agreements with Keenan's Kids Voir Dire Course attendees, requirement to leave behind protected course materials, credentialed-access only LISTSERV and blog content, reinforcement of confidentiality from course instructors, and tightly controlled distribution of other audio/video recordings of trade secret material.

110.   Keenan's Kids has expended considerable time, effort, and expense to compile and protect Keenan's Kids' Trade Secret Voir Dire Techniques.

111.   Keenan's Kids' Trade Secret Voir Dire Techniques are not generally known to the public and are not readily ascertained by proper means to persons who could derive value from their improper disclosure or use, including because Keenan's Kids takes the steps identified in 42-48 and 70 above to protect the information, and because the Trade Secret Voir Dire Techniques are not available to the public on the

Internet, and are not ascertainable by observing Keenan's Kids Voir Dire Course attendees practicing voir dire (*see* paragraphs 36-37 above, incorporated herein).

112. The Keenan's Kids' Trade Secret Voir Dire Techniques derive independent economic value, actual and/or potential, from not being generally known to and not being readily ascertainable through proper means by, other persons who could obtain economic value from their improper disclosure or those persons' use. The fact that the Keenan's Kids' Trade Secret Voir Dire Techniques are only available through the protected Keenan's Kids Voir Dire Course is in part what makes the course desirable to attendees.

113. Keenan's Kids' Trade Secret Voir Dire Techniques are of substantial value and have conferred a competitive advantage on Keenan's Kids insofar as Keenan's Kids' Trade Secret Voir Dire Techniques command significant enrollment fees, are highly successful in practice, and are not available through any other source with the exception of Defendant's misappropriation, use and disclosures.

114. Pursuant to the Georgia Trade Secrets Act, misappropriation does not require acquiring the secret by improper means, but includes "disclosure or use of a trade secret of another without express or implied consent by a person who…at the time of disclosure or use, knew or had reason to know that the knowledge of the trade

secret was…acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use….” O.C.G.A. § 10-1-761(2)(b).

115.    The Georgia Trade Secrets Act expressly provides in O.C.G.A. § 10-1-762(d) that "In no event shall a contract be required in order to maintain an action or to obtain injunctive relief for misappropriation of a trade secret.”

116.    As an attendee of Keenan's Kids Voir Dire Course in September 2014, and as a subsequent instructor at Keenan Trial Institute, Claggett had particularly intimate access to and received Keenan's Kids' Trade Secret Voir Dire Techniques.

117.    At the time of Claggett's disclosure of the Trade Secret Voir Dire Techniques, in seminars following the end of Claggett's employment with Keenan's Kids, Claggett was aware that the information offered at Keenan's Kids Voir Dire Course was trade secret and confidential, including through his execution of a Confidentiality Agreement with Keenan's Kids as a participant, and through his employment with Keenan's Kids as an instructor who was intimately familiar with the secrecy of and protective measures for the Trade Secret Voir Dire Techniques, for at least the representative reasons identified in paragraphs 50-66, 68, and 70-74 above and incorporated herein.   All of these circumstances, individually and in

combination, gave rise to Claggett's duty to maintain the secrecy of and/or limit the use of Keenan's Kids' Trade Secret Voir Dire Techniques.

118. The confidentiality measures identified in 42-48 and 70 and circumstances of Claggett's employment identified in 50-66, 68, and 70-74 resulted in an understanding between Keenan's Kids and Claggett that use of the Trade Secret Voir Dire Techniques would be limited and that he Trade Secret Voir Dire Techniques would be kept confidential.

119. Claggett as well as Trojan Horse understand the value of the Trade Secret Voir Dire Techniques as evidenced at least in part by the fact that Claggett, Trojan Horse and its owner Dan Ambrose are advertising and touting in their own presentation materials Claggett's reputation as being trained by the Keenan Trial Institute in order to get attorneys to sign up for their competing *Sean Claggett's Case Analysis and Voir Dire School* program and to bolster Claggett's credibility.

120. As set forth above, Claggett has wrongfully misappropriated Keenan's Kids' Trade Secret Voir Dire Techniques, via use and disclosure of Keenan's Kids' Trade Secret Voir Dire Techniques in Claggett's Voir Dire School offered through Trojan Horse in violation of the Georgia Trade Secrets Act of 1990, O.C.G.A. § 10-1-760 *et seq.*

121.   Claggett's Voir Dire School, taught by Claggett and offered through Trojan Horse, embodies, incorporates, and is substantially derived from, Keenan's Kids' Trade Secret Voir Dire Techniques, including, but not limited to, those specified and detailed above in paragraphs 34-36 and incorporated herein.

