## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **KEENAN'S KIDS FOUNDATION, INC.** | |
| **Plaintiff,** | **CIVIL ACTION NO: 1:20-cv-01702-WMR** |
| **v.** | |
| **SEAN CLAGGETT,** | |
| **Defendant.** | |

## DEFENDANT SEAN CLAGGETT'S BRIEF IN SUPPORT OF HIS MOTION TO DISMISS

Defendant Sean Claggett ("Defendant" or "Mr. Claggett") hereby submits his Brief in Support of his Motion to Dismiss ("Motion").

## I.   INTRODUCTION

Mr. Claggett's Motion should be granted under Fed. R. Civ. P. 12(b)(6). Even though Plaintiff Keenan's Kids Foundation, Inc. ("Plaintiff") has now dropped his breach of contract claims, his residual trade-secret claims are nevertheless still based on a supposed confidentiality agreement (and subsequent circumstances that supposedly reinforced its obligations), which Mr. Claggett allegedly violated by disclosing trade secrets. But if the alleged agreements and circumstances do not impose the obligations alleged—and they do not—Plaintiff's

1

claims unravel.

To begin, Plaintiff asserts that Mr. Claggett signed a confidentiality agreement that prohibits him from disclosing *voir dire* techniques he learned at a September 2014 seminar.  But that written agreement imposes no such duty.  On its face, the agreement set only four requirements for Mr. Claggett, and not one of those is alleged to have been violated.  And to the extent Plaintiff asks the Court to find that Mr. Claggett's supposed non-disclosure duties arose from some unwritten yet perpetual confidentiality agreement, the statute of frauds bars its claims.

In the absence of any written or implied agreement, Plaintiff's trade-secret claims fail because Plaintiff hasn't alleged any other source of a duty to maintain confidentiality.  Those claims also fail because the disputed *voir dire* techniques are not trade secrets as a matter of law.  They are publicly available, were directly disseminated to attorney customers for use in public jury trials, and are readily ascertainable to any observant trial lawyer.  Further, Plaintiff has not alleged it took reasonable steps to protect them.

For these reasons, as explained below, the Court should grant Mr. Claggett's Motion and dismiss the Amended Complaint with prejudice.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Complaint and the Parties

On April 21, 2020, Plaintiff filed its Complaint.  On May 7, 2020, Defendant Sean Claggett was served with Summons and a copy of the Complaint, its Exhibit 1, and the Civil Cover Sheet.

Mr. Claggett timely moved to dismiss the initial Complaint on May 27, 2020.  (Dkt. Nos. 9, 9-1.)  On June 10, 2020, Plaintiff filed its First Amended Complaint ("Amended Complaint"), nullifying the initial Complaint and rendering Mr. Claggett's motion to dismiss that Complaint moot.  (*See* Dkt. Nos. 11, 12.)

Plaintiff alleges it is a Georgia non-profit corporation with its principal place of business located in Atlanta, Georgia.  (Dkt. No. 11 ("Am. Compl.") ¶ 3.)  Mr. Claggett lives and conducts legal business in Las Vegas, Nevada.  (*See id.* at ¶ 11.)

The Amended Complaint purports to assert claims for (1) violation of the Defend Trade Secrets Act ("DTSA"), and (2) violation of the Georgia Trade Secrets Act ("GTSA").   (*See id.* at pp. 25-36.)

**B.     The "Confidentiality Agreement" and Plaintiff's Allegations**

Plaintiff alleges it was established by "Don C. Keenan, a renowned, award-winning Atlanta-based trial lawyer," and that it owns "intellectual property exclusively used" by the Keenan Trial Institute ("Institute"), which offers "educational curriculum instructing lawyers on how to win their trials . . . ."  (*Id.* at ¶¶ 2, 8.)  Mr. Claggett is alleged to have been a student of "multiple" Institute

seminars, including one in September 2014 "regarding Keenan's Kids-owned voir dire techniques." (*Id.* at ¶ 14.)   Plaintiff further alleges that, while attending and as a prerequisite to that seminar, Mr. Claggett "executed a confidentiality agreement (the 'Agreement') with Keenan's Kids to protect" the seminar's "trade-secret and confidential contents."   (*Id.* at ¶ 52.)

