**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **KEENAN'S KIDS FOUNDATION, INC.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action File No.:** |
| | ) | |
| **-vs.-** | ) | **1:20-cv-01702-WMR** |
| | ) | |
| **SEAN CLAGGETT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**Joint Preliminary Report and Discovery Plan**</u>

**1.     Description of Case:**

**(a)  Describe briefly the nature of this action.**

This case involves claims brought by Keenan's Kids Foundation, Inc. ("Keenan's Kids Foundation") against Sean Claggett ("Claggett") for misappropriation of trade secrets under the federal Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836, *et seq*. ("DTSA") and the Georgia Trade Secrets Act of 1990 (O.C.G.A. § 10-1-760 *et seq.*) ("GTSA").

**(b)  Summarize, in the space provided below, the facts of this case.  The summary should not be argumentative nor recite evidence.**

**Plaintiff:** Keenan's Kids Foundation, a Georgia non-profit corporation, was established in 1993 by  Don C. Keenan, a renowned, award winning Atlanta-based

trial lawyer, for the purposes of helping at-risk children via charity events, raising community awareness, and providing child advocacy services.  Keenan's Kids Foundation is the owner of intellectual property exclusively used by the Keenan Trial Institute, which offers Mr. Keenan's educational curriculum instructing lawyers on how to win their trials, protect community safety, and deter wrongdoers by holding them accountable, through teaching confidential and proprietary techniques. The unique and proprietary curriculum owned by Keenan's Kids Foundation was created through Mr. Keenan's over forty-years of experience as lead counsel in thousands or trials.

Because attorneys use these proprietary techniques to win trials, including significant financial awards, and to deter wrongdoers for the good of the community, Keenan's Kids Foundation's customers recognize the intrinsic value of Keenan's Kids' techniques. Because Keenan's Kids Foundation is the owner of decades spent in creating and refining the unique, proprietary and confidential techniques that Keenan Trial Institute customers value, those techniques are also valuable to Keenan's Kids.  Conversely, if the confidential information or details related to Keenan's Kids Foundation's proprietary techniques became known to Keenan Trial Institute competitors, those competitors would use that information to develop and market competing educational courses to offer to the Keenan Trial Institute

2

customers, damaging, if not destroying the value of Keenan's Kids and the Keenan Trial Institute.

A significant portion of the value Keenan's Kids Foundation derives from its proprietary techniques is based on its curriculum of trial techniques not being known to Keenan Trial Institute competitors. A significant portion of the value Keenan's Kids derives from its proprietary techniques is based on its curriculum of trial techniques also not being known to defense counsel who have not taken the courses of the Keenan Trial Institute; and, if such proprietary techniques were known to defense counsel, the unauthorized access would give them a roadmap of what students and instructors of the Keenan Trial Institute are trying to accomplish in their jury selection at trial.

Specifically, and critical to the Keenan Trial Institute's success, are the confidential and proprietary trade secret voir dire techniques owned by Keenan's Kids' ("Trade Secret Voir Dire Techniques").  Keenan's Kids is the owner of decades' worth of significant investment of time and resources in the development of its confidential and proprietary Trade Secret Voir Dire Techniques, relying on the extensive, unique personal experience and research of Mr. Keenan.

To preserve the value of its confidential, proprietary, and trade secret information, including its Trade Secret Voir Dire Techniques, Keenan's Kids has

3

taken a number of steps to keep the information secret. Among these steps, every attendee of a Keenan Trial Institute course where Keenan's Kids' confidential and proprietary information will be shared and was shared, including the Keenan's Kids Voir Dire Course, is required to sign a "Confidentiality Agreement" that warrants the attendee will not disclose the confidential and proprietary information.  The Confidentiality Agreement explicitly identifies as confidential and applies to Keenan's Kids trade secrets, copyrighted information, and other  proprietary information "including ideas, techniques…inventions, know-how, processes…and information" related to the services and information provided at the specific Keenan Trial Institute event.  Attendees are further prohibited from videotaping, audio recordings, and photographs of any seminar.  Further, any materials provided to students by the Keenan Trial Institute must remain with the institute when coursework is completed, and students can leave only with their own notes for personal use only.

