## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **KEENAN'S KIDS FOUNDATION, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action File No.:** |
| ) | |
| **-vs.-** ) | **1:20-cv-01702-WMR** |
| ) | |
| **SEAN CLAGGETT,** ) | |
| ) | |
| **Defendant.** ) | |

### PLAINTIFF'S INITIAL DISCLOSURES

Plaintiff Keenan's Kids Foundation, Inc. ("Keenan's Kids Foundation" or "Keenan's Kids"), pursuant to Federal Rule of Civil Procedure 26(a)(1) and LR 26.1, NDGa., makes the following Initial Disclosures. Keenan's Kids Foundation's Initial Disclosures are based upon information and documents reasonably available to and known to it at this time. Keenan's Kids Foundation reserves its right to supplement or amend its Initial Disclosures pursuant to Fed. R. Civ. P. 26(e), if necessary, as additional information and documents are discovered.

## I.    Keenan's Kids Foundation's Disclosures as Plaintiff

(1)    State precisely the classification of the cause of action being filed, a brief factual outline of the case including plaintiff's contentions as to what defendant did or failed to do, and a succinct statement of the legal issues in the case.

This case involves claims brought by Keenan's Kids Foundation against Sean Claggett ("Claggett") for misappropriation of trade secrets under the federal Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836, *et seq.* ("DTSA") and the Georgia Trade Secrets Act of 1990 (O.C.G.A. § 10-1-760 *et seq.*) ("GTSA").

Keenan's Kids Foundation, a Georgia non-profit corporation, was established in 1993 by Don C. Keenan, a renowned, award winning Atlanta-based trial lawyer, for the purposes of helping at-risk children via charity events, raising community awareness, and providing child advocacy services. Keenan's Kids Foundation is the owner of intellectual property exclusively used by the Keenan Trial Institute, which offers Mr. Keenan's educational curriculum instructing lawyers on how to win their trials, protect community safety, and deter wrongdoers by holding them accountable, through teaching confidential and proprietary techniques. The unique and proprietary curriculum owned by Keenan's Kids Foundation was created through Mr. Keenan's over forty-years of experience as lead counsel in thousands or trials.

Because attorneys use these proprietary techniques to win trials, including significant financial awards, and to deter wrongdoers for the good of the community, Keenan's Kids Foundation's customers recognize the intrinsic value of Keenan's Kids' techniques. Because Keenan's Kids Foundation is the owner of decades spent in creating and refining the unique, proprietary and confidential techniques that Keenan Trial Institute customers value, those techniques are also valuable to Keenan's Kids. Conversely, if the confidential information or details related to Keenan's Kids Foundation's proprietary techniques became known to Keenan Trial Institute competitors, those competitors would use that information to develop and market competing educational courses to offer to the Keenan Trial Institute customers, damaging, if not destroying the value of Keenan's Kids and the Keenan Trial Institute.

A significant portion of the value Keenan's Kids Foundation derives from its proprietary techniques is based on its curriculum of trial techniques not being known to Keenan Trial Institute competitors. A significant portion of the value Keenan's Kids derives from its proprietary techniques is based on its curriculum of trial techniques also not being known to defense counsel who have not taken the courses of the Keenan Trial Institute; and, if such

proprietary techniques were known to defense counsel, the unauthorized access would give them a roadmap of what students and instructors of the Keenan Trial Institute are trying to accomplish in their jury selection at trial.

Specifically, and critical to the Keenan Trial Institute's success, are the confidential and proprietary trade secret voir dire techniques owned by Keenan's Kids' ("Trade Secret Voir Dire Techniques").  Keenan's Kids is the owner of decades' worth of significant investment of time and resources in the development of its confidential and proprietary Trade Secret Voir Dire Techniques, relying on the extensive, unique personal experience and research of Mr. Keenan.

