# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **KEENAN'S KIDS FOUNDATION, INC.**<br><br>   Plaintiff,<br><br>v.<br><br>**SEAN CLAGGETT,**<br><br>   Defendant. | **CIVIL ACTION NO:**<br>**1:20-cv-01702-WMR** |

## DEFENDANT SEAN CLAGGETT'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS

Defendant Sean Claggett ("Mr. Claggett") hereby submits his Reply Brief in Support of his Motion to Dismiss ("Motion").

**I.   INTRODUCTION**

Plaintiff's response to Mr. Claggett's Motion suggests no valid reason that the Motion should not be granted. Although supposed trade secret claims are perhaps infrequently dismissed at the pleadings stage, this case is perfectly suited for 12(b)(6) dismissal. Try as Plaintiff might to distance its claims from the so-called "Confidentiality Agreement," its claims are necessarily (and fatally) predicated on that limited Agreement, the interpretation of which presents a question of law for the Court's determination. And other than the insufficient

1

Agreement, Plaintiff has not viably alleged any other circumstance imposing a confidentiality duty on Mr. Claggett *when he acquired the supposed trade-secret information—i.e.*, the relevant time under the GTSA and the DTSA for protections to be in place.

Likewise, given Plaintiff's dependency on the Agreement, which does not impose a non-disclosure duty as a matter of law, Plaintiff has not plausibly alleged a "trade secret," including because any post-Agreement steps Plaintiff allegedly took to protect secrecy were preemptively neutered by the fact that the Agreement allows *voir dire* seminar attendees to disseminate the information they learned immediately after leaving the seminar.

Mr. Claggett has not challenged the sufficiency of Plaintiff's "evidence," as Plaintiff contends. Rather, he's challenged the sufficiency of Plaintiff's allegations, including in light of the Agreement's terms. And those allegations fail to state a trade-secrets misappropriation claim. For these reasons, as explained below, and for reasons set forth in Mr. Claggett's initial brief, the Court should grant Mr. Claggett's Motion and dismiss the Amended Complaint with prejudice.

## II.   REPLY ARGUMENT AND CITATION TO AUTHORITY

Mr. Claggett's Motion and initial brief did not, as Plaintiff asserts, ask the Court to dismiss on the basis that it was improbable Plaintiff would be able to

prove the truth of its allegations. Rather, Mr. Claggett correctly argued that, even if Plaintiff's limited well-pleaded allegations were assumed true, the allegations that the law says are relevant fail to state a trade-secrets misappropriation claim. Plaintiff's other contrary arguments either miss the thrust of Mr. Claggett's arguments, or are simply wrong under the law, the facts, or both.

### A. Interpretation of the Agreement on which Plaintiff's claim is based is a matter of law for the Court.

Mr. Claggett recognizes that misappropriation of trade secret claims are not, as a class of cases, necessarily dependent on the existence of written contracts; that is, other circumstances may exist in a particular case that give rise to a duty to maintain confidentiality. *See generally Equifax Servs., Inc. v. Exam. Mgmt. Servs., Inc.*, 216 Ga. App. 35, 40, 453 S.E.2d 488 (1994); *see also* O.C.G.A. § 10-1-761(2)(B)(ii)(II); 18 U.S.C.A. § 1839(5)(B)(ii)(II) (broadly concerning "circumstances" that give rise to a duty). But where, as here, the plaintiff's claim is expressly based on a duty of confidentiality that allegedly arises from a written agreement that is presented to the Court, that agreement must *actually* impose the duty alleged, or is insufficient to support the dependent trade secrets claim.

As discussed in Mr. Claggett's initial brief, the Agreement underlying Plaintiff's claims imposes no duty of secrecy or confidentiality on Mr. Claggett, except for the four enumerated limited duties that Plaintiff acknowledges have not

3

been breached.[1]  Although Plaintiff now appears to argue that the Agreement is ambiguous (*see* Opp., pp. 15-16), supposedly creating fact issues concerning intent that preclude interpretation in the Rule 12(b)(6) context, the "construction of a contract is a question of law for the court." O.C.G.A. § 13-2-1.