122.   Keenan's Kids has never expressly or impliedly consented to Claggett's disclosure of Keenan's Kids' Trade Secret Voir Dire Techniques.

123.   As a direct and proximate result of Defendant's violation of the Defend Trade Secrets Act of 2016, Keenan's Kids has suffered damages that will be established at trial of this matter.

124.   Defendant's actions in misappropriating and disclosing Keenan's Kids' Trade Secret Voir Dire Techniques described herein for his own personal and commercial gain through Claggett's Voir Dire School was willful, wanton, and malicious, and was done with reckless disregard for the rights of Keenan's Kids.

125.   Keenan's Kids has no adequate remedy at law to redress the conduct complained of herein and will suffer continued imminent and irreparable harm as a result unless Defendant is preliminarily and permanently restrained from his ongoing misappropriation, use and disclosure of Keenan's Kids' Trade Secret Voir Dire Techniques.

126.     Keenan's Kids has sustained and will continue to sustain actual losses resulting from Defendant's wrongful misappropriation, use and disclosure, and is entitled to recover such actual losses, Defendant's ill-gotten profits or sales, Defendant's savings in development costs, a reasonable royalty, exemplary damages from Defendant's willful misappropriation, use, and disclosure and knowing disregard of Keenan's Kids' rights in an amount to be proved at trial, and/or any other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Keenan's Kids demands a trial by jury on all claims and issues triable.

## PRAYER FOR RELIEF

WHEREFORE, Keenan's Kids prays:

1.     That the Court award judgment to Keenan's Kids on all counts of the Complaint;

2.     For preliminary and permanent injunctions, pursuant, but not limited, to 18 U.S.C. § 1836(b)(3)(A) and O.C.G.A. § 10-1-762 enjoining Defendant, his agents, servants, employees, attorneys, and all persons in active concert with him who shall receive notice of said injunctions, from directly or indirectly,

misappropriating, disclosing, using, or otherwise causing or allowing any use or disclosure of Keenan's Kids trade secrets and confidential information;

3.    For general actual damages in an amount that is yet to be ascertained;

4.    For disgorgement of the profits of Defendant in the amount necessary to prevent Defendant's unjust enrichment from his conduct alleged herein that is not addressed in computing damages for actual loss;

5.    For, in the alternative in lieu of damages measured by other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the Defendant's unauthorized misappropriation, disclosure or use of Keenan's Kids trade secrets and confidential information;

6.    For special damages, including attorney's fees due to Defendant's willful or malicious conduct in an amount according to proof, including pursuant to 18 U.S.C. § 1836(b)(3)(D) and O.C.G.A. § 10-1-761;

7.    For exemplary damages, under any appropriate alternative, as set forth in 18 U.S.C. § 1836(b)(3)(C) and O.C.G.A. § 10-1-763(b);

8.    For legal costs, interest and fees incurred by Keenan's Kids to attain the relief requested herein; and

9.     Such other and further relief as the Court may deem just and equitable.


Respectfully submitted this 10th day of June 2020.

/s/ *John M. Bowler*
John M. Bowler, Esq.
Georgia Bar No. 071770
Michael D. Hobbs, Jr., Esq.
Georgia Bar No. 358160
Lindsay Mitchell Henner, Esq.
Georgia Bar No. 272310
Troutman Sanders LLP
Bank of America Plaza, Suite 3000
600 Peachtree Street, NE
Atlanta, Georgia 30308
Tel: (404) 885-3000
Fax: (404) 962-65
john.bowler@troutman.com
michael.hobbs@troutman.com
lindsay.henner@troutman.com

*Attorneys for Plaintiff Keenan's Kids
Foundation, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **KEENAN'S KIDS FOUNDATION, INC.,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Action File No.: 1:20-cv-01702-WMR** |
| **-vs.-** | ) ) | |
| **SEAN CLAGGETT,** | ) ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and which will automatically send email notification of such filing to all counsel of record.

This 10th day of June, 2016.

*/s/ John M. Bowler*