Plaintiff makes a number of allegations concerning that Agreement's content and supposed effect.  Plaintiff alleges, for example, that the Agreement "warrants" that the signing "attendee will not disclose" the seminar's "confidential and proprietary information" (*id.* at ¶ 44); that it "explicitly identifies as confidential and applies to Keenan's Kids' trade secrets, copyrighted information, and other proprietary information 'including ideas, techniques . . . inventions, know-how, processes . . . and information' related to the services and information" provided at the *voir dire* course (*id.* at ¶ 53); and that, by signing the Agreement, Mr. Claggett "was informed of, became aware of, understood, and accepted" both "the confidential nature of the information to be conveyed in" the *voir dire* course, and that the course's contents were "not for redistribution to others." (*Id.* at ¶¶ 54-55.)

But the Agreement simply states, in relevant part, as follows:

> THIS AGREEMENT governs the disclosure of information *between the undersigned guest* at this event . . . *and the Keenan's Kids Foundation* as the host for this event, "Keenan Ball College Court 4."

"Confidential Information" shall mean any and all technical and non-technical information related to this seminar provided by either party to the other, including but not limited to trade secrets, copyrighted information, proprietary information – including ideas, techniques, . . . inventions, know-how, processes . . . and information the disclosing party provides regarding third parties . . . .

This confidentiality regards all formats and mediums, written or oral, and direct or indirect pieces of information.  In consideration of this confidentiality, the undersigned agrees to the following undertaking:

1.     No videotaping of any portion of the seminar.
2.     No audio recording of any portion of the seminar.
3.     No photographs taken during the seminar.
4.     Lastly, by signing this agreement, I state that I do not represent any insurance companies, or self-insured defendants.

Each party represents and warrants to the other party that it has the requisite corporate authority to enter into and perform this Agreement, and its execution and performance under this Agreement, including its disclosure of Confidential Information to the Recipient, will not result in a breach of any obligation to any third party or infringe or otherwise violate any third party's rights.

(Exhibit 1, a true and correct copy of which is attached hereto) (emphasis added).

Plaintiff alleges, further, that Mr. Claggett became an Institute instructor in 2015.  (Am. Compl. ¶ 56.)  Contrary to the initial Complaint's allegation that all Institute instructors were "bound" merely by confidentiality obligations imposed by the Agreement (*see* Dkt. No. 1, ¶¶ 48-51), however, Plaintiff now alleges that in "addition to, but separate from, the obligations created by the Agreement, all" instructors "are bound by a confidentiality obligation not to disclose information

such as the Trade Secret Voir Dire Techniques, and they in turn further reinforce the confidentiality obligation to their students." (Am. Compl. ¶ 58.)

Plaintiff further alleges that "Keenan's Kids communicated to Claggett as an instructor that the Trade Secret Voir Dire Techniques" were "confidential trade secrets" and, Mr. Claggett "acted in accordance with that fact" by being "responsible for overseeing and ensuring students' signing of confidentiality agreements prior to teaching" the *voir dire* techniques and "instructing students not to take course materials with them." (*Id.* at ¶¶ 59-60.) Plaintiff similarly alleges that, at various other times during the period that Mr. Claggett was an instructor, Mr. Claggett participated in discussions or activities in which the supposed trade secrets' confidentiality was discussed, including discussions in 2016 "wherein the line between trade secret confidential information and information that may be shared publicly was explicitly identified." (*Id.* at ¶¶ 61-66.) Mr. Claggett is alleged to have resigned from instructing at the Institute in 2018. (*See id.* at ¶ 67.)

Plaintiff alleges that Mr. Claggett now teaches his own *voir dire* class that "incorporates, embodies, and discloses the Keenan's Kids' proprietary and confidential Trade Secret Voir Dire Techniques." (*See id.* at ¶¶ 75-77.) Plaintiff otherwise alleges that those techniques are "identified by unique title phrases," which Plaintiff views as "trade secret and confidential," and comprise "at least four

specific strategies": to (1) "elicit information" about "prospective juror" motivation, (2) "identify unfavorable jurors on matters related to compensation; (3) assess juror empathy, and (4) select jurors through use of 'spotters.'"  (*Id.* at ¶ 34.)

Plaintiff says it "derives substantial value" from the techniques because "customers are willing to pay substantial enrollment fees" to attend the courses, and that a "significant part" of the techniques' value is based "on the information not being known" to competitors, because it cannot "be acquired elsewhere."  (*Id.* at ¶¶ 38-39.)   Plaintiff alleges that to preserve this value, it "has taken a number of steps to keep the information secret."  (*Id.* at ¶ 42.)