Keenan's Kids course instructors also often orally identify and  emphasize the Confidentiality Agreement to participants, as well as the requirement to leave course materials behind, further informing participants of, and reinforcing, the confidential nature of course material.

In addition, the Keenan's Kids Voir Dire Course had its own separate LISTSERV, and blogs to which access was limited only to individuals who first took the Keenan's Kids Voir Dire Course and for whom login credentials were created and issued, in order to further protect the confidentiality of any discussions regarding the Trade Secret Voir Dire Techniques.

Sean Claggett is an attorney who participated as a student in multiple Keenan Trial institute seminars and taught for Keenan Kids Foundation.  Having resigned from the Keenan Trial Institute in 2018, Claggett now teaches voir dire-related courses for a competitor of Keenan Trial Institute, including *Sean Claggett's Case Analysis  and Voir Dire School* ("Claggett's Voir Dire School") which—without permission from Keenan's Kids Foundation—misappropriates, utilizes, and discloses substantial portions of Keenan's Kids' confidential and trade secret materials subject to confidentiality obligations imposed on Claggett as a participant and instructor.  As early as May 2014, Claggett was aware of Keenan's Kids' unique, proprietary and confidential curriculum exclusively taught through the Keenan Trial Institute and had begun attending them.

On September 23-24, 2014, Claggett attended a Keenan's Kids Voir Dire Course where Claggett was taught the proprietary and confidential Trade Secret Voir Dire Techniques, including those specified and detailed above.

While attending a Keenan's Kids Voir Dire Course in Atlanta, Georgia, on September 23-24, 2014, as a prerequisite for attendance, Claggett executed a Confidentiality Agreement (the "Agreement") with Keenan's Kids to protect the trade-secret and confidential contents of the seminar. As is true for all participants, the Confidentiality Agreement that Claggett executed explicitly identifies as confidential and applies to Keenan's Kids' trade secrets, copyrighted information, and other proprietary information "including ideas, techniques…inventions, know-how, processes…and information" related to the services and information provided at the Keenan's Kids Voir Dire Course, and further prohibited him from videotaping, taking audio recordings, and taking photographs of the seminar.

By signing the Agreement titled "Confidentiality Agreement", which further defined "Confidential Information" as trade secret and proprietary information including things like "techniques…know-how, [and] processes", Claggett was informed of, became aware of, understood, and accepted the confidential nature of the information to be conveyed in the Keenan's Kids Voir Dire Course.  By signing the Agreement prohibiting recordation of the seminar and agreeing to leave behind distributed coursework, Claggett (like all participants) was informed of, became aware of, understood, and accepted that the Keenan's Kids Voir Dire Course and

Trade Secret Voir Dire Techniques were confidential and not for redistribution to others.

In 2015, Claggett became an instructor for the Keenan Trial Institute, teaching courses including Keenan's Kids' "Trial" and "Focus Group" seminars containing the asserted trade secrets and confidential information. The confidentiality obligation of Claggett for the Keenan's Kids Voir Dire Course materials, content, and information extended further and applied to and was reinforced in Claggett's role as an instructor of the Keenan's Kids Voir Dire Course.  In addition to, but separate from, the obligations created by the Agreement, all Keenan Trial Institute instructors, including Claggett, are bound by a confidentiality obligation not to disclose information such as the Trade Secret Voir Dire Techniques, and they in turn further reinforce the confidentiality obligation to their students.

Keenan's Kids communicated to Claggett as an instructor that the Trade Secret Voir Dire Techniques, among other things, were confidential trade secrets of Keenan's Kids, and Claggett acted in accordance with that fact.  As an instructor, for example, Claggett was responsible for overseeing and ensuring students' signing of confidentiality agreements prior to teaching the Trade Secret Voir Dire Techniques and for instructing students not to take course materials with them.

7

Claggett also made multiple trips to the "Beach" (in Santa Rosa Beach, Florida) for educational purposes and workshops for two-and-a-half days work on "Edge" materials and whereat the asserted trade secrets and confidential information were shared with and entrusted to Claggett. Claggett specifically participated in discussions at the beach regarding contents of Keenan's Kids blogs, wherein it was explained that the blogs purposely do not include the information comprising the Trade Secret Voir Dire Techniques.