To preserve the value of its confidential, proprietary, and trade secret information, including its Trade Secret Voir Dire Techniques, Keenan's Kids has taken a number of steps to keep the information secret. Among these steps, every attendee of a Keenan Trial Institute course where Keenan's Kids' confidential and proprietary information will be shared and was shared, including the Keenan's Kids Voir Dire Course, is required to sign a "Confidentiality Agreement" that warrants the attendee will not disclose the confidential and proprietary information.  The Confidentiality Agreement explicitly identifies as confidential and applies to Keenan's Kids trade secrets,

copyrighted information, and other proprietary information "including ideas, techniques…inventions, know-how, processes…and information" related to the services and information provided at the specific Keenan Trial Institute event.  Attendees are further prohibited from videotaping, audio recordings, and photographs of any seminar.  Further, any materials provided to students by the Keenan Trial Institute must remain with the institute when coursework is completed, and students can leave only with their own notes for personal use only.

Keenan's Kids course instructors also often orally identify and emphasize the Confidentiality Agreement to participants, as well as the requirement to leave course materials behind, further informing participants of, and reinforcing, the confidential nature of course material.  In addition, the Keenan's Kids Voir Dire Course had its own separate LISTSERV, and blogs to which access was limited only to individuals who first took the Keenan's Kids Voir Dire Course and for whom login credentials were created and issued, in order to further protect the confidentiality of any discussions regarding the Trade Secret Voir Dire Techniques.

Sean Claggett is an attorney who participated as a student in multiple Keenan Trial institute seminars and taught for Keenan Kids Foundation.

Having resigned from the Keenan Trial Institute in 2018, Claggett now teaches voir dire-related courses for a competitor of Keenan Trial Institute, including *Sean Claggett's Case Analysis and Voir Dire School* ("Claggett's Voir Dire School") which—without permission from Keenan's Kids Foundation—misappropriates, utilizes, and discloses substantial portions of Keenan's Kids' confidential and trade secret materials subject to confidentiality obligations imposed on Claggett as a participant and instructor. As early as May 2014, Claggett was aware of Keenan's Kids' unique, proprietary and confidential curriculum exclusively taught through the Keenan Trial Institute and had begun attending them.

On September 23-24, 2014, Claggett attended a Keenan's Kids Voir Dire Course where Claggett was taught the proprietary and confidential Trade Secret Voir Dire Techniques, including those specified and detailed above. While attending a Keenan's Kids Voir Dire Course in Atlanta, Georgia, on September 23-24, 2014, as a prerequisite for attendance, Claggett executed a Confidentiality Agreement (the "Agreement") with Keenan's Kids to protect the trade-secret and confidential contents of the seminar. As is true for all participants, the Confidentiality Agreement that Claggett executed explicitly identifies as confidential and applies to Keenan's Kids' trade secrets,

copyrighted information, and other proprietary information "including ideas, techniques…inventions, know-how, processes…and information" related to the services and information provided at the Keenan's Kids Voir Dire Course, and further prohibited him from videotaping, taking audio recordings, and taking photographs of the seminar.

By signing the Agreement titled "Confidentiality Agreement", which further defined "Confidential Information" as trade secret and proprietary information including things like "techniques…know-how, [and] processes", Claggett was informed of, became aware of, understood, and accepted the confidential nature of the information to be conveyed in the Keenan's Kids Voir Dire Course. By signing the Agreement prohibiting recordation of the seminar and agreeing to leave behind distributed coursework, Claggett (like all participants) was informed of, became aware of, understood, and accepted that the Keenan's Kids Voir Dire Course and Trade Secret Voir Dire Techniques were confidential and not for redistribution to others.

In 2015, Claggett became an instructor for the Keenan Trial Institute, teaching courses including Keenan's Kids' "Trial" and "Focus Group" seminars containing the asserted trade secrets and confidential information. The confidentiality obligation of Claggett for the Keenan's Kids Voir Dire

Course materials, content, and information extended further and applied to and was reinforced in Claggett's role as an instructor of the Keenan's Kids Voir Dire Course.  In addition to, but separate from, the obligations created by the Agreement, all Keenan Trial Institute instructors, including Claggett, are bound by a confidentiality obligation not to disclose information such as the Trade Secret Voir Dire Techniques, and they in turn further reinforce the confidentiality obligation to their students.