Where a contract's relevant "language is clear and unambiguous," the "contract alone is looked to for its meaning" and the "court simply enforces" it "according to its clear terms." *Mitchell v. Cambridge Prop. Owners Ass'n, Inc.*, 276 Ga. App. 326, 327, 623 S.E.2d 511 (2005).[2]  And even if the court perceives an ambiguity in some material respect, interpretation remains a matter of law: in that case the court "must apply the rules of contract construction," including any set forth in O.C.G.A. § 13-2-2 that apply, "to resolve the ambiguity." *Id.*; *see also Kwok v. Delta Air Lines Inc.*, 994 F. Supp. 2d 1290, 1293-95 (N.D. Ga. 2014) (granting motion to dismiss after interpreting contract in defendant's favor, including by applying canons of construction, and noting that the court does not "have to accept as true the legal significance that the Plaintiff attache[d]" to her

---

[1] Mr. Claggett has not argued, as Plaintiff supposes, that the Agreement is unenforceable, much less made that contention the "lynchpin" of his dismissal arguments. (*See* Opp., p. 8).  The Agreement, rather, is a contract that simply does not impose the duties Plaintiff wishes it did.

[2] Internal citations are omitted here, and hereafter, except as otherwise noted.

4

contrary interpretation of the contract).[3]  Only if an ambiguity remains after those first two steps does contract interpretation devolve into a fact question.  *See Mitchell*, 276 Ga. App. at 327.

No relevant Agreement term even approaches ambiguity, much less an ambiguity that could only be resolved, three steps later, by the fact finder. Whatever one might say about the Agreement's broad, boilerplate definitional section that fails to actually identify any course content as trade secrets,[4] the "undertaking" to which Mr. Claggett agreed was unmistakably limited to four clear mandates (*see* Dkt No. 13-2), with which he undisputedly complied.

Although Plaintiff argues that so construing the Agreement reads the "Confidentiality" title and terms out of the contract, Plaintiff simply bargained for,

---

[3] Plaintiff's opposite contention, based on a materially modified quotation from the *BioHealth* case, should be ignored.  (*See* Opp., p. 13.)  Instead of announcing a rule that no district court may ever interpret a contract when considering a motion to dismiss, as Plaintiff asserts, the *BioHealth* court held that the district court in *that* case should not have interpreted the disputed contract on a 12(b)(6) motion because an ambiguity "render[ed] discovery into extrinsic evidence essential." *BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.*, 706 Fed. Appx. 521, 524 (11th Cir. 2017).  The same is not true here.

[4] Even Plaintiff acknowledges that it alone can identify which content is supposedly a trade secret and which (if any) is not. *See, e.g.*, Am. Compl., ¶ 72 (indicating that, even where former attendees allegedly seek permission to later "teach certain content," Plaintiff must review and revise outlines to remove supposedly "protected material"). Plaintiff has thus failed to plausibly allege that the Agreement placed Mr. Claggett (or anyone) on notice of trade-secret content.

and received, a limited measure of confidentiality as to materials, not non-disclosure as to content.  The no-videotaping, no-audio-recording, no-photography, and plaintiff's-counsel-only rules ensure that if someone wants the full Keenan's Kids experience, with Don Keenan's plaintiff-focused, evangelistic teaching style and presentation methods and formats, they need to attend the class themselves. The Agreement cannot plausibly be stretched further.

As noted in the initial brief, and as Plaintiff alleges, Mr. Claggett and other *voir dire* seminar attendees paid to learn content they could use in public jury trials.  That context alone renders implausible any contention of an additional duty of secrecy, even if the Court were to apply canons of construction to a perceived ambiguity.  *See, e.g.*, *Southland Dev. Corp. v. Battle*, 272 Ga. App. 211, 213-14, 612 S.E.2d 12 (2005) (considering, under canon of construction, trade context and usage in court's resolution of ambiguity as a matter of law); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (determining "whether a complaint states a plausible claim for relief will" be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

Indeed, if the Agreement were interpreted as Plaintiff urges, a law firm partner who attended the seminar, for example, could not share anything learned there with firm associates, even years later if and when the content has become part

and parcel of the partner's standard *voir dire* preparation, practice, and vernacular, despite the legal profession's "regime of legal training and professional responsibility" that includes apprentice-style training. *See generally Connick v. Thompson*, 563 U.S. 51, 65-66 (2011) (describing attorneys who "train on the job as they learn from more experienced attorneys" as, *inter alia*, part of the profession's training and professional responsibility "regime").

Not only did Mr. Claggett not agree to the unwritten terms Plaintiff imagines, but the Agreement, whether by its plain terms or context, is not plausibly amenable to any such construction as a matter of law.

### B. Because the Agreement does not impose the duties Plaintiff presumes, Plaintiff has failed to allege misappropriation.

A threshold construction of the Agreement is key to the misappropriation analysis for at least two reasons. First, Plaintiff's allegations concerning the Agreement and Mr. Claggett's understanding or knowledge flowing from same (*see* Dkt. No. 18 ("Opp."), pp. 5-6, listing allegations), which conflict with the Agreement, are not assumed to be true. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). And to determine whether Plaintiff's allegations conflict with the Agreement (they do), it must first be construed.