In particular, Plaintiff claims that attorneys cannot access the techniques until the Institute confirms they are plaintiff's attorneys, that every seminar attendee is required to sign and abide by the so-called confidentiality agreement, that any materials the Institute provides students "must remain with the institute when coursework is completed" (but students can take their own notes), that access to the *voir dire* course's "separate LISTSERV" was limited to individuals who had taken that course and had login credentials, that the techniques are not publicly available on the internet, in court filings, or similar sources, and that Plaintiff "tightly controls the distribution of any recordings" of Institute seminars and does not share them without" a confidentiality agreement.  (*Id.* at ¶¶ 37, 43-48, 70.)

Plaintiff alleges that Mr. Claggett lacks permission to "misappropriate, use and disclose" its techniques in his own *voir dire* class, and that Mr. Claggett's execution of the Agreement demonstrates that he has known since the Institute's September 2014 *voir dire* course that "he has a duty to maintain the secrecy of the information he acquired" there.  (*Id.* at ¶¶ 52-55, 78-79.)  Plaintiff says that when Mr. Claggett resigned, he was "put on notice" not to breach confidentiality obligations, and not "to teach anything learned" through the Institute.  (*Id.* at ¶ 68.)

Plaintiff alleges that Mr. Claggett has done so anyway, breaching his confidentiality obligations and misappropriating its trade secrets, causing Plaintiff damage.  (*See generally id.* at ¶¶ 75-126.)  Although Plaintiff alleges it will suffer imminent and irreparable harm without injunctive relief (*see id.* at ¶¶ 105, 125), it has not moved for any such relief.   (*See generally* Dkt.)

## III.   ARGUMENT AND CITATION TO AUTHORITY

Plaintiff's First Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6)[1] because it fails to state a claim on which relief could be granted.

### A.      Standard on Motion to Dismiss for Failure to State a Claim.

---

[1] "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

Dismissal under Rule 12(b)(6) is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).[2]  Courts are to accept the plaintiff's well-pleaded factual allegations as true and construe them "in the light most favorable to" the plaintiff.  *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005).

Even so, "plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."  *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004) ("conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.").

Further, the Court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) [its] authenticity . . . is not challenged."  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see also Basson v. Mortg. Elec. Reg. Sys., Inc.*, 741 Fed. App'x 770, 771 (11th Cir. 2018) (the court "may also consider documents referenced in the complaint" when the

---

[2] Internal citations are omitted here, and hereafter, except where otherwise noted.

document is a "necessary part" of the plaintiff's "effort to make out a claim"). And "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). A court may also "take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion." *Halmos v. Bomardier Aerospace Corp.*, 404 Fed. App'x 376, 377 (11th Cir. 2010).

Ultimately, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint alleging facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S at 557).

### B.    Plaintiff has failed to state a misappropriation of trade secrets claim under either the GTSA or the DTSA.

At least two independent reasons compel dismissal of Plaintiff's misappropriation of trade secrets claims. First, Plaintiff has failed to adequately allege trade-secret misappropriation, which requires that trade secrets were either obtained by improper means, or disclosed or used despite having been acquired under circumstances giving rise to a confidentiality duty. *See* O.C.G.A. § 10-1-761(2); 18 U.S.C.A. § 1839(5). Plaintiff has not alleged that Mr. Claggett obtained trade secrets improperly. And although Plaintiff alleges that the Agreement

imposes a confidentiality duty, the Agreement proves otherwise, and Plaintiff has not alleged any additional relevant circumstance concerning Mr. Claggett's acquisition of the disputed information that gave rise to a confidentiality duty.

Second, Plaintiff has failed to adequately allege that any *voir dire* information was a "trade secret,"—*i.e.*, that it was not "readily ascertainable by proper means" and was "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *See* O.C.G.A. § 10-1-761(4); 18 U.S.C.A. § 1839(3). Rather, Plaintiff seeks trade-secret protection for information disclosed to seminar participants without a non-disclosure agreement, for the participants' *public use* in jury trials "across the country" (Am. Compl. ¶ 88), from which any trial attorney could ascertain the information. Even more fundamental, the disputed *voir dire* techniques and strategies are widely available and discussed online.

For these reasons, Plaintiff's trade secrets claims must also be dismissed.