Claggett himself participated in a vote to restrict blog access so that attendees of programs such as the Keenan's Kids Voir Dire Course would not be able to reveal, inadvertently or otherwise, material comprising the Trade Secret Voir Dire Techniques, further evidencing his understanding of the confidentiality of the same. In addition, Claggett himself oversaw as manager the Nevada LISTSERV, access to which was limited only to individuals who first took the Keenan's Kids Voir Dire Course, all of whom were informed of, aware of, understood, and accepted the confidential nature of the information to be conveyed in the Keenan's Kids Voir Dire Course and on the LISTSERV at least by virtue of having signed a Confidentiality Agreement and having received password-protected, restricted access to the LISTSERV where those materials could be discussed.

8

Further showing how involved Claggett was in the Keenan Trial Institute and its asserted trade secrets and confidential information, and thus his awareness of their confidential status, Claggett was one of only four faculty members chosen to go on the educational cruise in May 2016 and spend a week immersed in the "Edge" materials.

Also in 2016, by way of example, Claggett participated in discussions as an employee of Keenan's Kids wherein the line between trade secret confidential information and information that may be shared publicly was explicitly identified. At the time, Keenan's Kids intended to offer free seminars around the country in part as a marketing tool for its paid seminars and reiterated in discussions about the contents of those free seminars, that Keenan's Kids trade secret strategies should not be included outside of the confines of the protected courses like the Keenan's Kids Voir Dire Course.

In September 2018, Claggett resigned as an instructor of the Keenan Trial Institute. At the time of Claggett's resignation in 2018, he was again put on notice by David Hoey, Dean of the Keenan Trial Institute and Keenan Ball Trial College, not to breach Claggett's confidentiality obligations, and further that Claggett was not authorized to teach anything learned as a student or instructor of the college courses at Keenan Trial Institute, or the seminars, or as a consult referring attorney,

9

or as a co-dean of the damages course Claggett withdrew from the LISTSERV and the Keenan Ball Trial College because of criticism he received that he went outside the boundaries of permissible conduct. Keenan's Kids also tightly controls the distribution of any recordings of Keenan Trial Institute seminars and does not share the recordings without an agreement to maintain confidentiality.

The entire business model under which the Keenan's Kids Voir Dire Course operates depends upon the confidentiality of the Trade Secret Voir Dire Techniques, insofar as, absent such restrictions and understanding of confidentiality, competitor course offerings from Keenan's Kids students would spring up every day offering to teach the same content as Keenan's Kids Voir Dire Course.  To date, Claggett is the only such competitor to purport to do so, indicating thousands upon thousands of other participants' consensus that the Trade Secret Voir Dire Techniques are not theirs to share.

Aside from Claggett, Keenan's Kids has been approached by instructors who – again, fully understanding the confidentiality of Keenan's Kids' trade secret strategies – seek Keenan's Kids' express permission to teach certain content.  In response to such requests, in a further effort to protect the confidentiality of its trade secrets, Keenan's Kids requests an outline of the material to be taught and either

approves or denies the outline.  Keenan's Kids denies or revises outlines that indicate protected material would be disclosed.

As an instructor for Keenan's Kids, intimately involved in the business of offering courses like the Keenan's Kids Voir Dire Course containing Trade Secret Voir Dire Techniques, Claggett was regularly exposed to Keenan's Kids' business model, confidentiality policy, and confidentiality expectations, and well understood his obligation to maintain that confidentiality.  In addition to jury selection, Claggett was privy to other trade secrets and confidential information of the Keenan Trial Institute, which further contributed to his understanding of the confidentiality of Keenan's Kids' proprietary strategies, including unique theories related to the use and analysis of focus groups that were taught to him and which he taught to others at the Keenan Trial Institute and at consult referrals.