Keenan's Kids communicated to Claggett as an instructor that the Trade Secret Voir Dire Techniques, among other things, were confidential trade secrets of Keenan's Kids, and Claggett acted in accordance with that fact.  As an instructor, for example, Claggett was responsible for overseeing and ensuring students' signing of confidentiality agreements prior to teaching the Trade Secret Voir Dire Techniques and for instructing students not to take course materials with them.  Claggett also made multiple trips to the "Beach" (in Santa Rosa Beach, Florida) for educational purposes and workshops for two-and-a-half days work on "Edge" materials and whereat the asserted trade secrets and confidential information were shared with and entrusted to Claggett. Claggett specifically participated in discussions at the beach regarding contents of Keenan's Kids blogs, wherein it was explained that the

blogs purposely do not include the information comprising the Trade Secret Voir Dire Techniques.

Claggett himself participated in a vote to restrict blog access so that attendees of programs such as the Keenan's Kids Voir Dire Course would not be able to reveal, inadvertently or otherwise, material comprising the Trade Secret Voir Dire Techniques, further evidencing his understanding of the confidentiality of the same. In addition, Claggett himself oversaw as manager the Nevada LISTSERV, access to which was limited only to individuals who first took the Keenan's Kids Voir Dire Course, all of whom were informed of, aware of, understood, and accepted the confidential nature of the information to be conveyed in the Keenan's Kids Voir Dire Course and on the LISTSERV at least by virtue of having signed a Confidentiality Agreement and having received password-protected, restricted access to the LISTSERV where those materials could be discussed.

Further showing how involved Claggett was in the Keenan Trial Institute and its asserted trade secrets and confidential information, and thus his awareness of their confidential status, Claggett was one of only four faculty members chosen to go on the educational cruise in May 2016 and spend a week immersed in the "Edge" materials. Also in 2016, by way of

example, Claggett participated in discussions as an employee of Keenan's Kids wherein the line between trade secret confidential information and information that may be shared publicly was explicitly identified. At the time, Keenan's Kids intended to offer free seminars around the country in part as a marketing tool for its paid seminars and reiterated in discussions about the contents of those free seminars, that Keenan's Kids trade secret strategies should not be included outside of the confines of the protected courses like the Keenan's Kids Voir Dire Course.

In September 2018, Claggett resigned as an instructor of the Keenan Trial Institute. At the time of Claggett's resignation in 2018, he was again put on notice by David Hoey, Dean of the Keenan Trial Institute and Keenan Ball Trial College, not to breach Claggett's confidentiality obligations, and further that Claggett was not authorized to teach anything learned as a student or instructor of the college courses at Keenan Trial Institute, or the seminars, or as a consult referring attorney, or as a co-dean of the damages course Claggett withdrew from the LISTSERV and the Keenan Ball Trial College because of criticism he received that he went outside the boundaries of permissible conduct. Keenan's Kids also tightly controls the distribution of any recordings of Keenan Trial Institute seminars and does not share the recordings without

an agreement to maintain confidentiality.

The entire business model under which the Keenan's Kids Voir Dire Course operates depends upon the confidentiality of the Trade Secret Voir Dire Techniques, insofar as, absent such restrictions and understanding of confidentiality, competitor course offerings from Keenan's Kids students would spring up every day offering to teach the same content as Keenan's Kids Voir Dire Course.  To date, Claggett is the only such competitor to purport to do so, indicating thousands upon thousands of other participants' consensus that the Trade Secret Voir Dire Techniques are not theirs to share.

Aside from Claggett, Keenan's Kids has been approached by instructors who – again, fully understanding the confidentiality of Keenan's Kids' trade secret strategies – seek Keenan's Kids' express permission to teach certain content.  In response to such requests, in a further effort to protect the confidentiality of its trade secrets, Keenan's Kids requests an outline of the material to be taught and either approves or denies the outline.  Keenan's Kids denies or revises outlines that indicate protected material would be disclosed.

As an instructor for Keenan's Kids, intimately involved in the business of offering courses like the Keenan's Kids Voir Dire Course containing Trade

Secret Voir Dire Techniques, Claggett was regularly exposed to Keenan's Kids' business model, confidentiality policy, and confidentiality expectations, and well understood his obligation to maintain that confidentiality.   In addition to jury selection, Claggett was privy to other trade secrets and confidential information of the Keenan Trial Institute, which further contributed to his understanding of the confidentiality of Keenan's Kids' proprietary strategies, including unique theories related to the use and analysis of focus groups that were taught to him and which he taught to others at the Keenan Trial Institute and at consult referrals.