Second, ascertaining the scope of any duties imposed by the Agreement is key because it is the only alleged source of duty that applied when Mr. Claggett

7

first learned the disputed content in the *voir dire* seminar. Although Plaintiff alleged that confidentiality instructions were also verbally communicated during the seminar, those allegations do not exceed the Agreement's scope, stating merely that instructors "reinforce[e]" and "emphasize" the Agreement's obligations. *See, e.g.*, Am. Compl. ¶ 47. Plaintiff alleges no other communications or conduct between it and Mr. Claggett at the seminar that could support any implied duty.[5]

And Plaintiff's sole reliance on the Agreement as the source of a duty *when Mr. Claggett first learned* the *voir dire* content is critical because under both the GTSA and the DTSA, where there is no allegation that a supposed trade secret was improperly obtained, as here, misappropriation can be established only where a defendant disclosed trade secret information that he knew was *acquired* under circumstances giving rise to a duty to maintain its secrecy. *See* O.C.G.A. § 10-1-761(2)(B)(ii)(II); 18 U.S.C.A. § 1839(5)(B)(ii)(II).

That standard was held to have been sufficiently alleged where, unlike here, a plaintiff's misappropriation allegations were based on the defendant's disclosures

---

[5] Given the temporal aspect of the "duty" analysis discussed herein, Plaintiff's allegations concerning Mr. Claggett's later supposed status as Plaintiff's employee do not help Plaintiff establish that a confidentiality duty arose from an employment or other confidential relationship at the time Mr. Claggett acquired the *voir dire* information, months before he allegedly became an instructor.

that were contrary to a license agreement under which the defendant acquired rights to use the subject software program, and where the court had reviewed the agreement and found that its operative language, providing that defendant "may not distribute, sublicense, transfer, or otherwise make available or provide access to the Software Programs," reasonably protected the programs' secrecy. *See Protegrity Corp. v. Elavon, Inc.*, 1:18-CV-00140-ELR, 2018 WL 8949789, *3-4 (N.D. Ga. Aug. 22, 2018).

Although Plaintiff says Mr. Claggett cited "no authority" supporting why his "understanding of confidentiality cannot be informed by the parties' entire relationship," the GTSA and DTSA were relied on in Mr. Claggett's initial brief, and plainly state that the circumstances at the time knowledge was "acquired" are the relevant ones. *See* O.C.G.A. § 10-1-761(2)(B)(ii)(II); 18 U.S.C.A. § 1839(5)(B)(ii)(II); (*see also* Dkt. No. 13-1, p. 15 (also citing *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1332-34 (N.D. Ga. 2007)).[6] This rule

---

[6] *Accord Warehouse Solutions, Inc. v. Integrated Logistics, LLC*, 610 Fed. Appx. 881, 885 (S.D. Fla. 2015) (finding steps to protect confidentiality lacking as a matter of law where plaintiff did require defendant to sign non-disclosure agreement "*before*" granting defendant access to alleged trade secret) (emphasis added); *see also Am. Ctr. for Excellence in Surg. Assisting Inc. v. Comm. Coll. Dist. 502*, 315 F. Supp. 3d 1044, 1058-59 (N.D. Ill. 2018) (citing cases and holding that no reasonable juror could find secrecy or reasonable steps under similar statute

makes good sense: once alleged trade secrets are "exposed," they "cannot later be recalled." *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1254 (N.D. Cal. 1995) (citing *inter alia*, *In re Remington Arms. Co.*, 952 F.2d 1029, 1033 (8th Cir. 1991)).

Further, but relatedly, the statutes are not concerned with, as Plaintiff describes it, some vague "understanding of confidentiality." (Opp., p. 8, n.2.) The statutes are concerned with a defendant's particular understanding of "circumstances" at the time knowledge of a supposed trade secret is acquired that either give rise to a "duty" to maintain confidentiality, or do not. Again, this makes sense: if a person acquires information without accepting a duty to maintain its secrecy, that person can immediately share the information with anyone else. Telling the same person later that they were not supposed to share the information does not corral the proverbial cat.

That Mr. Claggett supposedly later gained "a more complete understanding of the [supposed] secrets as an instructor," which Plaintiff now purports to assert (*see id.*), does not change the analysis. That is, Plaintiff does not allege that any content Mr. Claggett supposedly understood "more complete[ly]" as an instructor

---

where plaintiff sent information to defendant "without *first* ensuring that she (or anyone else) would maintain its confidentiality") (emphasis added).