### 1.    GTSA and DTSA Standards[3]

A plaintiff claiming relief under the GTSA must prove that "'(1) it had a

---

[3] Courts consider and apply federal decisions applying and construing the GTSA and other state trade secret acts in their combined analyses of both the GTSA and the DTSA. *See, e.g.*, *Northstar Healthcare Consulting, LLC v. Magellan Health, Inc.*, 1:17-CV-1071-ODE, 2019 WL 4805558, *41-43 (N.D. Ga. July 10, 2019) (applying one case applying Florida's trade secret act and two cases applying the GTSA in combined analysis of GTSA and DTSA claims).

trade secret and (2) the opposing party misappropriated'" it.  *Argos USA LLC v. Young*, 1:18-CV-02797, 2019 WL 4125968, *5 (N.D. Ga. June 28, 2019) (quoting *Cap. Asset Research Corp. v. Finnegan*, 160 F.3d 683, 685 (11th Cir. 1998)). "The DTSA requires the same showing," and also requires that the trade secret be "related to a product or service used in, or intended for use in, interstate or foreign commerce." *Id.* (internal quotations omitted).

The GTSA defines "misappropriation" as:

(A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) Used improper means to acquire knowledge of a trade secret;

(ii) At the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:

(I) Derived from or through a person who had utilized improper means to acquire it;

(II) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii) Before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

O.C.G.A. § 10-1-761(2).  The DTSA defines "misappropriation" in materially the

same terms.  *See* 18 U.S.C.A. § 1839(5); *see also Argos USA, LLC*, 2019 WL 4125968, *7 (in combined GTSA and DTSA "misappropriation" analysis, quoting DTSA definition in full, and citing the parallel GTSA definition as a "*see also*").

The GTSA defines "trade secret," in relevant part, as:

> . . . information, without regard to form, including, but not limited to . . . a formula, a pattern, a compilation, a program, . . . a method, a technique, . . . [or] a process . . . which is not commonly known by or available to the public *and which information*:
>
> > (A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> >
> > (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

O.C.G.A. § 10-1-761(4) (emphasis added).  Again, the DTSA defines "trade secret" in substantially similar terms.  *See* 18 U.S.C.A. § 1839(3).

## 2. Plaintiff has failed to allege trade-secret misappropriation.

Plaintiff has not adequately alleged that Mr. Claggett either acquired a trade secret by improper means or disclosed a trade secret knowing (or with reason to know) that he acquired it under circumstances giving rise to a duty to maintain secrecy.  In fact, Plaintiff has not alleged "improper means" at all.  Rather, Plaintiff acknowledges that Mr. Claggett learned the disputed information as a student at a September 2014 *voir dire* seminar, for which Mr. Claggett paid

"significant enrollment fees," and that information was reinforced in later educational settings.   (*See* Am. Compl. ¶¶ 14, 38, 51, 56, 61, 78, 95, 116).

Separately, Plaintiff has not adequately alleged that Mr. Claggett knows or has reason to know that he "acquired" the disputed information "under circumstances giving rise to a duty to maintain its secrecy or limit its use." O.C.G.A. § 10-1-761(2)(B)(ii); *see* 18 U.S.C.A. § 1839(5)(B)(ii)(II). Instead, Plaintiff alleged:

> Claggett was aware that the information offered at Keenan's Kids Voir Dire Course was trade secret and confidential, including through his execution of a Confidentiality Agreement with Keenan's Kids as a participant, and through his employment with Keenan's Kids as an instructor who was intimately familiar with the secrecy of and protective measures for the . . . Techniques, for at least the representative reasons identified in paragraphs 50-6, 68, and 70-74 above and incorporated herein. All of these circumstances, individually and in combination, gave rise to Claggett's duty to maintain the secrecy of and/or limit the use of . . . [the] Techniques.

(Am. Compl. ¶¶ 96, 117; *see also id*. at ¶¶ 97, 119).   Even supplemented by incorporated-by-reference allegations, these allegations are insufficient.

First, despite Plaintiff's extensive allegations about Keenan's Kids activities in which Mr. Claggett participated and confidentiality obligations that were supposedly discussed and imposed *after* he attended the Institute's *voir dire* class, none of those subsequent activities are relevant to Plaintiff's trade-secret claims. Rather, the DTSA and GTSA prohibit disclosure of trade secrets by a person

whose "knowledge of the trade secret was," among other things, "*[a]cquired* under circumstances giving rise to a duty to maintain its secrecy or limit its use." O.C.G.A. § 10-1-761(2)(b)(ii)(II) (emphasis added); *see also* 18 U.S.C.A. § 1839(5)(B)(ii)(II).   And these are the very provisions on which Plaintiff bases its misappropriation claims.   (*See* Am. Compl. ¶¶ 94, 114.)