Recently, Keenan's Kids Foundation learned that Claggett was offering Claggett's Voir Dire School through Trojan Horse wherein Claggett was teaching Keenan's  Kids' confidential and proprietary Trade Secret Voir Dire Techniques communicated to Claggett under the auspices of confidentiality, including during the Keenan's Kids Voir Dire Course that Claggett attended in September 2014, and subsequently taught from 2015 to 2018. Claggett's Voir Dire School taught by Claggett and offered through Trojan Horse, specifically incorporates, embodies, and

11

discloses the Keenan's Kids' proprietary and confidential Trade Secret Voir Dire Techniques detailed above. Claggett's Voir Dire School taught by Claggett and offered through Trojan Horse therefore uses substantial elements of the unique, proprietary confidential curriculum derived from Keenan's Kids' Trade Secret Voir Dire Techniques.  Claggett does not have Keenan's Kids' permission to wrongfully misappropriate, use and disclose at Claggett's Voir Dire School the Trade Secret Voir Dire Techniques that Claggett acquired at the Keenan's Kids Voir Dire Course in September 2014 and subsequently as an instructor at the Keenan Trial Institute.

Claggett knows and has known since prior to his resignation from Keenan's Kids Foundation, that he has a duty to maintain the secrecy of the information he acquired from Keenan's Kids, including specifically the Keenan's Kids Voir Dire Course and Trade Secret Voir Dire Techniques.  Claggett and Trojan Horse have knowledge and understand the value of the Trade Secret Voir Dire Techniques as evidenced at least in part by the fact that Claggett, Trojan Horse and its owner Dan Ambrose have advertised and touted in their own presentation materials Claggett's reputation as being trained by the Keenan Trial Institute in order to get attorneys to sign up for their competing Sean Claggett's Case Analysis and Voir Dire School program and to bolster Claggett's credibility.

Keenan's Kids has no adequate remedy at law to redress the conduct complained of herein and will suffer continued imminent and irreparable harm as a result unless Defendant is preliminarily and permanently restrained from his ongoing wrongful misappropriation, use and disclosure of Keenan's Kids' Trade Secret Voir Dire Techniques through Claggett's Voir Dire School, Trojan Horse, and elsewhere.

Keenan's Kids has sustained and will continue to sustain actual losses resulting from Defendant's wrongful misappropriation, use and disclosure, and is entitled to recover such actual losses, Defendant's ill-gotten profits or sales, Defendant's savings in development costs, a reasonable royalty, exemplary damages from Defendant's willful misappropriation, use, and disclosure and knowing disregard of Keenan's Kids' rights in an amount to be proved at trial.

**Defendant:** Claggett is a successful plaintiff's attorney who resides in and maintains an office in Las Vegas, Nevada. He handles cases throughout the United States.

Claggett paid for and attended courses offered by The Keenan Trial Institute ("Institute") regarding trial tactics. Eventually, he became an instructor for the Institute.  Claggett was never an employee of Plaintiff or the Institute, and did not receive any compensation from Plaintiff or the Institute for teaching courses.

13

Claggett no longer teaches courses offered by the Institute. Apparently, although Claggett achieved significant recoveries in numerous cases, Claggett's relationship ended with the Institute because Don Keenan, Plaintiff's principal, disagreed with the manner in which Claggett handled cases.  Since leaving the Institute, Claggett has continued to teach courses in trial tactics and strategies.

Plaintiff contends that it owns intellectual property which is used by the Institute. Plaintiff asserts claims for misappropriation of trade secrets arising out of a course that took place in September 2014 regarding voir dire techniques which Claggett attended. Plaintiff claims that techniques taught at the course were trade secrets, and that Claggett misappropriated the purported secret techniques by discussing them in courses he taught about jury selection.

None of the techniques discussed at the 2014 voir dire course are trade secrets or were identified as such. Of course, it was intended that the attorneys who attended and paid for the course use the techniques at trial. There was also never any prohibition precluding the use and disclosure of the techniques; the techniques have been discussed in public forums on numerous occasions; and the techniques can be ascertained by observing jury selection or reviewing transcripts of jury selection where the techniques have been employed.

At the course, Claggett signed a "Confidentiality Agreement". The agreement, however, does not identify any purported trade secrets and does not preclude the use and disclosure of the techniques discussed during the course. Rather, the agreement simply states, in relevant part, as follows:

> THIS AGREEMENT governs the disclosure of information between the undersigned guest at this event . . . and the Keenan's Kids Foundation as the host for this event, "Keenan Ball College Court 4."