Recently, Keenan's Kids Foundation learned that Claggett was offering Claggett's Voir Dire School through Trojan Horse wherein Claggett was teaching Keenan's Kids' confidential and proprietary Trade Secret Voir Dire Techniques communicated to Claggett under the auspices of confidentiality, including during the Keenan's Kids Voir Dire Course that Claggett attended in September 2014, and subsequently taught from 2015 to 2018. Claggett's Voir Dire School taught by Claggett and offered through Trojan Horse, specifically incorporates, embodies, and discloses the Keenan's Kids' proprietary and confidential Trade Secret Voir Dire Techniques detailed above. Claggett's Voir Dire School taught by Claggett and offered through

Trojan Horse therefore uses substantial elements of the unique, proprietary confidential curriculum derived from Keenan's Kids' Trade Secret Voir Dire Techniques. Claggett does not have Keenan's Kids' permission to wrongfully misappropriate, use and disclose at Claggett's Voir Dire School the Trade Secret Voir Dire Techniques that Claggett acquired at the Keenan's Kids Voir Dire Course in September 2014 and subsequently as an instructor at the Keenan Trial Institute.

Claggett knows and has known since prior to his resignation from Keenan's Kids Foundation, that he has a duty to maintain the secrecy of the information he acquired from Keenan's Kids, including specifically the Keenan's Kids Voir Dire Course and Trade Secret Voir Dire Techniques. Claggett and Trojan Horse have knowledge and understand the value of the Trade Secret Voir Dire Techniques as evidenced at least in part by the fact that Claggett, Trojan Horse and its owner Dan Ambrose have advertised and touted in their own presentation materials Claggett's reputation as being trained by the Keenan Trial Institute in order to get attorneys to sign up for their competing Sean Claggett's Case Analysis and Voir Dire School program and to bolster Claggett's credibility.

Keenan's Kids has no adequate remedy at law to redress the conduct

complained of herein and will suffer continued imminent and irreparable harm as a result unless Defendant is preliminarily and permanently restrained from his ongoing wrongful misappropriation, use and disclosure of Keenan's Kids' Trade Secret Voir Dire Techniques through Claggett's Voir Dire School, Trojan Horse, and elsewhere.

Keenan's Kids has sustained and will continue to sustain actual losses resulting from Defendant's wrongful misappropriation, use and disclosure, and is entitled to recover such actual losses, Defendant's ill-gotten profits or sales, Defendant's savings in development costs, a reasonable royalty, exemplary damages from Defendant's willful misappropriation, use, and disclosure and knowing disregard of Keenan's Kids' rights in an amount to be proved at trial.

(2)    Describe in detail all statutes, codes, regulations, legal principles, standard and customs or usages, and illustrative case law which plaintiff contends are applicable to this action.

Based on Keenan's Kids Foundation's current understanding of the material facts in this case, the following statutes, codes, regulations, legal principles, standards, customs and usage, and illustrative case law are applicable to this action:

(a)    Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq*.

(b)     Georgia Trade Secrets Act of 1990, O.C.G.A. § 10-1-760, *et seq*.

(c)     O.C.G.A. § 10-1-763(a) (authorizing both legal and injunctive relief against misappropriation)

(d)     O.C.G.A. § 10-1-762(d) ("In no event shall a contract be required in order to maintain an action or to obtain injunctive relief for misappropriation of a trade secret")

(d)     O.C.G.A. § 10-1-762 (a) (authorizing injunctive relief for "actual or threatened" misappropriation of trade secrets).

(c)     Illustrative case law includes, but is not limited to:

(i)     *CMAX/Cleveland, Inc. v. UCR, Inc.*, 804 F. Supp. 337, 357-58 (M.D. Ga. 1992) (after a bench trial, awarding a permanent injunction against misappropriation of plaintiff's trade secrets, damages caused by defendant's misappropriation, punitive damages, and other relief);

(ii)    *Stone v. Williams Gen. Corp.*, 266 Ga. App. 608, 597 S.E.2d 456, 459-60 (2004) (affirming jury verdict of trade secret misappropriation; rejecting defendant's contention that they were entitled to judgment because plaintiff did not have a written policy regarding trade secrets; plaintiff set forth many examples of steps, other than its confidentiality agreement, that it had taken to maintain the confidentiality of

its trade secrets);