10

was new or different in any way from the content Plaintiff disclosed to him at the *voir dire* seminar. *See generally* Am. Compl. Only the circumstances of initial disclosure and acquisition are thus relevant to the Court's inquiry.

And because the Agreement did not impose a non-disclosure duty on Mr. Claggett as a matter of law, and Plaintiff failed to allege any additional circumstances at the *voir dire* seminar giving rise to any other source of a duty, implied[7] or otherwise, Plaintiff's allegations cannot establish misappropriation.

---

[7] Plaintiff incorrectly asserts that the Court cannot resolve the statute of frauds defense to Plaintiff's implied-agreement theory on a motion to dismiss. The *RMS Titanic, Inc.* holding on which Plaintiff relied was dependent on the fact that the plaintiff there had alleged that the unwritten agreement *could be* performed within a year. *See RMS Titanic, Inc. v. Zaller*, 978 F. Supp. 2d 1275, 1297-98 (N.D. Ga. 2013). Plaintiff here has alleged the opposite—that Mr. Claggett's supposed confidentiality duties are perpetual, and were violated years after the seminar. The statute of frauds thus precludes Plaintiff's implied theory. *See, e.g.*, *OJ Commerce, LLC v. Ashley Furniture Indus., Inc.*, No. 19-12152, 2020 WL 2787608, *2-4 (11th Cir. May 29, 2020) (affirming 12(b)(6) dismissal of contract claim on one-year statute-of-frauds ground).

Plaintiff's "partial performance" argument does not avoid this result. With respect to the *voir dire* seminar, Plaintiff has not alleged any partial performance on its part beyond teaching and permitting Mr. Claggett to attend (*see* Opp., p. 16 n.6), but those activities were Plaintiff's required performance under the *Agreement* (*see* Dkt. No. 13-2), not additional performance required by some additional implied understanding between the parties. *See, e.g.*, *Breckenridge Creste Apts., Ltd. v. Citicorp Mortg., Inc.*, 826 F. Supp. 460, 464-65 (N.D. Ga. 1993) (granting 12(b)(6) motion where supposed partial performance was actually performance of an existing written agreement (which the Court construed as a matter of law), and thus did not support additional implied duty). And Plaintiff's

11

### C. Plaintiff did not adequately allege a trade secret.

#### 1. Plaintiff's trade-secret allegations did not adequately allege reasonable efforts to protect secrecy.

Just as the Agreement's absence of any duty to protect the secrecy of any *voir dire* seminar content prevents Plaintiff from adequately alleging misappropriation (because Plaintiff hasn't alleged any other viable source of non-disclosure duty that arose when Mr. Claggett attended the *voir dire* seminar), it likewise renders every subsequent measure Plaintiff supposedly took to protect the seminar contents' secrecy a dead letter. Again, once information is disclosed without protections against disclosure, it "cannot later be recalled." *Religious Tech. Ctr.*, 923 F. Supp. at 1254. The Agreement's facial lack of a non-disclosure duty renders this case immediately distinguishable from the "sufficient reasonable-efforts allegations" cases cited in Plaintiff's Opposition.

#### 2. A 12(b)(6) motion may challenge sufficiency of "reasonable steps" allegations.

Whether a plaintiff has alleged facts sufficient to show that reasonable steps were taken to protect information for purposes of establishing a "trade secret" is an appropriate subject for a 12(b)(6) motion, particularly where, as here, those steps

---

argument about its later performance as an "employer" is irrelevant to the duty inquiry because, as discussed herein, the only relevant duties were any imposed at the time of the seminar when Mr. Claggett first acquired the information.

are dependent on a written agreement presented to the court. *See, e.g.*, *Protegrity Corp.*, 2018 WL 8949789, *3 (evaluating, rather than rejecting outright in 12(b)(6) analysis, argument concerning reasonableness of secrecy measures based on licensing agreement, although denying motion based on non-disclosure language distinguishable from language in the Agreement at issue here); *see also Earthcam, Inc. v. Oxblue Corp.*, 1:11-cv-02278-WSD, 2012 WL 12836518, *9 (N.D. Ga. Mar. 26, 2012) (analyzing, under 12(b)(6), reasonableness of alleged steps taken to protect secrecy, although denying motion based on alleged license agreement language forbidding transfer or distribution of information, distinguishable from Agreement here). The adequacy of a plaintiff's reasonable-steps allegations was likewise tested in the *Burroughs* case cited in Plaintiff's Opposition. The *Atlanta Fiberglass* view, cited by Plaintiff, that reasonable-steps allegations are not necessary to state a claim (*dicta*, in that the court acknowledged that the plaintiff alleged its use of licensing agreements), thus appears to be an outlier on this issue.