Accordingly, only the circumstances concerning Mr. Claggett's *acquisition* of the supposed trade-secret information, and that might give rise to a duty to maintain confidentiality, are relevant.[4]   Plaintiff has plainly alleged that "the contents" of the "Keenan's Kids Voir Dire Course" that Mr. Claggett attended in September 2014 are "the basis of the trade secret claims herein."  (Am. Compl., ¶¶ 14, 51-55.)   And the only September 2014 "circumstances" that Plaintiff has alleged that could even potentially give rise to a duty to maintain confidentiality is Mr. Claggett's execution of the so-called Confidentiality Agreement. (*See generally* Am. Compl.)

> a.   **The Agreement did not give rise to a duty to maintain confidentiality.**

---

[4] *See, e.g.*, *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1332-34 (N.D. Ga. 2007) (evaluating protection, or lack thereof, in place at time supposed trade secret was disclosed or acquired, and holding that a "generalized confidentiality agreement along [is] not reasonable as a matter of law to maintain secrecy").

The Court should consider the Agreement, attached hereto as Exhibit 1, in its 12(b)(6) analysis.   First, the Agreement is "central" to—*i.e.*, a "necessary part" of—Plaintiff's effort to make a claim. *Day*, 400 F.3d at 1276. (*See also* Am. Compl., ¶¶ 22, 44-48, 52-55, 57, 60, 64, 89, 91, 96-97, 109, 111-112, 117-118.). Second, having attached the Agreement to its initial Complaint, Plaintiff cannot plausibly now challenge its "authenticity."   *See Day*, 400 F.3d at 1276.

And that Agreement does not identify the *voir dire* techniques as trade secrets,[5] much less impose on Mr. Claggett any duty to maintain the confidentiality of that content.   Plaintiff implicitly admits as much, having dropped its breach of contract claims.  (*Compare* Dkt. 1 *with* Dkt. 11.)

Indeed, the Agreement imposed only four duties on Mr. Claggett.  (*See* Ex. 1.)   Those were to refrain from (1) videotaping, (2), audio recording, and (3) photographing any portion of the seminar, and (4) "[l]astly," to declare that he did not represent any insurance companies, or self-insured defendants.  (*See id*.)   The Amended Complaint, rightly, nowhere alleges that those duties were breached.

Plaintiff's apparent belief that the Agreement extends further, "warrant[ing]"

---

[5] Plaintiff's new allegation that "the line between trade secret confidential information and information that may be shared publicly was explicitly identified" in 2016 admits that any such line wasn't previously drawn.  (Am. Compl. ¶ 66.)

that Mr. Claggett would "not disclose the confidential and proprietary information" and binding him "to maintain the secrecy of the information he acquired" in the *voir dire* course (*see id.* at ¶¶ 44, 51-55, 79, 96-97, 117-118), is unsupportable. The Agreement's opening lines clarify that it "governs the disclosure of information *between the undersigned guest* at *this event*" and "*the Keenan's Kids Foundation* as the host for *this event*." (Ex. 1.) (emphasis added) By these express terms, the Agreement does not apply to other events. (*See id.*) And the Agreement's limited references to third parties say nothing whatever about non-disclosure. (*See id.*)

Thus, despite Plaintiff's attempts to allege that the Agreement imposed duties far exceeding the four requirements enumerated above, the Agreement says otherwise, and it governs. *See Griffin Indus., Inc.*, 496 F.3d at 1205-06.

### b. Plaintiff hasn't alleged any other relevant circumstances giving rise to a duty to maintain confidentiality.

Again, Plaintiff generally alleges that Mr. Claggett was subject to broad non-disclosure and confidentiality obligations concerning the *voir dire* class's contents (*see, e.g.*, Am. Compl. ¶¶ 44-48, 52-66), far exceeding the Agreement's limited terms. But it does not allege any additional communications or conduct between Plaintiff and Mr. Claggett in September 2014—when he attended the *voir dire* class and acquired the disputed information—that could support the inference that

17

those two parties implicitly agreed to anything beyond the Agreement's limited provisions, or that those acquisition circumstances somehow otherwise gave rise to a duty of non-disclosure.

With respect to any implied agreement, under Georgia law,[6] agreements that are "not to be performed within one year from the making thereof" must be "in writing and signed by the party charged therewith," or are unenforceable. O.C.G.A. § 13-5-30(a)(5).   To the extent, then, that Plaintiff believes the supposed

---

[6] Georgia applies the rule of *lex loci contractus*, under which contracts "are to be governed as to their nature, validity, and interpretation by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case . . . the laws of that sister State will be applied." *Convergys Corp. v. Keener*, 276 Ga. 808, 811 & n.1, 582 S.E.2d 84, 86 & n.1 (2003).