> "Confidential Information" shall mean any and all technical and non-technical information related to this seminar provided by either party to the other, including but not limited to trade secrets, copyrighted information, proprietary information – including ideas, techniques, . . . inventions, know-how, processes . . . and information the disclosing party provides regarding third parties . . . .

> This confidentiality regards all formats and mediums, written or oral, and direct or indirect pieces of information. In consideration of this confidentiality, the undersigned agrees to the following undertaking:

> 1.    No videotaping of any portion of the seminar.

> 2.    No audio recording of any portion of the seminar.

> 3.    No photographs taken during the seminar.

> 4.    Lastly, by signing this agreement, I state that I do not represent any insurance companies, or self-insured defendants.

> Each party represents and warrants to the other party that it has the requisite corporate authority to enter into and perform this Agreement, and its execution and performance under this Agreement, including its disclosure of Confidential Information to the Recipient,

will not result in a breach of any obligation to any third party or infringe
or otherwise violate any third party's rights.

Plaintiff does not allege that Claggett breached any of the 4 undertakings (e.g.,
videotaping) in the agreement, and dropped claims that Claggett breached the
agreement.

Put simply, no trade secrets were disclosed in the 2014 voir dire course; the
voir dire techniques discussed at the 2014 course are easily ascertainable, commonly
known and available to the public; Plaintiff did not take reasonable steps to protect
any techniques it now claims are secrets; and Claggett has never misappropriated
any "trade secret" purportedly owned by Plaintiff.

**(c) The legal issues to be tried are as follows:**

Plaintiff:

(1)   Whether Keenan's Kids Foundation has trade secrets under 18
U.S.C. § 1836, *et seq.* and O.C.G.A. § 10-1-760, *et seq.*;

(2)   Whether Claggett's activities constitute misappropriation of trade
secrets in violation of 18 U.S.C. §1836, *et seq.* and O.C.G.A. § 10-1-
760, *et seq.*;

(3)   Whether, in the event of liability, Keenan's Kids Foundation can
show irreparable harm and is entitled to permanent injunctive relief;
and

(4)   Whether, in the event of liability, Keenan's Kids Foundation can
show damage caused by Claggett and is entitled to an award of general
actual damages; disgorgement of Claggett's profits; or in lieu of

damages measured by other methods, a reasonable royalty; special damages, including attorney's fees, including pursuant to 18 U.S.C. § 1836(b)(3)(D) and O.C.G.A. § 10-1-761; exemplary damages as set forth in 18 U.S.C. § 1836(b)(3)(C) and O.C.G.A. § 10-1-763(b); and legal costs, interest and fees.

Defendant: Claggett filed a Motion to Dismiss wherein he requests that the Court dismiss all of Plaintiff's claims. It is therefore Claggett's position that there are no issues to be tried but includes the below issues if Plaintiff's claims are not dismissed.

(1) Whether Claggett violated the Defend Trade Secrets Act 18 U.S.C. § 1836, et seq and Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 et seq.?

(2) Whether the voir dire techniques are trade secrets?

(3) Whether Claggett acquired the voir dire techniques under circumstances giving rise to a confidentiality duty or via improper means?

(4) Whether the voir dire techniques are publicly available?

(5) Whether the voir dire techniques are commonly known?

(6) Whether the voir dire techniques are reasonably ascertainable?

(7) Whether Plaintiff used reasonable measures to protect the techniques it now claims are trade secrets?

(8) Whether Plaintiff mitigated its purported damages?

(9) Whether Plaintiff is entitled to any damages or other relief?

(10) Whether the attorney's fees Plaintiff seeks to recover are reasonable and necessary?

**(d)  The cases listed below (include both style and action number) are:**

(1)  Pending Related Cases: None.

(2)  Previously Adjudicated Related Cases: None.

**2.     This case is complex because it possesses one or more of the features listed below (please check)**

The parties do not believe this is a complex case. However, as discussed below, Defendant contends that the 8 months discovery period is appropriate; whereas, as discussed below, in Section 10, Plaintiff contends that the standard 4-month discovery track is appropriate.