(iii)    *Equifax Svcs v. Examination Mgmt. Svs.*, 216 Ga. App. 35, 453 S.E.2d 488 (1994) (finding that an action for misappropriation of trade secrets is not dependent on the existence of a written contract);

(iv)    *Essex Group, Inc. v. Southwire Co.*, 269 Ga. 553, 558, 501 S.E.2d 501 (1998) (logistical process was a trade secret and affirming permanent based on potential disclosure of trade secrets);

(v)    *Insight Tech., Inc. v. FreightCheck, LLC*, 280 Ga. App. 19, 633 S.E.2d 373 (2006) (reversing trial court's grant of summary judgment dismissal of plaintiff's trade secret claim; whether a particular type of information constitutes a trade secret is a question of fact; there was evidence from which a jury could find plaintiff's owned a trade secret; and there was evidence from which a jury could find that defendant disclosed the trade secret in violation of the act);

(vi)    *Coleman v. Retina Consultants, P.C.*, 286 Ga. 317, 687 S.E.2d 457 (2009) (affirming trial court's injunction order on the basis that even without an unenforceable express covenant, defendant could be prohibited from misappropriation of trade secrets and confidential information); and

(vii)   *Thomas v. Best Mfg. Corp.*, 234 Ga. 787, 789, 218 S.E.2d 68 (1975) (affirming trial court's injunction order because notwithstanding the unenforceability of the express written confidentiality agreement,  there was evidence to find that plaintiff owned trade secrets that were improperly used by defendant and the trial court was authorized to restrain the misappropriation).

(3)   Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects to the information.  (Attach witness list to Initial Disclosures as Attachment A.)

See Attachment A.

(4)   Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.  For all experts described in Fed. R. Civ. P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule.  (Attach expert witness list and written reports to Initial Disclosures as Attachment B.)

See Attachment B.

(5)   Provide a copy of, or a description by category and location of, all documents, data compilations or other electronically stored information, and tangible things in your possession, custody or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information.  (Attach document list and descriptions to Initial Disclosures as Attachment C.)

See Attachment C.

(6)    In the space provided below, provide a computation of any category of damages claimed by you.  In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying as under Fed. R. Civ. P. 34.  (Attach any copies or descriptions to Initial Disclosures as Attachment D.)

See Attachment D.

(7)    Attach for inspection and copying as under Fed. R. Civ. P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.  (Attach copy of insurance agreement to Initial Disclosures as Attachment E.).

Keenan's Kids Foundation is not aware of any applicable insurance policy or insurance agreement.

(8)    Disclose the full name, address, and telephone number of all persons or legal entities who have a subrogation interest in the cause of action set forth in plaintiff's cause of actions and state the basis and extent of such interest.

Keenan's Kids Foundation is not aware of any such persons or legal entities who have a subrogation interest.

Respectfully submitted this 26th day of June, 2020.

/s/ John M. Bowler
John M. Bowler
Georgia Bar No. 071770
Michael D. Hobbs Jr.
Georgia Bar No. 358160
Lindsay Mitchell Henner
Georgia Bar No. 272310
Troutman Sanders LLP
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308-2216
Tel: (404) 885-3000 / Fax: (404) 885-3995
john.bowler@troutman.com
michael.hobbs@troutman.com
lindsay.henner@troutman.com

**ATTACHMENT A**
**(Individuals Likely to Have Discoverable Information)**

| Individuals likely to have discoverable information | Address | Subjects of information |
|---|---|---|
| Don Keenan<br>Founder<br>Keenan's Kids Foundation | c/o Attorneys for Plaintiff | Plaintiff's business; Plaintiff's trade secrets; Plaintiff's confidentiality measures; Plaintiff's relationship with Defendant; Defendant's confidentiality obligations and agreement with Plaintiff; Defendant's misappropriation of Plaintiff's trade secrets; Plaintiff's damages. |
| William Entrekin<br>Director of Operations<br>Keenan's Kids Foundation | c/o Attorneys for Plaintiff | Plaintiff's relationship with Defendant; Defendant's confidentiality obligations and agreement with Plaintiff. |
| David Hoey<br>Dean<br>Keenan Trial Institute | c/o Attorneys for Plaintiff | Plaintiff's relationship with Defendant; Defendant's confidentiality obligations and agreement with Plaintiff. |
| Mindy Bish<br>Fellow<br>The Keenan Law Firm | c/o Attorneys for Plaintiff | Plaintiff's business; Plaintiff's trade secrets; Plaintiff's confidentiality measures; Plaintiff's relationship with Defendant; Defendant's teaching responsibilities for Plaintiff; Defendant's confidentiality obligations and agreement with Plaintiff; Defendant's misappropriation of Plaintiff's trade secrets. |