    **3.**  **Plaintiff's supposed trade secrets are publicly available or, at the very least, not alleged with sufficient specificity to place Mr. Claggett on notice of their content.**

Plaintiff's arguments against the Court taking judicial notice of websites, including as to the Keenan Trial Blog webpages, should also be rejected. Plaintiff's authentication arguments concerning the non-Blog websites were based

on cases that requested the court to take judicial notice of *facts* within documents, rather than, as Mr. Claggett requests here, that the Court take judicial notice of the public availability of Plaintiff's *voir dire* seminar content, which the Court can confirm merely by visiting the cited websites.

As for the cited Blog pages, Plaintiff has no quarrel with their authenticity. It argues instead that they "do not display any substantive content" and that the user needs "to be logged in to see this part of the content." (Opp., p. 19.) Not so. Although a few of those pages *begin* with log-in-required sections, each contains significant, publicly available substantive content as the viewer scrolls down, including *voir dire* content. For example, page 7 identifies and discusses "the three rules" of "Reptile voir dire." *See* http://keenan183.rssing.com/chan-25568066/all_p7.html (last visited July 15, 2020).

Further, while Plaintiff purports to dispute that any of the cited Blog pages contain its supposed trade-secret information, the three "rules" cited and described with particular phrases on page 7 (and elsewhere on the cited Blog pages and on the other websites cited in Mr. Claggett's initial brief) appear to dovetail cleanly with "strategies" and the concept of "title phrases" alleged to be trade secrets in the Amended Complaint. (*See* Am. Compl., ¶ 34). In any event, Plaintiff's contention that the *voir dire* content in the Blog pages is *not* information for which Plaintiff

14

purports to seek trade-secret protection—contrary to Plaintiff's allegations that its Blog contains discussions of the supposed trade secrets (Am. Compl., ¶ 48)—simply shows that Plaintiff's allegations fail to place reasonable persons on notice of which content Plaintiff is alleging constitutes trade secrets.[8]

For these reasons, too, Plaintiff has failed to adequately allege a trade secret.

## III.  CONCLUSION

Plaintiff's Amended Complaint fails to state a claim on which relief could be granted, and should be dismissed with prejudice.

Respectfully submitted on July 21, 2020.

                        *s/ Joseph C. Sharp*
                        Joseph C. Sharp
                        Georgia Bar No. 637965
                        Polsinelli PC
                        1201 West Peachtree Street, NW
                        Suite 1100
                        Atlanta, GA  30309
                        Telephone:  (404) 253-6000
                        Fax:  (404) 253-6060  Fax
                        Email:  jsharp@polsinelli.com

                        *Counsel for Defendant Sean Claggett*

---

[8] Mr. Claggett has not assumed the contrary for purposes of his Motion. (*Compare* Opp., p. 17 (contending that "Defendant accepts as true" that the alleged trade secrets "were suitable" for protection and "adequately alleged to give Mr. Claggett notice" of which "content cannot be disclosed") *with* Dkt. No. 13-1, p. 21 (stating that both such premises were "disputed").)

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **KEENAN'S KIDS FOUNDATION, INC.** | |
| Plaintiff, | **CIVIL ACTION NO: 1:20-cv-01702-WMR** |
| v. | |
| **SEAN CLAGGETT,** | |
| Defendant. | |

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing **DEFENDANT SEAN CLAGGETT'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS** has been prepared in Times New Roman, 14-point font, in conformance with Local Rule 5.1C.

*s/ Joseph C. Sharp, Esq.*
Joseph C. Sharp, Esq.
*Counsel for Defendant*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **KEENAN'S KIDS FOUNDATION, INC.**  Plaintiff,  v.  **SEAN CLAGGETT,**  Defendant. | **CIVIL ACTION NO: 1:20-cv-01702-WMR** |

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2020, I have electronically filed the foregoing **DEFENDANT SEAN CLAGGETT'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will automatically send notice of its filing to the following counsel of record:

John M. Bowler, Esq. (john.bowler@troutman.com)
Michael D. Hobbs, Jr., Esq. (michael.hobbs@troutman.com)
Lindsay Mitchell Henner, Esq. (lindsay.henner@troutman.com)
TROUTMAN SANDERS LLP
600 Peachtree Street, NE
Bank of America Plaza, Suite 3000
Atlanta, GA 30308
Telephone: (404) 885-3000
Facsimile: (404) 962-6513

Respectfully submitted this 21st day of July, 2020.

*s/ Joseph C. Sharp*
Joseph C. Sharp, Esq.
*Counsel for Defendant*