Plaintiff alleges the Agreement was made in Georgia. (*See* Am. Compl. ¶ 52; Ex. 1.) And the Agreement shows it was to be performed there, too, where Plaintiff and the Institute were to provide instruction, and where Mr. Claggett was not to take photos or video or audiotapes. (*See* Ex. 1.) *See also Lima Delta Co. v. Global Aerospace, Inc.*, 325 Ga. App. 76, 83, 752 S.E.2d 135, 141 (2013) (a contract is "made" where the "last act essential to" complete "the contract" is performed).

Plaintiff's apparent theory that the Agreement imposes a boundary-less non-disclosure obligation, even were it accepted (it should not be), doesn't change these "made" and "performed" conclusions. Where a contract contemplates no particular place for performance, including by having a broad geographic scope, "Georgia generally applies the law of the place where the contract was made." *See id.* (citing *Fed. Ins. Co. v. Nat'l Dist. Co., Inc.*, 203 Ga. App. 763, 767(1), 417 S.E.2d 671 (1992)).

circumstances surrounding the September 2014 *voir dire* class reflect Mr. Claggett's agreement to maintain the confidentiality of information learned there, from the date of that course into perpetuity, any such unwritten agreement is unenforceable under the statute of frauds.   Plaintiff certainly did not plead that Mr. Claggett's alleged agreement to maintain confidentiality was for a year or less, and the Amended Complaint—based on Mr. Claggett's alleged 2018-and-after conduct (*see* Am. Compl. ¶¶ 67, 75-78, 81-85)—reflects Plaintiff's view that his alleged non-disclosure obligations are ongoing.

The alleged obligation is thus, if anything, "incapable of being performed within a year," triggering the statute of frauds. *Bithoney v. Fulton-DeKalb Hosp. Auth.*, 313 Ga. App. 335, 341, 721 S.E.2d 577, 582 (2011).   And because it is not in writing (again, the Agreement contains no such confidentiality terms), any such implied agreement is unenforceable as a matter of law.

What's more, Plaintiff hasn't alleged any other *potential* source of a confidentiality duty, whether by written contract or otherwise, imposed by the circumstances when Mr. Claggett first acquired the information.   (*See generally* Am. Compl.) *See also Northstar Healthcare Consulting, LLC v. Magellan Health, Inc.*, 1:17-CV-1071-ODE, 2019 WL 4805558, *41-43 (N.D. Ga. July 10, 2019) (noting that, even as between an employer and employee, "courts have rejected the

notion" that "an 'implicit understanding' is sufficient to protect confidential material").  As mentioned, the Agreement concerned only the September 2014 course, and Mr. Claggett's duty to perform concluded at the end of the course, according to the Agreement's limited terms, just as Plaintiff's did.  (*See* Ex. 1.)

Separately, Plaintiff hasn't alleged facts suggesting how Mr. Claggett could possibly have discerned at the time of the Institute's *voir dire* class that the information he was buying for use in public jury trials were "trade secrets."[7]  Nor has Plaintiff indicated how either that class or the Agreement might have informed him that he had a duty to protect the information. Aside from the facial implausibility of Plaintiff's conclusory "understood" and "accepted" allegations (*see, e.g.*, Am. Compl. ¶¶ 54-55)—which alone warrants dismissal[8]—the Agreement doesn't support them.

Although it mentions "trade secrets" as one of several categories of "Confidential Information" that might be disclosed during the course "by either party," the Agreement does not define "trade secrets" or otherwise indicate how a

---

[7] For reasons set forth in Part III.B.3., *infra*, among others, they are not.

[8] *See, e.g.*, *Argos USA LLC*, 2019 WL 4125968, *8 (citing *Iqbal* for rule that a "formulaic recitation of the elements . . . is insufficient" and dismissing "conclusory" misappropriation allegations, including allegation that defendant "knew that the documents contained trade secrets").

seminar attendee might tell which (if any) content was a trade secret.  (*See* Ex. 1.) Nor has Plaintiff alleged any other means by which the Institute's attorney clients could guess that the information they were buying for public use was a trade secret, especially in the absence of Agreement terms precluding disclosure.   (*See id.*; *see also* Part III.B.2.a., *supra*.)

Plaintiff has thus failed to plausibly allege that Mr. Claggett knows or has reason to know that he acquired the information under circumstances giving rise to a duty to maintain its secrecy or limit its use.   Because Plaintiff has therefore not adequately alleged trade-secret misappropriation under the GTSA or the DTSA, the Amended Complaint should be dismissed in its entirety.