**3.     Counsel:**

The following individually-named attorneys are hereby designated as lead counsel for the parties:

Plaintiff Keenan's Kids Foundation:   John M. Bowler
                                      Troutman Sanders LLP
                                      600 Peachtree Street, NE,
                                      Suite 3000
                                      Atlanta, Georgia 30308-2216

Defendant Sean Claggett:              Joseph C. Sharp
                                      Polsinelli PC
                                      1201 West Peachtree Street, NW
                                      Suite 1100
                                      Atlanta, Georgia 30309

**4.     Jurisdiction:**

Is there any question regarding this Court's jurisdiction? No.

**5.     Parties to This Action:**

The following persons are necessary parties who have not been joined:

There are no known unjoined necessary parties at this time.

The following persons are improperly joined as parties:

At this time, the parties do not contend that there are improperly joined parties, but they expressly reserve their rights to raise this issue at a later time.

The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:

At this time, the parties state that the names properly appear in the caption of this case.  The parties will notify the Court immediately if that should change.

The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.

**6.     Amendments to the Pleadings:**

Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed. R. Civ. P. 15.  Further instructions regarding amendments are contained in LR 15.

List separately any amendments to the pleadings that the parties anticipate will be necessary:

On June 10, 2020, Keenan's Kids Foundation filed its First Amended

Complaint [Doc. 11], to which Claggett has filed a Motion to Dismiss [Doc. 13].

Keenan's Kids Foundation shall file a response to the motion in due course.

The parties expressly reserve their rights to seek amendment in compliance

with the Federal Rules of Civil Procedure and the Local Rules of the Court.

Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.

**7.     Filing Times for Motions:**

All motions should be filed as soon as possible.  The local rules set specific filing limits for some motions.  These times are restated below.

All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later.  Local Rule 7.1A(2).

(a)     *Motions to Compel:*  before the close of discovery or within the extension period allowed in some instances.  Local Rule 37.1.

(b)     *Summary Judgment Motions*:  within thirty days after the close of discovery, unless otherwise permitted by court order.  Local Rule 56.1.

(c)    *Other Limited Motions*:  Refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

(d)    *Motions Objection to Expert Testimony*:  Daubert motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted.  Refer to Local Rule 7.2F.

## 8.    Initial Disclosures:

The parties are required to serve initial disclosures in accordance with Fed. R. Civ. P. 26.  If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection.  NOTE:  Your initial disclosures should include electronically stored information.  Refer to Fed. R. Civ. P. 26(a)(1)(B).

The parties agree that initial disclosures are required in this case.

## 9.    Request for Scheduling Conference

Does any party request a scheduling conference with the Court?  If so, please state the issues which could be addressed and the position of each party.

Neither party requests a scheduling conference with the Court at this time.

## 10.    Discovery Period:

The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.

Cases in this Court are assigned to one of the following three discovery tracks: (a) zero month discovery period, (b) four months discovery period, and (c) eight months discovery period.  A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F.  The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.

Please state below the subjects on which discovery may be needed:

Keenan's Kids Foundation expects that it will need to obtain the following discovery:

Deposition of Sean Claggett, responses to requests for production of documents, responses to interrogatories, responses to requests for admissions, subpoena production of documents by non-parties, depositions of non-parties, expert discovery, expert discovery depositions.

Sean Claggett expects that he will need to obtain the following discovery:

Trade secrets owned by Plaintiff, including the development of any such intellectual property and all sources used in such development; public disclosure of the purported trade secrets at issue; public availability of the purported trade secrets; all measures used by Plaintiff to protect the purported trade secrets; agreements, including confidentiality agreements, related to the purported trade secrets; agreements whereby Plaintiff obtained ownership of trade secrets or the right to use trade secrets; the techniques and strategies discussed at the 2014 voir dire course; the identity of all individuals who attended or taught at the 2014 voir dire course; all agreements related to the 2014 voir dire course; agreements, including licenses, whereby Plaintiff

agreed to allow others to use anything it contends is a trade secret; communications between the parties and/or others related to the purported trade secrets; agreements between the parties; agreements between Plaintiff and the Keenan Trial Institute related to the use of intellectual property; the circumstances surrounding the end of Defendant's relationship with the Keenan Trial Institute; dealings between Defendant and Don Keenan, the Keenan Trial Institute, and/or Plaintiff; Plaintiff's alleged charitable purpose and related acts; damages and other relief sought by Plaintiff.