Keenan's Kids Foundation reserves the right to seek discovery from and rely on other individuals that it subsequently learns are likely to have discoverable or admissible information that it may use in this lawsuit, including those witnesses identified by Defendant.

## ATTACHMENT B
## (PLAINTIFF'S EXPERT WITNESS LIST)

Although Keenan's Kids Foundation may retain one or more expert witnesses to be used at trial, it has not yet retained any such expert witnesses. Keenan's Kids Foundation will supplement its response if and when it designates an expert witness who may be used at trial.

**ATTACHMENT C**
**(Categories of Documents, Data Compilations, and Tangible Things)**

| Description of categories of documents, data compilations, and things that may be used to support claims and defenses | Location |
| --- | --- |
| Non-privileged documents related to Plaintiff's business; Plaintiff's trade secrets; Plaintiff's confidentiality measures; Plaintiff's relationship with Defendant; Defendant's misappropriation of Plaintiff's trade secrets; and Plaintiff's damages. | Keenan's Kids Foundation, Inc.'s Offices |

Keenan's Kids Foundation reserves the right to assert a claim of privilege or immunity and withhold from production any documents, whether or not included in the above description, that are protected from discovery by the attorney-client privilege, work product immunity, or any other privilege or immunity.  Keenan's Kids Foundation further reserves the right to disclose additional documents that it may use to support its claims or defenses based upon information learned during the course of this lawsuit.

Copies of the non-privileged documents identified above are located at Keenan's Kids Foundation's offices and will be made available for inspection at a time agreed upon by counsel and pursuant to entry of an appropriate protective order pursuant to Fed. R. Civ. P. 26(c).

**ATTACHMENT D**
**(Categories and Descriptions of Damages)**

Keenan's Kids Foundation, Inc. is seeking injunctive relief pursuant, but not limited, to 18 U.S.C. § 1836(b)(3)(A) and O.C.G.A § 10-1-762, enjoining Claggett, his agents, etc., from misappropriating Keenan's Kids Foundation's trade secrets and confidential information; monetary damages in the form of general actual damages in an amount that is yet to be ascertained; disgorgement of the profits of Claggett in an amount to be determined from discovery; or in the alternative in lieu of damages measured by other means, a reasonable royalty for Claggett's misappropriation; for special damages, including attorney's fees due to Claggett's willful or malicious conduct in an amount according to proof, including pursuant to 18 U.S.C. § 1836(b)(3)(D) and O.C.G.A. § 10-1-761; for exemplary damages, under any appropriate alternative, as set forth in 18 U.S.C. § 1836(b)(3)(D) and O.C.G.A. § 10-1-763(b); and for legal costs, interest, and fees incurred by Keenan's Kids Foundation.

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing has been prepared in Times New

Roman 14-point font and is in compliance with Local Rule 5.1

By: <u>/s/ *John M. Bowler*   </u>
       John M. Bowler

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **KEENAN'S KIDS FOUNDATION, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action File No.:** |
| | ) | |
| -vs.- | ) | **1:20-cv-01702-WMR** |
| | ) | |
| **SEAN CLAGGETT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I have this day served the foregoing Plaintiff's Initial Disclosures

upon all parties by CM/ECF filing on counsel of record as follows:

> Joseph C. Sharp
> Georgia Bar No. 637965
> jsharp@polsinelli.com
> POLSINELLI PC
> 1201 West Peachtree Street, NW, Suite 1100
> Atlanta, GA  30309
> (404) 253-6000 (Tel.)
> (404) 253-6060 (Fax)

This 26th day of June, 2020.

/s/ *John M. Bowler*
John M. Bowler