### 3.    Plaintiff has failed to allege any trade secret.

Plaintiff's trade-secret allegations fail, too, for at least three reasons.  First, the disputed jury-selection strategies and techniques—even if they were suitable for trade-secret protection or adequately alleged to give Mr. Claggett notice of which seminar content cannot be disclosed, both disputed premises—are publicly available.[9]   Second, that information is directly disseminated to the Institute's

---

[9] Mr. Claggett respectfully requests that the Court take judicial notice, including under Fed. R. Evid. 201(b), that the disputed *voir dire* content is publicly accessible on portions of Mr. Keenan's blog, and discussed in detail in CLE

attorney customers for use in public jury trials, from which the information is also readily ascertainable to others.    Third, the measures Plaintiff allegedly took to keep the information secret were not reasonable.

Concerning both "ascertainability" and "reasonable measures," information "that has been publicly disclosed" through "sale or disclosure to customers" is "not protected" by trade secret law, except where persons with whom information is shared are "legally obligated, by express or implicit agreement or by another duty

---

presentations and articles that are also broadly available online, at, among other locations, the following web addresses (all of which were last visited by counsel June 16, 2020), reflecting public availability of Keenan's *voir dire* techniques: http://keenan183.rssing.com/chan-25568066/all_p4.html; http://keenan183.rssing.com/chan-25568066/all_p5.html; http://keenan183.rssing.com/chan-25568066/all_p6.html; http://keenan183.rssing.com/chan-25568066/all_p7.html; https://webcache.googleusercontent.com/search?q=cache:eKx4_YmMjeQJ:https:// www.shb.com/-/media/files/professionals/s/sastrehildy/acc-personalizing-the-corporate-client.pdf+&cd=1&hl=en&ct=clnk&gl=us; https://www.cooperscully.com/news-and-resources/articles/reptile-theory; https://webcache.googleusercontent.com/search?q=cache:xkzahXocW1wJ:https:// www.namicinsurance.com/file/33+&cd=1&hl=en&ct=clnk&gl=us; https://cdn.ymaws.com/www.thefederation.org/resource/resmgr/Events/Webinars/ May_2016_Reptile_Paper_(2).pdf; https://fjcadr.com/uploads/3/5/2/0/35203263/scott_v_uofu_1-_defendants_memo_on_mil_reptile.pdf;   https://www.iadclaw.org/assets/1/7/11.4-_Pomatto-_Reptile_Theory.pdf. *See, e.g.*, *Wells Fargo Bank, Nat'l Ass'n v. Crowley*, 1:13-CV-01427-CAP-LTW, 2014 WL 11370437, *13 & n.22 (N.D. Ga. Feb. 20, 2014) (taking judicial notice of website contents); *Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F. Supp. 3d 755, 762-63 (C.D. Cal. 2015) (taking judicial notice of internet materials, limited to notice of "the fact that an internet article is available to public").   On this basis alone, Plaintiff's GTSA and DTSA claims fail.

imposed by law" to maintain its confidentiality. *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1332-33 (N.D. Ga. 2007) (citing and applying, *inter alia*, *Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1454 (11th Cir. 1991) (applying common law)). Again, Plaintiff has not adequately alleged any legal obligation on Mr. Claggett's part to maintain confidentiality.

One reason for this "no disclosure to customers" rule is that trade-secret law does not prohibit a person from reverse-engineering a product or service to derive information that may otherwise qualify for trade-secret protection.   *See* O.C.G.A. § 10-1-761(1); 18 U.S.C. § 1839(6)(B).  Here, though, no reverse-engineering was even necessary.  Instead, just like the defendant customer in *Warehouse Solutions, Inc. v. Integrated Logistics, LLC*, 610 Fed. App'x 881, 885 (11th Cir. 2015), where the plaintiff's dissemination of its product to users "necessarily revealed" the allegedly secret "features and functions," Plaintiff's dissemination of the *voir dire* information directly to Mr. Claggett made that content "readily ascertainable."