If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:

Plaintiff:  Plaintiff contends that the "4 months" discovery track is the appropriate discovery track for this matter.  Defendant admits that he does not think that the case is complex. Further, the Court's default discovery track rules already contemplate out-of-state discovery and each party taking the maximum amount of discovery allowed under the Federal Rules of Procedure and Local Rules.  Defendant has not said that he needs discovery exceeding the amount set out in those rules.

Defendant:  Because there are numerous potential witnesses and numerous out-of-state witnesses, Defendant contends that the 8 months discovery period is the appropriate discovery track for  this matter.

**11.  Discovery Limitation and Discovery of Electronically Stored Information:**

    (a)    What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?

The parties agree to abide by the discovery limitations set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court.  Aside from any limitation created by an agreed upon protective order to be entered in this case, the parties do not believe any other discovery limitations are required.

    (b)    Is any party seeking discovery of electronically stored information?

        Yes.

If "yes,"

    (1)    The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:

The parties will communicate regarding any issues in connection with discovery of electronic information and will make a good faith effort to resolve those issues if any arise.

    (2)    The parties have discussed the format for the production of electronically stored information ("ESI") (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion of exclusion and use of metadata, but have not yet agreed as to the format(s) for production for ESI.

In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.

**12.    Other Orders:**

What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?

At this time, the parties plan to request that the Court enter an agreed upon Protective Order and Confidentiality Order in this case (to be submitted) pursuant to Rule 26(c).

The parties also anticipate that an order setting a pretrial conference and trial dates may become necessary should this case not be resolved prior to or after the filing of dispositive motions.

**13.    Settlement Potential:**

(a)    Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on June 12, 2020 and that they participated in settlement discussions.  Other persons who participated in the settlement discussions are listed according to party.

For Keenan's Kids Foundation, Inc.:  Lead Counsel (signature):

_____/s/ John M. Bowler_____
John M. Bowler
Georgia Bar No. 071770

Troutman Sanders LLP
600 Peachtree Street, NE, Suite 3000

25

Atlanta, Georgia  30308-2216

In addition to John Bowler, Lindsay Henner attended on behalf of Keenan's Kids Foundation

For Sean Claggett:  Lead counsel (signature):


_____/s/ Joseph C. Sharp_____
Joseph C. Sharp
Georgia Bar No. 637965

Polsinelli PC
1201 West Peachtree Street, NW, Suite 1100
Atlanta, Georgia 30309

(b)     All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:

A possibility of settlement after discovery.

(c)     Counsel do not intend to hold additional settlement conferences among themselves prior to the close of discovery.

(d)     The following specific problems have created a hindrance to settlement of this case:

None at this time.

**14.    Trial by Magistrate Judge:**

Note:  Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.

The parties do not consent to having this case tried before a magistrate judge

of this Court.

TROUTMAN SANDERS LLP                POLSINELLI PC


By: /s/ John M. Bowler              By: /s/ Joseph C. Sharp
John M. Bowler                        Joseph C. Sharp
Georgia Bar No. 071770                Georgia Bar No. 637965
john.bowler@troutmansanders.com       jsharp@polsinelli.com
Michael D. Hobbs, Jr.                 POLSINELLI PC
Georgia Bar No. 358160                1201 West Peachtree Street, NW,
michael.hobbs@troutmansanders.com     Suite 1100
Lindsay Mitchell Henner               Atlanta, GA  30309
Georgia Bar No. 272310                (404) 253-6000 (Tel.)
Lindsay.henner@troutmansanders.com    (404) 253-6060 (Fax)
TROUTMAN SANDERS LLP                  Counsel for Defendant Sean Claggett
600 Peachtree Street, NE, Suite 3000
Atlanta, GA  30308-2216
(404) 885-3000 (Tel.)
(404) 962-6513 (Fax)
Counsel for Plaintiff Keenan's Kids
Foundation, Inc.

****************

## SCHEDULING ORDER

Upon review of the information contained in the Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified:

IT IS SO ORDERED, this _____day of _____, 2020.


_____
United States District Judge

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the

Clerk of Court using the CM/ECF system and which will automatically send email

notification of such filing to all counsel of record.

This 26th day of June, 2020.

*/s/ John M. Bowler*