And to the extent the "readily ascertainable" inquiry in this case extends to third parties who might "obtain economic value" from Plaintiff's supposed trade secrets, recall that those so-called secrets are *voir dire* "strategies" intended for use in jury trials.  (*See* Am. Compl. ¶ 34).  Any trial attorney could obtain transcripts of Institute graduates' cases to review the *voir dire* questions and ascertain

23

Plaintiff's supposed strategies.  Plaintiff's contrary allegations (*see, e.g.*, *id.* at ¶ 36) are rebutted by information subject to judicial notice.  *See, e.g.*, n.9, *supra* (citing, *inter alia*, https://fjcadr.com/uploads/3/5/2/0/35203263/scott_v_uofu_1-_defendants_memo_on_mil_reptile.pdf, containing *voir dire* transcript excerpt).

Although Plaintiff says it took "a number of steps to keep the information secret," (Am. Compl. ¶¶ 42-48, 57-58, 70, 72), those allegations, too, are insufficient.  Even if Plaintiff indeed "tightly controls" its recordings (*id.* at ¶ 70), Plaintiff's reliance on the Agreement to supposedly prohibit disclosure by seminar attendees and LISTSERV users (*id.* at ¶¶ 48, 64) vitiates any protective power other steps might theoretically have had.

That is, because the Agreement does not prohibit disclosure (*see* Part III.B.2.a., *supra*), *voir dire* seminar attendees are free to use and disseminate that acquired information immediately, irrespective of any controls Plaintiff might place over its recordings or of any other subsequent steps. Plaintiff's alleged "reasonable steps" thus fail as a matter of law.  *See, e.g.*, *AmeriGas Propane, L.P. v. T-Bo Propane, Inc.*, 972 F. Supp. 685, 701 (S.D. Ga. 1997) (plaintiff's sole reliance on unenforceable confidentiality agreement "cannot, as a matter of law, amount to reasonable efforts to protect the secrecy of the subject information"); *Warehouse Solutions, Inc.*, 610 Fed. App'x at 882-83, 885 (software developer's

steps to maintain secrecy were not reasonable as a matter of law where program access was password controlled, and plaintiff instructed reseller not to share the program except with customers who signed an express non-disclosure agreement, yet developer did not require reseller to sign any non-disclosure agreement).

For each of these reasons, any of which is dispositive, Plaintiff has failed to adequately allege a "trade secret," and its Amended Complaint must be dismissed.

## IV.   CONCLUSION

By pursuing this case, Plaintiff seeks to derive the benefits of a restrictive covenant that it never bargained for or obtained from Mr. Claggett, and which would be nonsensical in context in any event.  Plaintiff's Amended Complaint, including all claims and prayers for relief therein, fails to state a claim on which relief could be granted, and should be dismissed with prejudice.

Respectfully submitted on June 23, 2020.

_s/ Joseph C. Sharp_
Joseph C. Sharp
Georgia Bar No. 637965
Polsinelli PC
1201 West Peachtree Street, NW
Suite 1100
Atlanta, GA  30309
Telephone:  (404) 253-6000
Fax:  (404) 253-6060  Fax
Email:  jsharp@polsinelli.com
*Counsel for Defendant Sean Claggett*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **KEENAN'S KIDS FOUNDATION, INC.** | |
| **Plaintiff,** | **CIVIL ACTION NO:** |
| **v.** | **1:20-cv-01702-WMR** |
| **SEAN CLAGGETT,** | |
| **Defendant.** | |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing **DEFENDANT SEAN CLAGGETT'S BRIEF IN SUPPORT OF MOTION TO DISMISS** has been prepared in Times New Roman, 14-point font, in conformance with Local Rule 5.1C.

_s/ Joseph C. Sharp, Esq._
Joseph C. Sharp, Esq.
*Counsel for Defendant*

26

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **KEENAN'S KIDS FOUNDATION, INC.** | |
| **Plaintiff,** | **CIVIL ACTION NO: 1:20-cv-01702-WMR** |
| **v.** | |
| **SEAN CLAGGETT,** | |
| **Defendant.** | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2020, I have electronically filed the foregoing **DEFENDANT SEAN CLAGGETT'S BRIEF IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will automatically send notice of its filing to the following counsel of record:

John M. Bowler, Esq. (john.bowler@troutman.com)
Michael D. Hobbs, Jr., Esq. (michael.hobbs@troutman.com)
Lindsay Mitchell Henner, Esq. (lindsay.henner@troutman.com)
TROUTMAN SANDERS LLP
600 Peachtree Street, NE
Bank of America Plaza, Suite 3000
Atlanta, GA 30308
Telephone: (404) 885-3000
Facsimile: (404) 962-6513

Respectfully submitted this 23rd day of June, 2020.

*s/ Joseph C. Sharp*
Joseph C. Sharp, Esq.
*Counsel for Defendant*